CLOSED

# U.S. District Court
# Alabama Middle District (Montgomery)
# CIVIL DOCKET FOR CASE #: <u>2:17−cv−00118−WKW−TFM</u>
# *Internal Use Only*

| | |
|---|---|
| Bowens v. Coty, Inc. et al | Date Filed: 03/01/2017 |
| Assigned to: Chief Judge William Keith Watkins | Date Terminated: 05/02/2017 |
| Referred to: Honorable Judge Terry F. Moorer | Jury Demand: Plaintiff |
| Cause: 15:2301 Magnuson−Moss Warranty Act | Nature of Suit: 190 Contract: Other |
| | Jurisdiction: Diversity |

### <u>Plaintiff</u>

**Carrie Bowens**
*on behalf of herself and all others
similarly situated*

represented by **Brandy Lee Robertson**
Heninger Garrison Davis
2224 First Ave N
Birmingham, AL 35203
205−326−3336
Fax: 205−326−3332
Email: <u>brandy@hgdlawfirm.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph Luther Tucker**
Jackson and Tucker, P.C.
2229 1st Avenue North
Birmingham, AL 35203
205−252−3535
Fax: 205−252−3536
Email: <u>josh@jacksonandtucker.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth Stephen Jackson**
Jackson Law, PC
2229 1st Avenue North
Birmingham, AL 35203
205−241−9612
Fax: 205−252−3536
Email: <u>steve@jacksonandtucker.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Lewis Garrison , Jr.**
Heninger Garrison Davis, L.L.C.
2224 1st Avenue North
Birmingham, AL 35203
205−326−3336
Fax: 205−326−3332
Email: <u>lewis@hgdlawfirm.com</u>

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Coty, Inc.**                              represented by   **Hugh Cannon Lawley**
*a Delaware corporation*                                     Huie Fernambucq Stewart LLP
                                                            Three Protective Center
                                                            2801 Highway 280 South, Suite 200
                                                            Birmingham, AL 35223
                                                            205−251−1193
                                                            Fax: 205−251−1256
                                                            Email: cannon@huielaw.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Jeffrey Bartow Cannon , Jr.**
                                                            Huie, Fernambucq & Stewart, LLP
                                                            Three Protective Center; Suite 200
                                                            2801 Highway 280 South
                                                            Birmingham, AL 35223
                                                            205−251−1193
                                                            Fax: 205−251−1256
                                                            Email: bcannon@huielaw.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Walter Jasper Price , III**
                                                            Huie Fernambucq Stewart LLP
                                                            2801 Highway 280 South, Suite 200;
                                                            Three Protective Center
                                                            Birmingham, AL 35223−2484
                                                            205−251−1193
                                                            Fax: 205−251−1256
                                                            Email: wprice@huielaw.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**The Procter & Gamble Company, Inc.**     represented by   **Hugh Cannon Lawley**
*an Ohio corporation*                                       (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Jeffrey Bartow Cannon , Jr.**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Walter Jasper Price , III**

2

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**The Procter & Gamble Manufacturing Company, Inc.**
*an Ohio corporation*

represented by **Hugh Cannon Lawley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Bartow Cannon , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Walter Jasper Price , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**The Procter & Gamble Distributing, L.L.C.**
*a Delaware limited liability company*

represented by **Hugh Cannon Lawley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Bartow Cannon , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Walter Jasper Price , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Procter & Gamble Hair Care, L.L.C.**
*a Delaware limited liability company*

represented by **Hugh Cannon Lawley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Bartow Cannon , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Walter Jasper Price , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 03/01/2017 | 1 | 6 | COMPLAINT against Coty, Inc., Procter & Gamble Hair Care, L.L.C., The Procter & Gamble Company, Inc., The Procter & Gamble Distributing, L.L.C., The Procter & Gamble Manufacturing Company, Inc. ( Filing fee $ 400.00 receipt number 4602044385.), filed by Carrie Bowens. (Attachments: # 1 Filing Fee Receipt)(kh, ) (Entered: 03/03/2017) |
| 03/01/2017 | | 128 | DEMAND for Trial by Jury by Carrie Bowens. (no pdf document attached to this entry – see docket entry 1 for pdf)(kh, ) (Entered: 03/06/2017) |
| 03/06/2017 | 2 | 67 | MOTION to Consolidate Cases *with Memoradum of Law* by Carrie Bowens. (Attachments: # 1 Exhibit Exhibit "A" to Motion to Transfer & Consolidate)(Tucker, Joseph) (Entered: 03/06/2017) |
| 03/06/2017 | 3 | 129 | Case Assigned to Chief Judge William Keith Watkins; Honorable Judge Terry F. Moorer no longer assigned to the case as presiding judge. (kh, ) (Entered: 03/06/2017) |
| 03/06/2017 | 4 | 130 | Summons Issued as to Coty, Inc., Procter & Gamble Hair Care, L.L.C., The Procter & Gamble Company, Inc., The Procter & Gamble Distributing, L.L.C., The Procter & Gamble Manufacturing Company, Inc. and mailed CMRRR with Copy of 1 complaint. (kh, ) (Entered: 03/07/2017) |
| 03/10/2017 | 5 | 140 | NOTICE by Carrie Bowens re 2 MOTION to Consolidate Cases *with Memoradum of Law Withdrawal of Motion to Transfer and Consolidate* (Tucker, Joseph) (Entered: 03/10/2017) |
| 03/13/2017 | | 145 | MOTION to Withdraw 2 MOTION to Consolidate pursuant to the court's 6 order. Attorney used the incorrect event code. by Carrie Bowens. (no pdf document attached to this entry – see docket 5 for pdf)(kh, ) (Entered: 03/13/2017) |
| 03/13/2017 | 6 | 146 | TEXT ORDER construing Doc. 5 as Plaintiff's motion to withdraw her motion to consolidate (Doc. # 2 .) and granting the motion (Doc. # 5 ) to withdraw. Signed by Chief Judge William Keith Watkins on 3/13/2017. (no pdf dcoument attached to this entry)(kh, ) (Entered: 03/13/2017) |
| 03/14/2017 | 7 | 147 | Return Receipt Card showing service of Summons and 1 Complaint signed by (not signed) for The Procter & Gamble Company, Inc. served on 3/10/2017, answer due 3/31/2017; The Procter & Gamble Manufacturing Company, Inc. served on 3/10/2017, answer due 3/31/2017. (kh, ) (Entered: 03/16/2017) |
| 03/17/2017 | 8 | 149 | Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement sent to Carrie Bowens Corporate Disclosures due by 3/27/2017. (Attachments: # 1 Corporate/Conflict Attachment)(kh, ) (Entered: 03/17/2017) |
| 03/20/2017 | 9 | 153 | Return Receipt Card showing service of Summons and 1 Complaint signed by Amy L. for Procter & Gamble Hair Care, L.L.C. served on 3/10/2017, answer due 3/31/2017; The Procter & Gamble Distributing, L.L.C. served on 3/10/2017, answer due 3/31/2017. (kh, ) (Entered: 03/20/2017) |
| 03/21/2017 | 10 | 154 | Corporate/Conflict Disclosure Statement re 8 Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement by Carrie Bowens. (Robertson, Brandy) Modified on 3/21/2017 to create the docket entry |

| | | | |
|---|---|---|---|
| | | | realtionship (kh, ). (Entered: 03/21/2017) |
| 03/31/2017 | 11 | 157 | ANSWER to 1 Complaint, by Coty, Inc..(Price, Walter) (Entered: 03/31/2017) |
| 03/31/2017 | 12 | 183 | ANSWER to 1 Complaint, by The Procter & Gamble Manufacturing Company, Inc..(Price, Walter) (Entered: 03/31/2017) |
| 03/31/2017 | 13 | 209 | ANSWER to 1 Complaint, by The Procter & Gamble Company, Inc..(Price, Walter) (Entered: 03/31/2017) |
| 03/31/2017 | 14 | 235 | ANSWER to 1 Complaint, by The Procter & Gamble Distributing, L.L.C..(Price, Walter) (Entered: 03/31/2017) |
| 03/31/2017 | 15 | 261 | ANSWER to 1 Complaint, by Procter & Gamble Hair Care, L.L.C..(Price, Walter) (Entered: 03/31/2017) |
| 04/04/2017 | | 287 | ***Attorney Hugh Cannon Lawley,Jeffrey Bartow Cannon, Jr for Coty, Inc. added pursuant to the 11 answer. (kh, ) (Entered: 04/04/2017) |
| 04/04/2017 | | 289 | ***Attorney Hugh Cannon Lawley,Jeffrey Bartow Cannon, Jr for The Procter & Gamble Manufacturing Company, Inc. added added pursuant to the 12 answer. (kh, ) (Entered: 04/04/2017) |
| 04/04/2017 | | 291 | ***Attorney Hugh Cannon Lawley,Jeffrey Bartow Cannon, Jr for Procter & Gamble Hair Care, L.L.C., The Procter & Gamble Company, Inc. and The Procter & Gamble Distributing, L.L.C. added pursuant to the 13 , 14 , and 15 answer. (kh, ) (Entered: 04/04/2017) |
| 04/04/2017 | 16 | 293 | ORDERED that, on or before April 17, 2017, all parties shall SHOW CAUSE why this case should not be transferred to the United States District Court for the Southern District of Alabama for further proceedings on grounds that the case in the Southern District of Alabama was filed first. Signed by Chief Judge William Keith Watkins on 4/4/2017. (kh, ) (Entered: 04/04/2017) |
| 04/06/2017 | 17 | 295 | NOTICE by Carrie Bowens re 16 Order to Show Cause, *Plaintiff's Notice of Consent to Transfer* (Tucker, Joseph) (Entered: 04/06/2017) |
| 04/10/2017 | 18 | 298 | NOTICE by Coty, Inc., Procter & Gamble Hair Care, L.L.C., The Procter & Gamble Company, Inc., The Procter & Gamble Distributing, L.L.C., The Procter & Gamble Manufacturing Company, Inc. re 16 Order to Show Cause, (Lawley, Hugh) (Entered: 04/10/2017) |
| 05/02/2017 | 19 | 301 | ORDERED that this case is TRANSFERRED to the United States District Court for the Southern District of Alabama, Southern Division; DIRECTING the Clerk to effectuate the transfer. Signed by Chief Judge William Keith Watkins on 5/2/2017. (wcl, ) (Entered: 05/02/2017) |
| 05/02/2017 | | 304 | Case transferred to Southern District of Alabama; Entire file with certified copies of docket sheet and transfer order sent ELECTRONICALLY via EMAIL to Clerk. (No pdf attached to this entry) (wcl, ) (Entered: 05/02/2017) |

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION**

|  |  |  |
|---|---|---|
| CARRIE BOWENS, on behalf of | ) | RECEIVED |
| Herself and all others similarly situated, | ) | 2017 MAR -1 P 4: 24 |
|  | ) |  |
| Plaintiff, | ) | DEBRA P. HACKETT, CLK |
|  | ) | U.S. DISTRICT COURT |
| v. | ) | MIDDLE DISTRICT, ALA |
|  | ) | Civil Action No.: 2.17-CV-118 |
| COTY, INC., a Delaware Corporation; | ) |  |
| THE PROCTER & GAMBLE | ) | **DEMAND FOR JURY TRIAL** |
| COMPANY, INC., an Ohio Corporation; | ) |  |
| THE PROCTER & GAMBLE | ) |  |
| MANUFACTURING COMPANY, INC., | ) |  |
| an Ohio Corporation; | ) | **CLASS ACTION COMPLAINT** |
| THE PROCTER & GAMBLE | ) | **FOR EQUITABLE RELIEF** |
| DISTRIBUTING, L.L.C., | ) | **AND DAMAGES** |
| a Delaware Limited Liability Company; | ) |  |
| PROCTER & GAMBLE HAIR CARE, | ) |  |
| L.L.C., a Delaware Limited Liability | ) |  |
| Company; | ) |  |
| Defendants. | ) |  |

**CLASS ACTION COMPLAINT**

Plaintiff, Carrie Bowens, on behalf of herself and all others similarly situated, brings this class action against Defendant, COTY, Inc., The Procter & Gamble Company, Inc., The Procter & Gamble Manufacturing Company, Inc., The Procter & Gamble Distributing, L.L.C., and Procter & Gamble Hair Care, L.L.C. (*collectively* "Defendants" *or* "Clairol Defendants"), and alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

Page 1 of 60

# INTRODUCTION

1. This is a class action brought by Plaintiff Carrie Bowens, on behalf of herself and all others similarly situated persons, against COTY, Inc., The Procter & Gamble Company, Inc., The Procter & Gamble Manufacturing Company, Inc., The Procter & Gamble Distributing, L.L.C., and Procter & Gamble Hair Care, L.L.C. Plaintiff seeks damages and equitable remedies for herself and the putative Class, which includes consumers who purchased Clairol Balsam Color hair dyeing kit (*also labeled as "The Balsam Color Kit"*) (*hereinafter* "the Product").

2. The Plaintiff's claims are for Unjust Enrichment (Count I), VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (Count II), Breach of Express Warranty (Count III), Breach of Implied Warranty (Count IV), violation of the ALABAMA DECEPTIVE TRADE PRACTICES ACT (Count V), Fraud (Count VI), and Negligent Design and Failure to Warn (Count VII).

# PARTIES

3. Plaintiff, Carrie Bowens, is a resident citizen of Union Springs, Alabama, Bullock County.

4. Defendant, Coty, Inc. (*hereinafter* "Coty"), is a Delaware Corporation with a Principal Place of Business located at 350 5th Avenue, New York, New York 10118. According to the Delaware Secretary of State, Defendant, Coty, Inc., can be served by registered agent as follows:

Corporation Service Company
2711 Centerville Road
Suite 400
Wilmington, Delaware 19808

5.　Defendant, The Procter & Gamble Company, Inc. (*hereinafter* "P&G Corp."), is an Ohio Corporation with a Principal Place of Business located at 1 Procter & Gamble Plaza, Cincinnati, Ohio 45202-3315. According to the Ohio Secretary of State, Defendant The Procter & Gamble Company, Inc., can be served by registered agent as follows:

CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

6.　Defendant, The Procter & Gamble Manufacturing Company, Inc. (*hereinafter* "P&G Manufacturing"), is an Ohio Corporation with a Principal Place of Business located at 3875 Reservoir Road, Lima, Ohio 45801-3310. According to the Ohio Secretary of State, Defendant the Procter & Gamble Manufacturing Company, Inc., can be served by registered agent as follows:

CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

7.　Defendant, The Procter & Gamble Distributing, L.L.C., is a Delaware Limited Liability Company with a Principal Place of Business located at 6280 Center Hill Drive, Cincinnati, Ohio 45224. According to the Delaware Secretary of

Page 3 of 60

State, Defendant The Procter & Gamble Distributing, L.L.C. can be served by registered agent as follows:

The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

8.     Defendant, Procter & Gamble Hair Care, L.L.C., is a Delaware Limited Liability Company with a Principal Place of Business located at 2200 Lower Muscatine Road, Iowa City, Iowa 52240. According to the Delaware Secretary of State, Defendant Procter & Gamble Hair Care, L.L.C. can be served by registered agent as follows:

The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member, Plaintiff Carrie Bowens, is a citizen of a state different from at least one Defendant.

10.     This Court has personal jurisdiction over Defendants as many of the acts and omissions giving rise to this action occurred in the State of Alabama,

including purchases of the Product by the Plaintiff and other putative Class Members. Defendants have sufficient minimum contacts with the State of Alabama and intentionally availed themselves, and continue to avail themselves of the jurisdiction of this Court through their business ventures; specifically, the promotion, sale, marketing, and distribution of their products, including the Product, in this State.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this District as Defendants do business throughout this District, including promoting, selling, marketing and distributing the Product at issue, and the named Plaintiff purchased the Product in this District.

**GENERAL FACTUAL ALLEGATIONS**
**COMMON TO ALL CLASS MEMBERS**

12.     Defendants The Procter & Gamble Company, Inc., The Procter & Gamble Manufacturing Company, Inc., The Procter & Gamble Distributing, L.L.C., and Procter & Gamble Hair Care, L.L.C. have developed, designed, formulated, manufactured, packaged, labeled, advertised, marketed, instructed on (*how to use the Product*), warned about, distributed and sold the Clairol hair dye products (*i.e., "hair color kits"*) since at least 1956, when they were introduced

Page 5 of 60

under the brand name "Miss Clairol" as the "FIRST at home hair color kit that could lighten, tint, condition and shampoo hair in one step".[1]

13.   In or around July of 2015, Defendant The Proctor & Gamble Company, Inc. announced the intended "merger" (*i.e., sale*) of 43 of its brands with Defendant Coty, Inc., including the "Clairol Balsam Color" brand. In or around October of 2016 the deal was finalized and valued at approximately $12.5 billion.

14.   The Product is a cosmetic hair dye intended to improve appearance and alter hair color, and is sold online and in retail shops including, but not limited to, Amazon, Walgreens, Jet.com, Wal-Mart, Clairol-Balsam-Color.best-deal.com, makeupalley.com, soap.com, and other cosmetic and beauty supply stores nationwide.

15.   Defendants' labeling markets the Product to women as "designed to give you hair with three signs of beautiful color: VIBRANT ● SHINY ● LASTING", and as "PERMANENT COLOR ● 100% GRAY COVERAGE"; as having an "Easy-to-use tear-tip applicator and shampoo-in formula"; and as having "the same great formula" of other versions (*i.e., colors*) in their "Balsam Color" hair dyeing line of Products.

---

[1] https://www.clairol.com/en-US/inside-clairol (*last visited Feb. 16, 2017*).

16. Defendants market the Product on the clairol.com[2] website as a "luxurious formula", "enriched with conditioning botanicals to coat each strand" that "softens hair", "hydrates locks for soft, silky hair", that is "available in 16 shades", and has "benefits" such as "conditioning botanicals", "easy-to-use application" and "permanent hair color", amongst other representations. Defendants further claim the Clairol brand to be "YOUR COLOR EXPERT".[1, 2, 3, 4, 5]

17. Defendants represent that "The Science & Ingredients" are their "most hydrating formula", that the Product is "infused with conditioning botanicals"[3], that the Product is "uniquely formulated",[4] and that the Clairol brand, "makes the best at home hair color products around".[5]

18. Defendants, as manufacturers of the Product, are held to the level of knowledge of an expert in the field of that type of hair care product, and had a duty to warn its consumers, including the Plaintiff and putative Class Members, of the

---

[2] https://www.clairol.com/en-US/products/hair-color/balsam (*last visited Feb. 16, 2017*).

[3] https://www.clairol.com/en-US/products/hair-color/product/balsam#Ingredients (*last visited Feb. 16, 2017*).

[4] https://www.clairol.com/m/master/pdf/Balsam_ingredients.pdf (*last visited Feb. 16, 2017*).

[5] https://www.clairol.com/en-US/beauty-school/article/common-color-questions (*last visited Feb. 16, 2017*).

Page 7 of 60

true risks and dangers associated with using the Product. However, as set forth herein, Defendants failed to do so.

19.   Because the U.S. FOOD AND DRUG ADMINISTRATION has limited enforcement ability to regulate cosmetic companies under the FOOD, DRUG & COSMETIC ACT, 21 U.S.C. § 301 *et seq.*, consumers, including the Plaintiff and putative Class Members, rely exclusively on cosmetic companies like Defendants who have the autonomy to decide whether to manufacture and distribute safe products. Here, the Plaintiff and putative Class Members relied, to their detriment, on Defendants, who opted to manufacture and distribute a hair product, the Product, which is defective in design and/or manufacture.

20.   As described herein, an inherent design and/or manufacturing defect in the Product causes physical injuries and damages including the following:

a.   significant hair loss;
b.   skin and scalp irritation;
c.   scalp burnings and blistering;
d.   severe dermatitis;
e.   eye irritation and tearing;
f.   asthma;
g.   gastritis;
h.   renal damage and/or failure;
i.   vertigo;
j.   tremors, convulsions and comas; and
k.   eczematoid contact dermatitis [in chronic (long-term) expose situations].

(*hereinafter* "the Injuries").

21.     Even if used as directed, Defendants failed to adequately warn against the negative risks, side effects, and Injuries associated with the Product, including the Injuries set forth above and elsewhere herein, and the long-term and cumulative effects of usage of the Product.

22.     Because the Defendants failed (*and continue to fail*) to adequately warn against the negative risks, side effects, and Injuries associated with the Product, the Plaintiff and the putative Class Members believed the Product to be safe to use.

23.     Defendants' failed to disclose the inherent design and/or manufacturing defects of the Product, which were known to Defendants, or in the exercise of reasonable care should have been known to the Defendants. These defects were unknown to the Plaintiff and putative Class Members at the time of purchase and/or use, and thus constitute an actionable misrepresentation or omission, as well as an unfair, unlawful, fraudulent, and deceptive business practice.

24.     If Defendants had disclosed to Plaintiff and putative Class Members the true nature of the Product, that it could cause severe Injuries when used as instructed by Defendants, they would not have purchased the Product.

25.    The Plaintiff and putative Class Members have been damaged by Defendants' concealment and non-disclosure of the true defective nature of the Product because they were misled regarding the safety and value of the Product.

26.    Contrary to Defendants' labeling and marketing representations, the Product contains caustic ingredients including, but not strictly limited to:

a.    p-Phenylenediamine (*hereinafter* "PPD"). According to the NATIONAL INSTITUTES FOR HEALTH's CENTER FOR BIOTECHNOLOGY INFORMATION (*a division of the National Library of Medicine*), p-Phenylenediamine "causes skin irritation" and skin "corrosion", "may cause allergic skin reaction" and skin "sensitization", "causes damages to organs" through a "single exposure, "causes damage to organs through prolonged or repeated use" with "skin absorption" being an exposure route. Further, "[a]cute (short-term) exposure to high levels of p-Phenylenediamine may cause severe dermatitis, …, **renal failure**, vertigo, tremors, **convulsions, and coma in humans**. Eczematoid contact dermatitis may result from chronic (long-term) exposure in humans." PPD "[i]s a skin … sensitizer" and "[r]epeated or prolonged contact may cause skin sensitization" and "**[t]he substance may have effects on the kidneys**" and "**may result in kidney impairment**".[6] (*emphasis added*).

b.    p-Phenylenediamine Sulfate (*hereinafter* "PPD Sulfate"). According to MeSH (Medical Subject Headings for the NCBI [National Center for Biotechnology Information]), the U.S. National Library of Medicine controlled vocabulary thesaurus, p-Phenylenediamine sulfate is another name for (*i.e., a synonym for*) PPD.[4,7]

---

[6] https://pubchem.ncbi.nlm.nih.gov/compound/7814#section=Top

[7] https://www.ncbi.nlm.nih.gov/mesh

c.   Ammonium Hydroxide. According to the NATIONAL INSTITUTES FOR HEALTH's CENTER FOR BIOTECHNOLOGY INFORMATION (*a division of the National Library of Medicine*), Ammonium Hydroxide has acute, dermal toxicity, "causes severe skin burn" and is "corrosive" to the skin. The Effects of contact "may be delayed" and "skin contact with [the] material may cause severe injury or death". It is "toxic by all routes (ie, inhalation, ingestion, and dermal contact), "may cause contact burns to the skin". It may cause "redness", "serious skin burns", "pain", and "blisters".[8]

d.   Propylene Glycol, the active component in antifreeze. According to the NATIONAL INSTITUTES FOR HEALTH's CENTER FOR BIOTECHNOLOGY INFORMATION (*a division of the National Library of Medicine*), Propylene Glycol may cause skin irritation.[9]

e.   EDTA. According to the NATIONAL INSTITUTES FOR HEALTH's CENTER FOR BIOTECHNOLOGY INFORMATION (*a division of the National Library of Medicine*), EDTA is "corrosive" to the skin and "causes skin irritation".[10]

f.   Sodium Sulfate. According to the NATIONAL INSTITUTES FOR HEALTH's CENTER FOR BIOTECHNOLOGY INFORMATION (*a division of the National Library of Medicine*), Sodium Sulfate "causes severe skin burns", "skin corrosion", and "skin irritation".[11]

g.   Resorcinol. According to the NATIONAL INSTITUTES FOR HEALTH's CENTER FOR BIOTECHNOLOGY INFORMATION (*a division of the National Library of Medicine*), Resorcinol

---

[8] https://pubchem.ncbi.nlm.nih.gov/compound/14923#section=Top

[9] https://pubchem.ncbi.nlm.nih.gov/compound/1030

[10] https://pubchem.ncbi.nlm.nih.gov/compound/6049#section=Top

[11] https://pubchem.ncbi.nlm.nih.gov/compound/24437#section=Top

"causes skin irritation", "skin corrosion", and skin "sensitization". Resorcinol "[c]an be absorbed from wounds or through unbroken skin, producing severe dermatitis, methemoglobinemia, cyanosis, convulsions, tachycardia, dyspnea, and death."[12]

h.  Disodium EDTA. According to the NATIONAL INSTITUTES FOR HEALTH's CENTER FOR BIOTECHNOLOGY INFORMATION (*a division of the National Library of Medicine*), Disodium EDTA has "acute [dermal] toxicity", "causes skin irritation", "skin corrosion/irritation".[13]

i.  M-Aminophenol. According to the NATIONAL INSTITUTES FOR HEALTH's CENTER FOR BIOTECHNOLOGY INFORMATION (*a division of the National Library of Medicine*), "Exposure to [M-Aminophenol] may occur through dermal contact or inhalation at sites where it is used in the synthesis of dyes. Effects from exposure can include burns to the skin and eyes, dermatitis, headache, vertigo, **cardiac arrhythmias, shock, and possibly even death**."[14] (*emphasis added*).

The amount of these chemical ingredients each Product contains, including PPD, depends on which of the specific 16 "shades" of the Product a consumer purchases.[15, 16] Not all of the 16 "shades" contain all of the above-listed

---

[12] https://pubchem.ncbi.nlm.nih.gov/compound/5054#section=Top

[13] https://pubchem.ncbi.nlm.nih.gov/compound/13020083#section=Top

[14] https://pubchem.ncbi.nlm.nih.gov/compound/11568#section=Top

[15] https://www.clairol.com/m/master/pdf/Balsam_ingredients.pdf (*last visited Feb. 16, 2017*).

[16] "The ingredients must be declared in descending order of predominance." 21 C.F.R. § 701.3(a).

ingredients, but all 16 "shades" do contain PPD. These ingredients, alone and in combination with each other, can and do cause Injuries.

27.     As a direct and proximate result of the defective nature of the Product, it is unfit for its intended use and purpose.

28.     The Injuries caused by the Product are not *de minimus*. Consumers damaged by the Product often have permanent hair loss, amongst other Injuries. Plaintiff and the putative Class Members have suffered injury in fact, including economic damages, as a direct and proximate result of purchasing and/or using the Product.

29.     Defendants' claims are deceptive, inaccurate, misleading, and not supported by scientific fact.

30.     Defendants, as "hair color experts", knew or should have known that even when used as directed, the Product creates an unnecessary risk of injury, as described herein, and failed to disclose or otherwise adequately warn against the negative effects, risks, and potential injuries associated with using the Product.

31.     Unlike the Defendants, who are experts in hair care products, the dangerous and defective nature of the Product is not readily apparent to a layperson by examination of its ingredients list; a reasonable consumer (*i.e., layperson*) such as the Plaintiff and putative Class Members would not recognize the dangers of the ingredients (*i.e., chemicals*) because they would not know what the various

ingredients are, what the ingredients do or how they work, and/or whether they are safe for the use the Product as promoted, marketed and labeled by Defendants. Moreover, an ordinary consumer, including the Plaintiff and putative Class Members, could certainly not know or be expected to know how all of these ingredients/chemicals react to each other nor the synergistic result of exposure to them all in using the Product in one session, as directed by Defendants.

32.    In omitting, concealing, and inadequately providing critical safety information regarding the risks of using of the Product, and in order to induce its purchase and use, Defendants engaged in and continue to engage in conduct likely to mislead and/or deceive consumers including the Plaintiff and putative Class Members; Defendants' conduct is fraudulent, unfair, and unlawful.

33.    Defendants knew or should have known that the chemicals in the Product, including, but not strictly limited to, "PPD", are associated with health serous risks including the Injuries set forth herein yet, Defendants did not (*and continue to fail to*) adequately warn consumers, including the Plaintiff and putative Class Members of the risk of Injuries.

34. In 2006, PPD was named allergen of the year by the AMERICAN CONTACT DERMATITIS SOCIETY. Defendants knew or should have known of these findings.

Case 2:17-cv-00218-WRW-TFM  Document 21  Filed 03/04/17  Page 15 of 60

35.     The U.S. ENVIRONMENTAL PROTECTION AGENCY lists several links between PPD use/exposure and several acute and significant health problems including, but not strictly limited to:

a.     Severe dermatitis;
b.     Eye Irritation and Tearing;
c.     Asthma;
d.     Gastritis;
e.     Renal failure;
f.     Vertigo;
g.     Tremors, convulsions and comas; and
h.     Eczematoid contact dermatitis may occur in chronic (long-term) expose situations.

See p-Phenylenediamine "Hazard Study" https://www.epa.gov/sites/production/files/2016-09/documents/p-phenylenedia mine.pdf.

Defendants knew or should have known of these findings.

36.     Defendants do not warn about _any_ of the conditions listed in the preceding paragraph on their packaging or product inserts.

37.     16 CFR § 1500.13 states that the U.S. CONSUMER PRODUCT SAFETY COMMISSION has determined that PPD is one of five substances meeting the definition of a "strong sensitizer"; specifically, PPD and products that contain PPD are deemed to "have a significant potential for causing hypersensitivity". Defendants knew or should have known of these findings.

38.    Similarly, the NATIONAL INSTITUTE FOR OCCUPATIONAL SAFETY AND HEALTH (*under the oversight of the* U.S. CENTER FOR DISEASE CONTROL) *International Chemical Safety Card* notes that repeated occupational dermal exposure to PPD "may cause skin sensitization" and that PPD "may have effects on the kidneys, resulting in kidney impairment".

See http://www.cdc.gov/niosh/ipcsneng/neng0805.html [page last updated July 1, 2014] (*last visited Feb. 16, 2017*).

Defendants knew or should have known of these findings.

39.    A 2006 article published in the *Journal of Toxicology and Environmental Health* found a link, in at least one scientific study, between hair dyes and certain cancers including bladder cancer, non-Hodgkin's lymphoma, and blood cancers such as myeloma and leukemia. See Rollison, D.E.; Helzlsouer, K.J.; Pinney, S.M., (2006), PERSONAL HAIR DYE USE AND CANCER: A SYSTEMATIC LITERATURE REVIEW AND EVALUATION OF EXPOSURE ASSESSMENT IN STUDIES PUBLISHED SINCE 1992. JOURNAL OF TOXICOLOGY AND ENVIRONMENTAL HEALTH. Part B, Critical reviews. 9 (5): 413–39. Defendants knew or should have known of these findings.

40.    Defendants have placed no restrictions or warnings concerning cumulative or repeated use of the Product or PPD on the Products packaging, packet inserts or marketing materials despite the known, published findings of risks of repeated exposure to PPD.

41. Once a person has become sensitized to PPD (*i.e., has suffered a significant reaction*) that sensitization is likely to remain with them for life. Defendants knew or should have known about the increased risk for hypersensitization but Defendants failed to put instructions or warnings related to PPD sensitization and hypersensitization.

42. Defendants did not (*and still do not*) adequately warn consumers, including the Plaintiff and the putative Class Members, on their product labels, inserts, or marketing materials that the PPD in the Product can cause severe Injuries, including systemic anaphylaxis. See Goldberg, B.J., Herman, F.F., Hirita, I., SYSTEMIC ANAPHYLAXIS DUE TO AN OXIDATION PRODUCT OF P-PHENYLENEDIAMINE IN A HAIR DYE. *Ann. Allergy*, 1987; 58(3):205-8.

43. There are safer and cheaper alternatives to PPD available to Defendants for use in the Product. However, despite the known risks of PPD, Defendants continue to use PPD in the Product.

44. Safer known alternatives include but are not limited to:

    a.    Henna based hair dyes;

    b.    Para-toluenediamine sulfate hair dyes; and

    c.    Other semi-permanent dyes.

45. Furthermore, Defendants fail to warn or disclose that African American consumers are at dramatically higher risk of an acute reaction to PPD than those of Caucasian decent.

46. In 2001, a study performed by the CLEVELAND CLINIC concluded that the sensitization rate of PPD in African American users was 10.6% versus 4.5% in Caucasian users. The study further concluded that the sensitization rate of PPD in African American men in particular was 21.2% compared to 4.2% in Caucasians. See Dickel, H., Taylor, J.S., Evey, P., Merk, H.F., COMPARISON OF PATCH TEST RESULT WITH A STANDARD SERIES AMONG WHITE AND BLACK RACIAL GROUPS. *Am. J. Contact. Dermat.* 2001; 12(2):77-82. Thus, while the Product has an unacceptable and unreasonable rate of adverse reaction in the general population, the rate of adverse reaction is even more unacceptable and unreasonable rate of adverse reaction in African Americans.

47. Defendants knew or should have known that consumers were at a greater risk of experiencing an adverse reaction while using PPD compared to other hair dye products, and Defendants knew or should have known that consumers African Americans were at an even greater risk of experiencing an adverse reaction to PPD.

48. Although, consistent with 21 U.S.C. § 361(a), Defendants instruct users to conduct a preliminary test to help determine whether a user will have an

adverse reaction to the Product, the preliminary test Defendants recommend and the directions and instructions for its administration are inadequate.

49.   The MAYO CLINIC reported the incidence of positive patch-test reactions to PPD in "patch test results" conducted between 1998 and 2000 at five-percent (5%) of the population of tested individuals. See Wetter D.A., Davis M.D.P., Yiannias J.A., *et al.*, PATCH TEST RESULTS FROM THE MAYO CLINIC CONTACT DERMATITIS GROUP, 1998-2000. J. Am. Acad. Dermatol. 2005; 53:416-21. Defendants knew or should have known of these findings.

50.   Similarly, the NORTH AMERICAN CONTACT DERMATITIS GROUP reported the incidence of positive patch-test reactions in "patch test results" conducted between 2001 and 2002 at just under five-percent (5%) of the population of tested individuals. See Pratt M.D., Belsito D.V., DeLeo V.A., *et al.* NORTH AMERICAN CONTACT DERMATITIS GROUP PATCH TEST RESULTS, 2001-2002 STUDY PERIOD. *Dermatitis* 2004; 15(4):176-83. Defendants knew or should have known of these findings.

51.   Later, the NORTH AMERICAN CONTACT DERMATITIS GROUP reported the incidence of positive patch-test reactions in "patch test results" conducted between 2005 and 2006 at five-percent (5%) of the population of tested individuals. See Pratt, M.D., Belsito, D.V., DeLeo, V.A., *et al.* NORTH AMERICAN CONTACT DERMATITIS GROUP PATCH TEST RESULTS, 2005-2006 STUDY PERIOD.

*Dermatitis* 2009; 20(3):149-60. Defendants knew or should have known of these findings.

52. Despite the abundance of scientific and other published material evidencing a certain percentage of the population would have an allergic reaction to the Product, Defendants failed to warn or disclose such rates of reaction to consumers and the public in general, including the Plaintiff and the putative Class Members, and, therefore, failed to adequately warn of the true nature of the risks of using the Product.

53. Defendants recommend a self-applied, at-home "skin patch test" on a consumer's arm/elbow prior to use. Defendants recommend this test despite knowing that the skin on the scalp/head is more sensitive and may react differently than the arm/elbow or other parts of the body. Defendants provide no guidelines on how to test the Product on a consumer's head and/or scalp prior to use.

54. Defendants knew or should have known that their recommended at-home skin patch test is an inadequate method to determine if a user will have an adverse reaction to PPD.

55. The universal standard for identifying skin allergies, including acute contact dermatitis to PPD, is a patch test which is administered and monitored by a dermatologist or similar trained medical professional (*a "medical skin patch test"*) over a 7-10 day period.

56. During a "medical skin patch test" a trained medical professional places small quantities of known allergens, such as PPD, on the patient's back. The test areas are then covered with special hypoallergenic adhesive tape so the patches stay in place undisturbed for 48 hours.

57. Generally, a "medical skin patch test" requires two to three appointments so that the reactions can be carefully monitored by the trained medical professional.

58. Despite the knowledge that more accurate patch tests conducted by trained medical professionals are done over the course of several days or even weeks, Defendants wrongly and negligently fail to advise consumers, including the Plaintiff and putative Class Members, of the need and corresponding health benefit of having a "medical skin patch test" performed before using the Product.

59. In December 2007, the EUROPEAN COMMISSION SCIENTIFIC COMMITTEE ON CONSUMER PRODUCTS released an Opinion titled *"Sensitivity to Hair Dyes – Consumer Self Testing."* The COMMITTEE concluded that at home skin tests, given for the purpose of providing an indication as to whether an individual consumer may or may not have a contact allergy to hair dye chemicals, were unreliable. The Committee specifically found that:

    a.    Self-testing leads to misleading and false-negative results thus giving individuals who are allergic to hair dye substances the false impression that they are not allergic and not at risk of developing an allergic reaction by dyeing their hair;

Page 21 of 60

b.    There is a potential risk that "self-tests" result in induction of skin sensitization to hair dye substances;

c.    The self-test recommendations were not standardized and uncontrolled allowing for large variations in dose, number of applications, and duration of exposure;

d.    False negative results from self-testing are considered to be the largest problem;

e.    48 hours known to be too short as patch test reactions may develop up to seven days after application;

f.    Self-test locations on the arm or behind the ear are not reliable, while patch testing done on the back is good for reproducibility; and

g.    Self-tests are not performed or observed by trained observers.

See http://ec.europa.eu/health/ph_risk/committees/04_sccp/docs/sccp_o_114.pdf (*last visited Feb. 16, 2017*).

60.    Defendants did not (*and currently do not*) warn or disclose that self-testing, such as the test recommended by Defendants, is inferior to a patch test administered and monitored by a dermatologist or similar trained medical professional (*a "medical skin patch test"*), is not an effective or reliable to determine whether an individual consumer may or may not have a contact allergy to PPD.

61.    Nowhere on their product packaging or inserts, webpage, or marketing materials do Defendants recommend that consumers undergo a "medical skin patch test" before using the Product.

62. Defendants instruct a consumer to "not wash, cover, or disturb the test area for 48 hours." Compliance with Defendants' version of an "allergy test" is unreasonable and essentially unfeasible. The risk of accidental contamination is simply probable because the average consumer is not trained to conduct a test comparable to a "medical skin patch test". This renders the consumer performed test useless.

63. For example, during Defendants' version of an allergy test, for two days, consumers are unrealistically expected to:

    a. Not shower;

    b. Not wear long sleeve shirts;

    c. Not accidently rub against anything;

    d. Not sweat; and

    e. Not close their elbow.

64. Defendants knew or should have known that a percentage of consumers would have an allergic reaction to their products but fail to advise consumers to undergo proper allergy testing (*i.e., a "medical skin patch test"*) before using the Product.

65. Defendants knew or should have known that their recommended test was not adequate because:

    a. The instructions and directions for use did not disclose that Defendants' at-home test was not a substitute for a "medical

Page 23 of 60

28

skin patch test" and that more accurate results could and would be obtained by conducting a "medical skin patch test";

b.     The risk that the Defendants' at-home test would be performed in the wrong area;

c.     the risk that the amount of the Product used in the Defendants' at-home test would be wrong;

d.     the arm is not the appropriate location for a skin allergy test, especially since the Product is to be used on the head and scalp;

e.     the risk of false negatives is high;

f.     the area that is tested is not covered or protected during the test; and

g.     The risk that the product would be disturbed by clothing or daily activities is high.

66.     Consumers, including the Plaintiff and putative Class Members, detrimentally relied on Defendants' instructions to perform an at-home patch test.

67.     Defendants knew or should have known that it is highly unlikely that a consumer would be able to (i) perform Defendants' at-home patch test properly, and (ii) obtain reliable results.

68.     In addition, Defendants know or should have known that sensitization to PPD during performance of an at-home skin patch test is likely to occur in a certain percentage of the population.

69.     When sensitization occurs during a patch test, the consumer will have a late reaction to the PPD more than 48 hours, or not at all, after exposure rendering the Defendants testing procedure unreliable and, therefore, useless.

70.     Due to the potential for PPD sensitization during a patch test, it is possible for consumers to have a negative skin patch test result and still have a severe reaction when they use the Product.

71.     Despite this fact, Defendants did not (*and still do not*) warn or disclose the risks of sensitization during a skin patch test.

72.     Defendants' further provide inadequate skin patch test instructions in that Defendants use ambiguous words such as "small" and "equal" parts without providing any direction as to what equates to "small" or what tools or methods to measure the actual amount of each chemical to ensure that "equal" amounts are being applied (*i.e., a teaspoon, a tablespoon?*).

73.     Defendants failure to provide any instructions on what is meant by a "small" amount of chemical(s) leaves the consumer to guess/speculate as to the proper testing amount. Consequently, the Defendants' instructions on the at-home skin patch testing procedure are fundamentally flawed.

74.     Without precise measuring amounts and/or tools, it is impossible to determine what a "small" amount is and if "equal" amounts of each chemical are being mixed for skin patch testing purposes.

Page 25 of 60

75. Even if the product's patch test was adequate and reliable, which it is not, the vague, ambiguous, and inadequate instructions for its use render the test wholly inadequate and utterly useless. Thus, Defendants fail to adequately warn or disclose the probability that a user will have an adverse reaction to Product by virtue of their at-home skin patch test instructions.

76. Despite this knowledge, Defendants failed (*and continue to fail*) to adequately warn or disclose to their consumers that they were exposed to a significantly increased risk of suffering an adverse reaction as a direct and proximate result of using the Product.

77. Instead, as self-proclaimed "hair color experts", Defendants represent the Product to be safe and effective, particularly when used as directed, including performing their at-home skin patch test, and actively market the Product to consumers, including the Plaintiff and putative Class Members, knowing it is likely to cause serious and severe Injuries.

78. "It is the manufacturer's and/or distributor's responsibility to ensure that products are labeled properly."[17] Because the U.S. FOOD AND DRUG ADMINISTRATION has limited enforcement ability to regulate cosmetic companies under the FOOD, DRUG & COSMETIC ACT, 21 U.S.C. § 301 *et seq.*, consumers, including the Plaintiff and putative Class Members, rely exclusively on cosmetic

---

[17] http://www.fda.gov/Cosmetics/Labeling/Regulations/default.htm#information_re quired (*last visited Feb. 16, 2017*).

Page 26 of 60

companies like Defendants who have the autonomy to decide whether to manufacture and distribute safe products. Here, the Plaintiff and putative Class Members relied to their detriment on Defendants, who opted to manufacture and distribute a hair product that is defective in design and/or manufactured and sold by means of false, deceptive and/or misleading advertising, marketing and/or labeling.

79.     By marketing, selling and distributing the Product to consumers throughout the United States, Defendants made actionable statements that the Product was free of defects in design and/or manufacture, and that it was safe and fit for its ordinary intended use and purpose. Further, Defendants concealed what they knew or should have known about the safety risks resulting from the material defects in design and/or manufacture of the Product.

80.     Defendants, as manufacturers of the Product, are held to the level of knowledge of an expert in the field of that type of hair care product, and had a duty not to conceal, omit or misrepresent in any manner whatsoever the safety risks resulting from the material defects in design and/or manufacture of the Product and how to use/apply the Product. "Companies and individuals who manufacture or market cosmetics have a legal responsibility to ensure the safety of their products."[18] Given Defendants' admitted superior knowledge and expertise, which

---

[18] http://www.fda.gov/Cosmetics/GuidanceRegulation/LawsRegulations/ucm07416

are not shared by ordinary consumers including the Plaintiff and putative Class members, they had a compelling obligation to make a full and fair disclosure of the safety and value of the Product without concealing any facts within their knowledge.

81.    The Plaintiff and the putative Class Members are unaware of a single clinical trial or study performed by Defendants related to the injury rate and/or safety of the Product.

82.    Given the amount of literature dating back decades relating PPD to serious adverse health events, including the Injuries described herein, Defendants conduct is particularly egregious.

## PLAINTIFF'S FACTUAL ALLEGATIONS

83.    Plaintiff Carrie Bowens purchased Clairol Balsam Color Black on in 2016. She performed the patch test as directed without incident.

84.    In 2016, after reading the product instructions, Plaintiff Carrie Bowens used the Clairol Balsam hair color Black to dye her hair. Within a few minutes of putting this product on her hair, Plaintiff Carrie Bowens, experienced a burning sensation and itching. She washed the product out of her hair and within a few days she noticed that her hair began to fall out and get thinner and thinner.

85.    In sum, as a direct and proximate result of (1) the false, misleading

---

2.htm (*last visited Feb. 16, 2017*).

and/or deceptive nature of Defendants' representations regarding the Product, and (2) the defective and dangerous nature of the Product, and (3) the Defendants' woefully inadequate instructions for use including, but not specifically limited to the skin test, Plaintiff Carrie Bowens experienced the following injuries including, but not limited to: itching, burning, hair loss including permanent hair loss and burns on her scalp.

## CLASS ACTION ALLEGATIONS

86. Plaintiff brings this action on her own behalf, and on behalf of the following Class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Class is defined as:

> All persons in the United States or its territories who, within the relevant and applicable statute of limitations period, purchased Clairol Balsam Color (*also labeled as "The Balsam Color Kit"*) that contained p-Phenylenediamine.

87. Excluded from the Class are (a) any person who purchased the Product for resale and not for personal or household use, (b) any person who signed a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, and (e) the presiding Judge in the Lawsuit, as well as the Judge's staff and their immediate family members. Plaintiff reserves the right to amend the definition of

the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

88.    Plaintiff also brings this action on behalf of the following subclass pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

> All residents of the State of Alabama who, within the relevant and applicable statute of limitations period, purchased Clairol Balsam Color (*also labeled as "The Balsam Color Kit"*) that contained p-Phenylenediamine.

89.    Excluded from the "Alabama Subclass" are (a) any person who purchased the Product for resale and not for personal or household use, (b) any person who signed a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, and (e) the presiding Judge in the Lawsuit, as well as the Judge's staff and their immediate family members.

90.    **Numerosity.** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not tens of thousands of putative Class Members. Class Members may be notified of the pendency of this action by mail and/or

electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

91.     **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all Members of the Class and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a.     Whether Defendants failed to comply with their warranties;

b.     Whether Defendants' conduct constitutes a breach of applicable warranties;

c.     Whether the Product causes Injuries upon using the Product as directed by Defendants;

d.     Whether the Product contains design defects;

e.     Whether the Product is defective in its manufacture;

f.     Whether and when Defendants knew or should have known that the Product causes Injuries upon using the Product as directed by Defendants;

g.     Whether Defendants were unjustly enriched by selling the Product in light of their conduct as described herein;

h.     Whether Defendants' acts, omissions or misrepresentations of material facts constitute fraud;

i.     Whether Defendants' acts, omissions or misrepresentations of material facts violated certain state deceptive practice acts, including those of the State of Alabama;

j.      Whether Defendants' acts, omissions or misrepresentations of material facts make them liable to the Plaintiff and the putative Class for negligence and strict products liability;

k.      Whether the Plaintiff and putative Class Members have suffered an ascertainable loss of monies or property or other value as a result of Defendants' acts, omissions or misrepresentations of material facts;

l.      Whether the Plaintiff and putative Class Members are entitled to monetary damages and, if so, the nature of such relief; and

m.      Whether the Plaintiff and putative Class Members are entitled to equitable, declaratory or injunctive relief and, if so, the nature of such relief.

92.     Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the putative Class, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the putative Class as a whole. In particular, Defendants have designed, manufactured, marketed, sold and/or distributed a defective Product, which Defendants know or should have known causes Injuries to consumers upon using the Product, as directed by Defendants, and provided an inadequate disclosure and/or warning to consumers, including the Plaintiff and the putative Class Members, regarding these severe consequences.

93.     **Typicality.** Plaintiff's claims are typical of the claims of the Members of the putative Class and respective Subclass, as each putative Class and Subclass Member was subject to the same common, inherent defect in the Product. Plaintiff

shares the aforementioned facts and legal claims or questions with putative Class and Subclass Members, and the Plaintiff and all putative Class and Subclass Members have been similarly affected by Defendants' common course of conduct alleged herein. The Plaintiff and all putative Class and Subclass Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' breach of warranties and other wrongful conduct as alleged herein.

94.    **Adequacy.** The Plaintiff will fairly and adequately represent and protect the interests of the putative Class and respective Subclass. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action.

95.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

a.    The damages suffered by each individual putative Class Member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct;

b.    Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

Page 33 of 60

c. The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

d. Individual joinder of all putative Class Members is impracticable;

e. Absent a Class, the Plaintiff and putative Class Members will continue to suffer harm as a result of Defendants' unlawful conduct; and

f. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which the Plaintiff and putative Class Members can seek redress for the harm caused by Defendants.

96. Alternatively, the Class may be certified for the following reasons:

a. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants;

b. Adjudications of individual Class Members' claims against Defendants would, as a practical matter, be dispositive of the interests of other putative Class Members who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

c. Defendants have acted or refused to act on grounds generally applicable to the putative Class, thereby making appropriate final and injunctive relief with respect to the putative Class as a whole.

## CAUSES OF ACTION
## COUNT I
## UNJUST ENRICHMENT
### (On behalf of the Nationwide Class and State Subclass)

97. Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

98. Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class as well as the Alabama subclass.

99. A party is unjustly enriched when it retains a benefit to the detriment of another party against the fundamental principles of justice, equity, and good conscience.

100. Defendants have been unjustly enriched by engaging in the wrongful acts and omissions set forth herein; transactions with Plaintiff and putative Class Members which were intended to result in, and did result in, sale of Defendants' Product.

101. Defendants have been unjustly enriched after making false, deceptive and/or misleading representations in advertisements and on the labels and/or package inserts/instructions of the Product because Defendants knew, or should have known, that the representations made were unsubstantiated, false, deceptive and/or misleading.

102. Defendants have reaped millions of dollars in revenue as a direct and proximate result of its scheme to mislead and deceive the Plaintiff and Class

Page 35 of 60

members regarding its unsubstantiated, false, deceptive and/or misleading representations as set forth herein. That Defendants have amassed such earnings by virtue of deceptive and misleading behavior violates fundamental principles of justice, equity, and good conscience.

103. The Plaintiff and putative Class Members have been damaged as a direct and proximate result of Defendants' unjust enrichment because they would not have purchased the Product on the same terms or for the same price had they known of the true dangers and hazards associated with use of the Product.

104. Defendants continue to be unjustly enriched by the deceptive and misleading labeling and advertising of the Product.

105. When required, the Plaintiff and Class Members are in privity with Defendants because Defendants' sale of the Product was either direct or through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendants' agents for the purpose of the sale of the Product.

106. As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, the Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

## COUNT II
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)
### (On behalf of the Nationwide Class)

107. Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

108. Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class.

109. Defendants sold the Product as part of their regular course of business.

110. The Plaintiff and putative Class Members purchased the Product either directly from Defendants or through authorized retailers such as Amazon, Wal-Mart, Walgreens and/or beauty supply and cosmetics stores, among others as set forth *supra*.

111. The MAGNUSON–MOSS WARRANTY ACT, 15 U.S.C. §§ 2301, *et seq.*, provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

112. The Product is a "consumer product" as that term is defined by 15 U.S.C. § 2301(1), as it constitutes tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes.

113. The Plaintiff and putative Class Members are "consumers" and "buyers" as defined by 15 U.S.C. § 2301(3), since they are buyers of the Product for purposes other than resale.

114. Defendants are entities engaged in the business of making and selling cosmetics, either directly or indirectly, to consumers such as the Plaintiff and the putative Class Members. As such, Defendants are "suppliers" as defined in 15 U.S.C. § 2301(4).

115. Defendants made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between the Plaintiff, the putative Class Members, and the Defendants. Defendants expressly warranted that the Product was fit for its intended purpose by making the express warranties that:

a. Defendants are "hair color experts";

b. using the Product is "an easy coloring experience";

c. the Product has an "Easy-to-use tear-tip applicator and shampoo-in formula";

d. the Product is "the same great formula" across the entire line of products; specifically, other versions (*i.e., colors*) in the "Balsam Color" hair dyeing line of Products;

e. the Product contains a "luxurious formula";

f. the Product is "enriched with conditioning botanicals to coat each strand";

g.     the Product "softens hair";

h.     the Product "hydrates locks for soft, silky hair";

i.      the Product has "benefits" such as "easy-to-use application";

j,      the at-home skin patch test is reliable, in that a consumer will know for certain whether they are safe from suffering Injuries if they utilize the Product as directed; and

k.     the Product is "infused with conditioning botanicals".

116.   Defendants' aforementioned written affirmations of fact, promises and/or descriptions, as alleged, are each a "written warranty." The affirmations of fact, promises and/or descriptions constitute a "written warranty" within the meaning of the MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301(6).

117.   Defendants breached the applicable warranty because the Product suffers from latent and/or inherent defects that cause substantial Injuries, rendering it unfit for its intended use and purpose. The defects substantially impair the use, value and safety of the Product.

118.   The latent and/or inherent defects at issue herein existed when the Product left Defendants' possession or control and were sold to the Plaintiff and putative Class Members. The true nature of the defects were not discoverable by the Plaintiff or putative Class Members at the time of their purchase of the Product.

119.   All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of the Plaintiff

and putative Class Members in terms of paying for the goods at issue. Defendants were placed on reasonable notice of the defect in the Product and their breach of the warranty, and have failed to cure the defects for the Plaintiff and putative Class Members, despite having reasonable time to do so.

120. Defendants breached their express warranties since the Product did not contain the properties it was represented to possess.

121. Defendants' breaches of warranties have caused the Plaintiff and putative Class Members to suffer Injuries, pay for a defective Product, and enter into transactions they would not have entered into for the consideration paid. As a direct and proximate result of Defendants' breaches of warranties, the Plaintiff and putative Class Members have suffered damages and continue to suffer damages, including economic damages in terms of the cost of the Product and the cost of efforts to mitigate the damages caused by using the Product.

122. As a direct and proximate result of Defendants' breaches of these warranties, the Plaintiff and putative Class Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

123. The Plaintiff and the putative Class therefore seek and are entitled to recover damages and other legal and equitable relief, injunctive relief and costs and

expenses (*including attorneys' fees based upon actual time expended*), as provided by 15 U.S.C. § 2310(d).

## COUNT III
## BREACH OF EXPRESS WARRANTY
### (On behalf of the Nationwide Class)

124. Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

125. Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class.

126. Defendants manufactured, marketed, distributed and sold the Product as part of their regular course of business.

127. The Plaintiff and the putative Class Members purchased the Product either directly from the Defendants or through authorized retailers such as Amazon, Wal-Mart, Walgreens, and/or beauty supply and cosmetics stores, among others as set forth *supra*.

128. Defendants, as the designers, manufacturers, marketers, distributors, or sellers expressly warranted that the Product was fit for its intended purpose by making the express warranties that the Product was a safe hair dyeing product, as set forth with specificity herein.

129. Defendants made the foregoing express representations and warranties nationwide to all United States consumers, which became the basis of the bargain

between the Plaintiff, the putative Class Members and Defendants, thereby creating express warranties that the Product would conform to Defendants' affirmations of fact, representations, promises, and descriptions; specifically, that:

a. Defendants are "hair color experts";

b. using the Product is "an easy coloring experience";

c. the Product has an "Easy-to-use tear-tip applicator and shampoo-in formula";

d. the Product is "the same great formula" across the entire line of products; specifically, other versions (*i.e., colors*) in the "Balsam Color" hair dyeing line of Products;

e. the Product contains a "luxurious formula";

f. the Product is "enriched with conditioning botanicals to coat each strand";

g. the Product "softens hair";

h. the Product "hydrates locks for soft, silky hair";

i. the Product has "benefits" such as "easy-to-use application";

j. the at-home skin patch test is reliable, in that a consumer will know for certain whether they are safe from suffering Injuries if they utilize the Product as directed; and

k. the Product is "infused with conditioning botanicals".

130. Defendants breached the foregoing express warranties by placing the Product into the stream of commerce and selling it to consumers, when the Product does not contain the properties it was represented to possess. Rather, the Product

Page 42 of 60

suffers from latent and/or inherent design and/or manufacturing defects that cause substantial Injuries, rendering the Product unfit for its intended use and purpose. These defects substantially impair the use, value and safety of the Product.

131. The latent and/or inherent design and/or manufacturing defects at issue herein existed when the Product left Defendants' possession or control and was/were sold to the Plaintiff and other putative Class Members nationwide. The true nature of the defects were not discoverable by the Plaintiff and putative Class Members at the time of their purchase of the Product.

132. As the manufacturers, suppliers, and/or sellers of the Product, Defendants had actual knowledge of the breach, and given the nature of the breach, (*i.e. false representations regarding the Product*), Defendants necessarily had knowledge that the representations made were false, deceptive and/or misleading.

133. The Plaintiff and the putative Class Members were injured as a direct and proximate result of Defendants' breaches of warranties because they would not have purchased the Product if the true facts had been known; specifically, economic damages in connection with the purchase of the Product, and Injuries from using the Product as directed by Defendants.

134. As a direct and proximate result of Defendants' breaches of these warranties, the Plaintiff and the putative Class Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such

other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT IV
## BREACH OF IMPLIEDWARRANTY
### (On behalf of the Nationwide Class)

135. Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

136. Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class.

137. Section 2-314 of the UNIFORM COMMERCIAL CODE provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. To be "merchantable," goods must, inter alia, "pass without objection in the trade under the contract description", "run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved", be "adequately contained, packaged, and labeled as the agreement may require", and "conform to the promise or affirmations of fact made on the container or label."

138. Defendants formulated, manufactured, tested, marketed, promoted, distributed, and sold the Product as safe for use by the public at large, including the Plaintiff and putative Class Members who purchased the Product.

Page 44 of 60

139. Defendants knew the use for which the Product was intended and impliedly warranted the product to be of merchantable quality, safe and fit for use.

140. The Plaintiff and putative Class Members reasonably relied on the skill and judgment of the Defendants, especially as self-professed "hair color experts", and as such their implied warranty, in using the Product.

141. However, the Product was not and is not of merchantable quality or safe or fit for its intended use, because it is unreasonably dangerous and unfit for the ordinary purpose for which it was used. Specifically, the Product causes Injuries as set forth herein.

142. Defendants breached their implied warranties because the Product does not have the quality, quantity, characteristics, or benefits as promised, and because the Product does not conform to the promises made on its labels and/or on Defendants' website.

143. As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, the Plaintiff and putative Class Members suffered injuries and damages.

144. The Plaintiff and putative Class Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Product if they had known the true facts - the Product did not and does not have the characteristics, quality, or value as impliedly warranted.

145. As a direct and proximate result of Defendants' breaches of these warranties, the Plaintiff and the putative Class Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT V
### Violation of the ALABAMA DECEPTIVE TRADE PRACTICES ACT
### (CODE OF ALABAMA §§ 8-19-1, *et seq.*)
### (On behalf of the Alabama Subclass)

146. Plaintiff, individually and for the Alabama Subclass, incorporates by reference all preceding paragraphs as though fully set forth herein.

147. Plaintiff asserts this cause of action on behalf of the Alabama Subclass.

148. Defendants marketing, sale and/or distribution of the Products and the Plaintiff and the putative Alabama Subclass Members' purchase of the Products was a sale or distribution of goods to a consumer within the meaning of the ALABAMA DECEPTIVE TRADE PRACTICES ACT (CODE OF ALABAMA §§ 8-19-1, *et seq.*).

149. The Plaintiff and putative Alabama Subclass Members' purchased the Product for personal, family, or household use.

150. Defendants' acts and practices as described herein have misled and deceived and/or likely to mislead and deceive members of the Alabama Subclass

and the general public of the State of Alabama. Defendants have advertised, marketed, and sold the Product as being a safe hair dyeing product, as set forth herein. Thus, Defendant has wrongfully:

a.  represented that its goods (*i.e., the Products*) have sponsorship, approval, characteristics, ingredients, uses benefits or qualities that they do not have;

b.  represented that its goods (*i.e., the Products"*) are of a particular standard, quality, or grade, or that its goods (*i.e., the Products"*) are of a particular style or model, if they are of another;

c.  failed to provide adequate warnings or instruction that a manufacturer exercising reasonable care would and should have provided concerning the risk of suffering Injuries from use and/or repeated use of the Product, particularly in light of the likelihood that the Product would Injuries;

d.  knowingly, intentionally, and/or recklessly omitted, suppressed, and/ or concealed the true, unreasonably dangerous nature of the Product;

e.  knowingly, intentionally, and/or recklessly omitted, suppressed, and/or concealed that the use of the Product posed a significant risk of chemical burns, allergic reactions, and other Injuries, particularly among African Americans;

f.  knowingly, intentionally, recklessly, or negligently omitted proper warnings from being placed on its packaging, or otherwise calling attention to this dangerous propensity—which caused serious personal injuries in many consumers including the Plaintiff and numerous putative Class Members; and,

g.  engaged in unconscionable, false, misleading, and/or deceptive acts and/or practices in the conduct of trade or commerce — marketing, advertising, and selling the Product.

Page 47 of 60

151. By its actions, Defendant is disseminating uniform false advertising by its labeling, concerning the Product, which by its nature is unfair, deceptive, untrue, and/or misleading within the meaning of the ALABAMA DECEPTIVE TRADE PRACTICES ACT. Such actions are likely to deceive, do deceive, and continue to deceive the Alabama general public for all the reasons detailed herein above.

152. Defendants intended for the Plaintiff and Alabama Subclass Members to rely on its representations and omissions and the Plaintiff and Alabama Subclass Members did rely on Defendant's misrepresentations and omissions of fact.

153. The misrepresentations and omissions of fact constitute deceptive, false and misleading advertising in violation of the ALABAMA DECEPTIVE TRADE PRACTICES ACT.

154. By performing the acts described herein Defendants caused monetary damage to the Plaintiff and Alabama Subclass Members of similarly situated individuals.

155. Accordingly, Plaintiff requests the following relief both individually and on behalf of the Alabama Subclass Members:

    a.    actual damages sustained by the Plaintiff and Alabama Subclass Members or the sum of $100.00, whichever is greater;

    b.    three times actual damages;

    c.    appropriate injunctive relief in the form of enjoining Defendant from continuing to violate Alabama statutory law;

    d.    attorneys' fees and costs; and

    e.    such other and further relief as the Court deems proper.

**COUNT VI**
**FRAUD**
**(On behalf of the Nationwide Class)**

156. Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

157. Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class.

158. As described herein, Defendants knowingly made material misrepresentations and omissions regarding the Product in their marketing and advertising materials, including the package in which the Product is sold and which contains the Product.

159. Defendants made these material misrepresentations and omissions in order to induce the Plaintiff and putative Class Members to purchase the Product.

160. Rather than inform consumers about the dangers and hazards associated with using the Product, Defendants represent it as an "easy color experience", amongst other false and/or misleading representations as set forth herein, such as:

    a.    represented that its goods (*i.e., the Products*) have sponsorship, approval, characteristics, ingredients, uses benefits or qualities that they do not have;

Page 49 of 60

b.     represented that its goods (*i.e., the Products"*) are of a particular standard, quality, or grade, or that its goods (*i.e., the Products"*) are of a particular style or model, if they are of another;

c.     failed to provide adequate warnings or instruction that a manufacturer exercising reasonable care would and should have provided concerning the risk of suffering Injuries from use and/or repeated use of the Product, particularly in light of the likelihood that the Product would Injuries;

d.     knowingly, intentionally, and/or recklessly omitted, suppressed, and/ or concealed the true, unreasonably dangerous nature of the Product;

e.     knowingly, intentionally, and/or recklessly omitted, suppressed, and/or concealed that the use of the Product posed a significant risk of chemical burns, allergic reactions, and other Injuries, particularly among African Americans; and,

f.     knowingly, intentionally, recklessly, or negligently omitted proper warnings from being placed on its packaging, or otherwise calling attention to this dangerous propensity—which caused serious personal injuries in many consumers including the Plaintiff and numerous putative Class Members.

161.   The facts which Defendants omitted, suppressed, and/or concealed as alleged in the preceding paragraph were material in that they concerned facts that would have been important to a reasonable consumer, including the Plaintiff and putative Class Members, in making a decision whether to purchase the Product.

162.   In fact, the Product is not a safe hair dyeing product. Rather, it is composed of caustic ingredients including PPD which is not safe and can cause serious Injuries as set forth herein.

Page 50 of 60

163. The misrepresentations and omissions made by Defendants, upon which the Plaintiff and putative Class Members reasonably and justifiably relied, were intended to induce and did actually induce the Plaintiff and putative Class Members to purchase the Product.

164. Defendants knew the Products ingredients, particularly PPD, were unsafe for use on the human head and/or scalp, but nevertheless made representations, as set forth herein, through its marketing, advertising and product labeling, in order to sell the product as a safe hair dyeing alternative. In reliance on these and other similar representations, the Plaintiff and putative Class Members were induced to, and did pay monies, to purchase the Product.

165. Had the Plaintiff and putative Class Members known the truth about the qualities of the Product, and the dangers and hazards associated with using the Product, they would not have purchased it.

166. As a direct and proximate result of Defendants' fraudulent acts and omissions, the Plaintiff and the putative Class Members were injured and damaged.

167. As a direct and proximate result of Defendants' fraudulent acts and omissions the Plaintiff and putative Class Members are entitled to legal and equitable relief including compensatory and punitive damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate by the Court.

## COUNT VI
## NEGLIGENT DESIGN AND FAILURE TO WARN
### (On behalf of the Nationwide Class)

168. Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

169. Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class.

170. At all times material to this action, Defendants were responsible for designing, formulating, testing, manufacturing, inspecting, packaging, marketing, distributing, supplying and/or selling the Product to the Plaintiff and putative Class Members.

171. At all times material to this action, the Plaintiff and putative Class Members' use of the Product was in a manner that was intended and/or reasonably foreseeable by Defendants. However, as set forth herein, use of the Product as directed by Defendants involved and continues to involve a substantial risk of producing Injuries.

172. At all times material to this action, the risk of sustaining Injuries was known to the Defendants or by exercising reasonable care should have been known to Defendants, in light of the generally recognized and prevailing knowledge available at the time of manufacture, design, distribution and/or sale.

173. Defendants, as self-professed "hair color experts"[1] knew—or by the exercise of reasonable care should have known—that the Product had and continues to have design defects.

174. In fact, the Product is not at all a safe hair dyeing product. As set forth herein, there is more than ample evidence demonstrating that PPD is not safe for use on the skin. Defendants, as self-professed "hair color experts"[1], knew, or should have known, that PPD could cause Injuries. Defendants nonetheless failed to adequately disclose this vital information to consumers, including the Plaintiff and putative Class Members.

175. Defendants knew that the Plaintiff and putative Class Members - who purchased and used the Product for its intended use and as directed by Defendants - were and are members of a foreseeable class of persons who were and are at risk of suffering serious inconvenience, expense, and/or Injuries solely because of the Products design defects.

176. Defendants, as the designers, manufacturers, distributors, marketers and/or sellers of the Product, had a duty to exercise reasonable care for the safety of the Plaintiff and putative Class Members who used, were using and/or intend to use the Product as directed by Defendants. Since Defendants produced, manufactured, distributed, and/or sold the Product, (1) they owed a non-delegable duty to consumers, including the Plaintiff and putative Class Members, to exercise

ordinary and reasonable care to properly design the Product, and (2) they had a continuing duty to adequately warn about the true dangers, hazards, and/or risks of suffering Injuries associated with the intended use of the Product, as described herein.

177. Notwithstanding the aforementioned duty, Defendants were negligent by one or more of the following acts or omissions in that the Defendants:

    a.    Failed to give adequate warnings to purchasers and users of the Product, including the Plaintiff and putative Class Members, regarding the risks and potential dangers of using the defective Product as directed by Defendants;

    b.    Failed to recommend and/or provide proper warnings to ensure the safety of the Plaintiff and putative Class Members of using the defective Product as directed by Defendants;

    c.    Failed to adequately investigate the safety hazards associated with the intended use of the Product;

    d.    Negligently designing a Product with serious safety hazards and risks; and

    e.    Oversold the benefits while minimizing the true risks of suffering Injuries associated with use of the Product.

178. Defendants knew, or by the exercise of reasonable care should have known (1) of the true inherent design defects and resulting hazards and dangers associated with using the Product as directed by Defendants, and (2) that the Plaintiff and putative Class Members could not reasonably be aware of the true risks. Thus, Defendants failed to exercise reasonable care in providing Class

Members with adequate warnings regarding the potential for sustaining Injuries when using the Product as directed by Defendants.

179. As a direct and proximate result of Defendants' negligent design and failure to adequately warn consumers that use of the Product could cause Injuries, the Plaintiff and putative Class Members have suffered damages as set forth herein.

180. As a direct and proximate result of Defendants' negligent design and failure to adequately warn consumers that use of the Product could cause Injuries, the Plaintiff and putative Class members are entitled to legal and equitable relief including compensatory and punitive damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate by the Court.

## **PRESERVATION CLAIMS**

181. Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

182. The running of any statute of limitations has been tolled by reason of the Defendants' fraudulent conduct. Defendants, through their affirmative misrepresentations and omissions, actively concealed from the Plaintiff and the putative Class Members the truth regarding the safety and value of the Product.

183. As a direct and proximate result of the Defendants' actions, Plaintiff and the putative Class Members were unaware, and could not have reasonably

known or have learned through reasonable diligence the truth regarding the safety and value of the Product, as set forth herein.

184. Furthermore, Defendants' are estopped from relying on any statute of limitations defense because of their fraudulent concealment of the truth regarding the true safety and value of the Product. "It is the manufacturer's and/or distributor's responsibility to ensure that products are labeled properly."[19] The Plaintiff and putative Class Members relied exclusively on the Defendants' to properly market, advertise and label the Product, as set forth herein, and relied to their detriment on Defendants, who opted to manufacture and distribute a hair product that is defective in design and/or manufactured and sold by means of false, deceptive and/or misleading advertising, marketing and/or labeling.

185. By marketing, selling and distributing the Product to consumers throughout the United States, Defendants made actionable statements that the Product was free of defects in design and/or manufacture, and that it was safe and fit for its ordinary intended use and purpose, and that it contained particularly valuable and/or superior attributes and qualities. Further, Defendants concealed what they knew or should have known about the true safety and value of the Product.

---

[19] http://www.fda.gov/Cosmetics/Labeling/Regulations/default.htm#information_re quired (*last visited Feb. 16, 2017*).

186. Defendants, as manufacturers of the Product, are held to the level of knowledge of an expert in the field of that type of hair care product, and had a duty not to conceal, omit or misrepresent in any manner whatsoever the safety risks resulting from the material defects in design and/or manufacture of the Product and how to use/apply the Product. "Companies and individuals who manufacture or market cosmetics have a legal responsibility to ensure the safety of their products."[20] Given Defendants' admitted superior knowledge and expertise, which are not shared by ordinary consumers including the Plaintiff and putative Class members, they had a compelling obligation to make a full and fair disclosure of the safety and value of the Product without concealing any facts within their knowledge.

187. Plaintiff and putative Class Members relied to their detriment on Defendants, who opted to manufacture and distribute a hair product that is defective in design and/or manufactured and sold by means of false, deceptive and/or misleading advertising, marketing and/or labeling. Therefore, Defendant is estopped from relying on any statute of limitation because of their intentional concealment of these facts.

188. Neither the Plaintiff nor putative Class members had any knowledge that Defendant was engaged in the wrongdoing alleged herein. Because of the

---

[20] http://www.fda.gov/Cosmetics/GuidanceRegulation/LawsRegulations/ucm07416 2.htm (*last visited Feb. 16, 2017*).

fraudulent acts of concealment and wrongdoing by Defendant, neither Plaintiff nor the putative Class Member could have reasonably discovered the wrongdoing until less than the applicable limitations period prior to the filing of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a. For an order certifying the Class under FEDERAL RULE OF CIVIL PROCEDURE 23;

b. For an order and naming the Plaintiff as representatives of the Class and Subclass;

c. For an order naming Plaintiff's counsel as Class Counsel to represent the Class and Subclass;

b. For an order declaring that Defendants' conduct violates the statutes and/or laws referenced herein;

c. For an order finding in favor of the Plaintiff, the Class and the Subclass on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by a jury and/or the Court;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief, including disgorgement of all profits and ill-gotten monetary gains received by Defendants from sales of the Product;

g. For an order enjoining Defendants from continuing the unlawful practices detailed herein; and

Page 58 of 60

h.    For an order awarding the Plaintiff, the Class and the Subclass their reasonable attorneys' fees and expenses and costs of suit.

## PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted, this the _15th_ day of _March_____, 2017.

W. Lewis Garrison, Jr.
AL Bar No.: ASB-3591-N74W
wlgarrison@hgdlawfirm.com
Brandy Lee Robertson
AL Bar No.: ASB-2737-D65R
brandy@hgdlawfirm.com
*Attorneys for Plaintiff and the Putative Class*
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, AL 35203
Telephone: 205.326.3336
Facsimile: 205-326-3332

K. Stephen Jackson
AL Bar No.: ASB-7587-O76K
steve@jacksonandtucker.com
Joseph L. "Josh" Tucker
AL Bar No.: ASB-1653-E26J
josh@jacksonandtucker.com
*Attorneys for Plaintiff and the Putative Class*
JACKSON & TUCKER, P.C.
2229 1st Ave. North
Birmingham, AL 35203-4203
Telephone: 205.252.3535
Facsimile: 205.252.3536

Page 59 of 60

**Please serve the Defendants by Certified Mail as follows:**

Coty, Inc.
Corporation Service Company
2711 Centerville Road
Suite 400
Wilmington, Delaware 19808

The Procter & Gamble Company, Inc.
CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

The Procter & Gamble Manufacturing Company, Inc.
CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

The Procter & Gamble Distributing, L.L.C.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

Procter & Gamble Hair Care, L.L.C.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

Case 2:17-cv-00118-WRW-TFM   Document 11   Filed 03/01/17   Page 19 of 1

```
Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602044385
Cashier ID: estrong
Transaction Date: 03/02/2017
Payer Name: HENINGER GARRISON DAVIS LLC
------------------------------------
CIVIL FILING FEE
 For: HENINGER GARRISON DAVIS LLC
 Case/Party: D-ALM-2-17-CV-000118-001
 Amount:       $400.00
------------------------------------
CHECK
 Check/Money Order Num: 28456
 Amt Tendered:  $400.00
------------------------------------
Total Due:       $400.00
Total Tendered: $400.00
Change Amt:       $0.00

2:17-cv-00118-TFM

Bowens v. Coty, Inc. et al
```

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| CARRIE BOWENS, on behalf of Herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.: 2:17-cv-00118-TFM |
| COTY, INC., a Delaware Corporation; THE PROCTER & GAMBLE COMPANY, INC., an Ohio Corporation; THE PROCTER & GAMBLE MANUFACTURING COMPANY, INC., an Ohio Corporation; THE PROCTER & GAMBLE DISTRIBUTING, L.L.C., a Delaware Limited Liability Company; PROCTER & GAMBLE HAIR CARE, L.L.C., a Delaware Limited Liability Company; | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MOTION TO TRANSFER AND CONSOLIDATE

COMES NOW the Plaintiff in the above-styled action, by and through the undersigned counsel of record, and files this *Motion to Transfer and Consolidate* pursuant to Rule 42 of the FEDERAL RULES OF CIVIL PROCEDURE and TITLE 28 § 1404(a) of the UNITED STATES CODE and, in support thereof, would show unto the Court as follows:

### I.   INTRODUCTION

The undersigned counsel represent the named Plaintiffs in the parallel class action lawsuits styled *Carrie Bowens v. Coty, Inc., et al.* [2:17-cv-00118-TFM] (*"Bowens* case") and *Shamika Jones v. Coty, Inc.. et al.* [1:16-cv-00622-WS-B (S.D. Ala.)] ("*Jones* case*"*) which raise

Page 1 of 7

virtually identical class wide factual allegations and legal claims against the same Defendants.[1]

The procedural history and posture of the *Jones* case is as follows:

1.  The *Jones* case was filed December 16, 2016. A copy of the Complaint is attached hereto as Exhibit "A" for reference.

2.  Each respective Defendant filed a formal *Answer* to Plaintiff's *Class Action Complaint* on January 27, 2017.

3.  The *Jones* case is pending before U.S. District Judge William H. and U.S. Magistrate Judge Sonja F. Bivins.

This case was filed March 1st, 2017.

This matter and the *Jones* case share virtually the same identical facts applicable to all class members and assert identical legal claims. Transfer and consolidation of these two actions will not unduly delay or prejudice the parties' rights because Plaintiff Carrie Bowens is an absent class member in the *Jones* case, and the Defendants' are already actively defending the *Jones* case. Both actions address the same defective hair product and involve the same Defendants. In order to avoid duplication of efforts, judicial waste, and the potential for disparate rulings, Plaintiff Bowens respectfully requests transfer of this case for consolidation with the *Jones* case.

## II.     LEGAL STANDARDS

FEDERAL RULE OF CIVIL PROCEDURE 42(a) codifies a district court's "inherent managerial power ' "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." ' " *Young v. City of Augusta,* 59 F.3d 1160, 1168 (11th Cir. 1995) (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)) (*citations omitted*). Rule 42(a) provides:

---

[1] Should the cases be transferred and consolidated into a single action, Plaintiffs *Jones* and *Bowens* intend to request leave of court to file a consolidated, amended Complaint to streamline and clarify, for purposes of consistently of pleadings, the factual and legal allegations. No additional legal claims will be asserted.

Page 2 of 7

> (a)  CONSOLIDATION. If actions before the court involve a common question of law or fact the court may:
>
>> (1)  join for hearing or trial any or all matters at issue in the actions;
>>
>> (2)  consolidate the actions; or
>>
>> (3)  issue any other orders to avoid unnecessary cost or delay.

FED. R. CIV. P. 42(a). The Eleventh Circuit has explained that consolidation pursuant to Rule 42(a) "is permissive and vests a purely discretionary power in the district court." *Young*, at 1168 (quoting *In re Air Crash Disaster at Florida Everglades,* 549 F.2d 1006, 1013 (5th Cir. 1977)[2]).

> This rule is a codification of a trial court's inherent managerial power " 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.' "

*Hendrix*, at 1495 (quoting *In re Air Crash Disaster at Florida Everglades*, at 1012 (quoting *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 166 (1936)). In exercising that discretion, district courts must weigh the risk of prejudice and confusion wrought by consolidation against the risk of inconsistent rulings on common factual and legal questions, the burden on the parties and the court (*i.e., available judicial resources*), the length of time required to conclude multiple suits as against a single one, and the relative expense of proceeding with separate lawsuits if they are not consolidated. See *Hendrix*, at 1495.

> The federal statute governing transfer of venue provides:
>
> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

28 U.S.C. § 1404(a). Like Rule 42(a), "[d]istrict courts have broad discretion in deciding whether to transfer an action to a more convenient forum." *Continental Motors*, *Inc*. *v. Jewell Aircraft*, *Inc*., 882 F. Supp.2d 1296, 1312 (S.D. Ala. 2012). A motion to transfer under § 1404(a) calls on the district court to make "an individualized, case-by-case determination based on principles of fairness and convenience." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244 (1988).

### III.    ARGUMENT AND CONCLUSION

District courts in this Circuit "have been 'urged to make good use of Rule 42(a) ... in order to expedite the trial and eliminate unnecessary repetition and confusion[.]'" *Young*, at 1169 (quoting *Gentry v. Smith*, 487 F.2d 571, 581 (5th Cir. 1973)); see also *Hendrix,* 776 F.2d at 1495 (quoting *Dupont v. Southern Pacific Co.*, 366 F.2d 193, 195 (5th Cir. 1966), *cert. denied*, 386 U.S. 958, 87 S.Ct. 1027 (1967)). A § 1404(a) "convenience/interests of justice" analysis reaches the same conclusion; both the *Jones* case and the present case involve the same facts common to all class members and the same legal claims thus, to proceed along a two-tracked path in federal court with two separate class action lawsuits pending would be inordinately wasteful and needlessly time-consuming for both the litigants and the Court.[3] Based on considerations of efficiency, judicial economy, the risk of inconsistent rulings on common questions, the burden on the parties and the court, and the relative expense of proceeding separately versus together,

---

[3] An exhaustive analysis of the factors typically analyzed in deciding the propriety of transfer under § 1404(a) (*i.e.,* (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances [see *Manuel v. Convergys Corp*. [430 F.3d 1132, 1135 n.1 (11th Cir. 2005)] is unnecessary given the present action and the *Jones* case are still in their infancy; the pleading stage.

consolidation of these actions would streamline the proceedings and eliminate unnecessary repetition and confusion. Simply stated, it would be far more sensible and efficient to litigate the two cases in a single proceeding than to do so in duplicative actions; it just makes sense.

WHEREFORE, premises considered, Plaintiff Bowens respectfully requests the Court transfer her case for consolidation with the *Jones* case (*Shamika Jones v Coty, Inc.,. et al.* [1:16-cv-00622-WS-B (S.D. Ala.)]).

Dated: 6th day of March, 2017.

/s/ W. Lewis Garrison, Jr.
W. Lewis Garrison, Jr.
Ala. Bar No.: ASB- 3591-N74W
Brandy Lee Robertson
Ala. Bar No.: ASB-2737-D65R
*Counsel for Plaintiff and the*
*Putative Class*
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, AL 35203
wlgarrison@hgdlawfirm.com
brandy@hgdlawfirm.com
Telephone: 205-326-3336
Facsimile: 205-380-8072


/s/ Joseph L. "Josh" Tucker
Joseph L. Tucker
Ala. Bar No.: ASB-1653-E26J
*Counsel for Plaintiff and the*
*Putative Class*
JACKSON & TUCKER, P.C.
2229 1st Ave. North
Birmingham, AL 35203-4203
Telephone: 205.252.3535
Facsimile: 205.252.3536
josh@jacksonandtucker.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this the 6th day of March, 2017, electronically mailed a copy of the foregoing directly to the Attorneys for the Defendants in the case styled *Shamika Jones v Coty, Inc.,. et al.* [1:16-cv-00622-WS-B (S.D. Ala.)], and have mailed a copy of the foregoing directly to the registered agents for the Defendants in the case styled *Carrie Bowens v. Coty, Inc., et al.* [2:17-cv-00118-TFM (M.D. Ala.] using the U.S. Postal Service as follows:

Coty, Inc.
Corporation Service Company
2711 Centerville Road
Suite 400
Wilmington, Delaware 19808

The Procter & Gamble Company, Inc.
CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

The Procter & Gamble Manufacturing
Company, Inc.
CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

The Procter & Gamble Distributing,
L.L.C.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

Procter & Gamble Hair Care, L.L.C.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

*Attorneys for Defendants in*
<u>Shamika Jones v Coty, Inc., et al.</u> [1:16-cv-00622-WS-B]

Walter J. Price, III
HUIE, FERNAMBUCQ & STEWART, LLP
800 Regions Bank Bldg., Ste. 825
417 North 20th Street
Telephone: 205-251-1193
Facsimile: 205-251-1256
Birmingham, AL 35203-3279
**wprice@huielaw.com**

Jeffrey B. Cannon, Jr.
HUIE, FERNAMBUCQ & STEWART, LLP
2801 Highway 280 S., Suite 200
Birmingham, AL 35223
Telephone: 205-251-1193
Facsimile: 205-251-1256
**bcannon@huielaw.com**

Page 6 of 7

Hugh Cannon Lawley
HUIE, FERNAMBUCQ & STEWART, LLP
2801 Highway 280 S., Suite 200
Birmingham, AL 35223
Telephone: 205-251-1193
Facsimile: 205-251-1256
**cannon@huielaw.com**

/s/ Joseph L. "Josh" Tucker
Joseph L. Tucker
josh@jacksonandtucker.com
JACKSON & TUCKER, P.C.
2229 1st Ave. North
Birmingham, AL 35203-4203

# EXHIBIT "A"

Case 7:16-cv-00622-WS-BM Document 1 Filed 12/13/16 Page 1 of 54

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| SHAMIKA JONES, on behalf of Herself and all others similarly situated, | ) ) ) | |
| Plaintifs, | ) ) | |
| v. | ) ) | Civil Action No.: __16-622__ |
| COTY, INC., a Delaware Corporation; THE PROCTER & GAMBLE COMPANY, INC., an Ohio Corporation; THE PROCTER & GAMBLE MANUFACTURING COMPANY, INC., an Ohio Corporation; THE PROCTER & GAMBLE DISTRIBUTING, L.L.C., a Delaware Limited Liability Company; PROCTER & GAMBLE HAIR CARE, L.L.C., a Delaware Limited Liability Company; Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **CLASS ACTION COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES** |

## CLASS ACTION COMPLAINT

Plaintiff, Shamika Jones, on behalf of herself and all others similarly situated, brings this class action against Defendant, COTY, Inc., The Procter & Gamble Company, Inc., The Procter & Gamble Manufacturing Company, Inc., The Procter & Gamble Distributing, L.L.C., and Procter & Gamble Hair Care, L.L.C. (*collectively* "Defendants" *or* "Clairol Defendants"), and alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

Page 1 of 53

# INTRODUCTION

1.      This is a class action brought by Plaintiff Shamika Jones, on behalf of herself and all others similarly situated persons, against COTY, Inc., The Procter & Gamble Company, Inc., The Procter & Gamble Manufacturing Company, Inc., The Procter & Gamble Distributing, L.L.C., and Procter & Gamble Hair Care, L.L.C. Plaintiff seeks damages and equitable remedies for herself and the putative Class, which includes consumers who purchased Clairol Balsam Color hair dyeing kit (*also labeled as "The Balsam Color Kit"*) (*hereinafter* "the Product").

2.      The Plaintiff's claims are for Unjust Enrichment (Count I), VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (Count II), Breach of Express Warranty (Count III), Breach of Implied Warranty (Count IV), violation of the ALABAMA DECEPTIVE TRADE PRACTICES ACT (Count V), Fraud (Count VI), and Negligent Design and Failure to Warn (Count VII).

# PARTIES

3.      Plaintiff, Shamika Jones, is a resident citizen of Mobile, Alabama, Mobile County.

4.      Defendant, Coty, Inc. (*hereinafter* "Coty"), is a Delaware Corporation with a Principal Place of Business located at 350 5th Avenue, New York, New York 10118. According to the Delaware Secretary of State, Defendant, Coty, Inc., can be served by registered agent as follows:

Case Case 7:16-cv-00922-WSF-BM Document 12 Filed 13/16/17 Page of 53 54

Corporation Service Company
2711 Centerville Road
Suite 400
Wilmington, Delaware 19808

5.       Defendant, The Procter & Gamble Company, Inc. (*hereinafter* "P&G Corp."), is an Ohio Corporation with a Principal Place of Business located at 1 Procter & Gamble Plaza, Cincinnati, Ohio 45202-3315. According to the Ohio Secretary of State, Defendant The Procter & Gamble Company, Inc., can be served by registered agent as follows:

CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

6.       Defendant, The Procter & Gamble Manufacturing Company, Inc. (*hereinafter* "P&G Manufacturing"), is an Ohio Corporation with a Principal Place of Business located at 3875 Reservoir Road, Lima, Ohio 45801-3310. According to the Ohio Secretary of State, Defendant the Procter & Gamble Manufacturing Company, Inc., can be served by registered agent as follows:

CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

7.       Defendant, The Procter & Gamble Distributing, L.L.C., is a Delaware Limited Liability Company with a Principal Place of Business located at 6280 Center Hill Drive, Cincinnati, Ohio 45224. According to the Delaware Secretary of

Page 3 of 53

Case 7:16-cv-00622-WSF-BM Document 1-2 Filed 03/16/17 Page 4 of 53

State, Defendant The Procter & Gamble Distributing, L.L.C. can be served by registered agent as follows:

The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

8. Defendant, Procter & Gamble Hair Care, L.L.C., is a Delaware Limited Liability Company with a Principal Place of Business located at 2200 Lower Muscatine Road, Iowa City, Iowa 52240. According to the Delaware Secretary of State, Defendant Procter & Gamble Hair Care, L.L.C. can be served by registered agent as follows:

The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member, Plaintiff Shamika Jones, is a citizen of a state different from at least one Defendant.

10. This Court has personal jurisdiction over Defendants as many of the acts and omissions giving rise to this action occurred in the State of Alabama,

Page 4 of 53

Case 7:15-cv-00022-WST-BM Document 22 Filed 13/08/17 Page 5 of 54

including purchases of the Product by the Plaintiff and other putative Class Members. Defendants have sufficient minimum contacts with the State of Alabama and intentionally availed themselves, and continue to avail themselves of the jurisdiction of this Court through their business ventures; specifically, the promotion, sale, marketing, and distribution of their products, including the Product, in this State.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this District as Defendants do business throughout this District, including promoting, selling, marketing and distributing the Product at issue, and the named Plaintiff purchased the Product in this District.

### GENERAL FACTUAL ALLEGATIONS
### COMMON TO ALL CLASS MEMBERS

12. Defendants The Procter & Gamble Company, Inc., The Procter & Gamble Manufacturing Company, Inc., The Procter & Gamble Distributing, L.L.C., and Procter & Gamble Hair Care, L.L.C. have developed, designed, formulated, manufactured, packaged, labeled, advertised, marketed, instructed on (*how to use the Product*), warned about, distributed and sold the Clairol hair dye products (*i.e., "hair color kits"*) since at least 1956, when they were introduced

under the brand name "Miss Clairol" as the "FIRST at home hair color kit that could lighten, tint, condition and shampoo hair in one step".[1]

13.    In or around July of 2015, Defendant The Proctor & Gamble Company, Inc. announced the intended "merger" (*i.e., sale*) of 43 of its brands with Defendant Coty, Inc., including the "Clairol Balsam Color" brand. In or around October of 2016 the deal was finalized and valued at approximately $12.5 billion.

14.    The Product is a cosmetic hair dye intended to improve appearance and alter hair color, and is sold online and in retail shops including, but not limited to, Amazon, Walgreens, Jet.com, Wal-Mart, Clairol-Balsam-Color.best-deal.com, makeupalley.com, soap.com, and other cosmetic and beauty supply stores nationwide.

15.    Defendants' labeling markets the Product to women as "designed to give you hair with three signs of beautiful color: VIBRANT ● SHINY ● LASTING", and as "PERMANENT COLOR ● 100% GRAY COVERAGE"; as having an "Easy-to-use tear-tip applicator and shampoo-in formula"; and as having "the same great formula" of other versions (*i.e., colors*) in their "Balsam Color" hair dyeing line of Products.

---

[1] https://www.clairol.com/en-US/inside (*last visited Nov. 29, 2016*).

Case Case 7:16-cv-08622-WCM Document 21 Filed 12/16/17 Page of 54

16.     Defendants market the Product on the clairol.com[2] website as a "luxurious formula", "enriched with conditioning botanicals to coat each strand" that "softens hair", "hydrates locks for soft, silky hair", that is "available in 16 shades", and has "benefits" such as "easy-to-use application", amongst other representations. Defendants further claim the Clairol brand to be "YOUR COLOR EXPERT".[1]

17.     Defendants represent that "The Science & Ingredients" are their "most hydrating formula" and that the Product is "infused with conditioning botanicals"[1] and that the Clairol brand, "makes the best at home hair color products around".[3]

18.     Defendants, as manufacturers of the Product, are held to the level of knowledge of an expert in the field of that type of hair care product, and had a duty to warn its consumers, including the Plaintiff and putative Class Members, of the true risks and dangers associated with using the Product. However, as set forth herein, Defendants failed to do so.

19.     Because the U.S. FOOD AND DRUG ADMINISTRATION has limited enforcement ability to regulate cosmetic companies under the FOOD, DRUG & COSMETIC ACT, 21 U.S.C. § 301 *et seq.*, consumers, including the Plaintiff and

---

[2] https://www.clairol.com/en-US/products/hair-color/balsam (*last visited Nov. 29, 2016*).

[3] https://www.clairol.com/en-US/beauty-school/article/common-color-questions
 (*last visited Nov. 29, 2016*).

Page 7 of 53

Case 7:16-cv-00622-RWS-BM Document 12 Filed 08/26/17 Page 8 of 54

putative Class Members, rely exclusively on cosmetic companies like Defendants who have the autonomy to decide whether to manufacture and distribute safe products. Here, the Plaintiff and putative Class Members relied, to their detriment, on Defendants, who opted to manufacture and distribute a hair product, the Product, which is defective in design and/or manufacture.

20.     As described herein, an inherent design and/or manufacturing defect in the Product causes physical injuries and damages including the following:

- a.     significant hair loss;
- b.     skin and scalp irritation;
- c.     scalp burnings and blistering;
- d.     severe dermatitis;
- e.     eye irritation and tearing;
- f.     asthma;
- g.     gastritis;
- h.     renal damage and/or failure;
- i.     vertigo;
- j.     tremors, convulsions and comas; and
- k.     eczematoid contact dermatitis [in chronic (long-term) expose situations].

(*hereinafter* "the Injuries").

21.     Even if used as directed, Defendants failed to adequately warn against the negative risks, side effects, and Injuries associated with the Product, including the Injuries set forth above and elsewhere herein, and the long-term and cumulative effects of usage of the Product.

22.     Because the Defendants failed (*and continue to fail*) to adequately warn against the negative risks, side effects, and Injuries associated with the Product, the Plaintiff and the putative Class Members believed the Product to be safe to use.

23.     Defendants' failed to disclose the inherent design and/or manufacturing defects of the Product, which were known to Defendants, or in the exercise of reasonable care should have been known to the Defendants. These defects were unknown to the Plaintiff and putative Class Members at the time of purchase and/or use, and thus constitute an actionable misrepresentation or omission, as well as an unfair, unlawful, fraudulent, and deceptive business practice.

24.     If Defendants had disclosed to Plaintiff and putative Class Members the true nature of the Product, that it could cause severe Injuries when used as instructed by Defendants, they would not have purchased the Product.

25.     The Plaintiff and putative Class Members have been damaged by Defendants' concealment and non-disclosure of the true defective nature of the Product because they were misled regarding the safety and value of the Product.

26.     Contrary to Defendants' labeling and marketing representations, the Product contains caustic ingredients including, but not strictly limited to, p-Phenylenediamine (*hereinafter* "PPD") that can and do cause Injuries. The amount

Page 9 of 53

83

of PPD in the Product varies depending on which of the specific 16 "shades" of the

Product a consumer purchases.[4]

27.     As a direct and proximate result of the defective nature of the Product,

it is unfit for its intended use and purpose.

28.     The Injuries caused by the Product are not *de minimus*. Consumers

damaged by the Product often have permanent hair loss, amongst other Injuries.

Plaintiff and the putative Class Members have suffered injury in fact, including

economic damages, as a direct and proximate result of purchasing and/or using the

Product.

29.     Defendants' claims are deceptive, inaccurate, misleading, and not

supported by scientific fact.

30.     Defendants, as "hair color experts", knew or should have known that

even when used as directed, the Product creates an unnecessary risk of injury, as

described herein, and failed to disclose or otherwise adequately warn against the

negative effects, risks, and potential injuries associated with using the Product.

31.     In omitting, concealing, and inadequately providing critical safety

information regarding the risks of using of the Product, and in order to induce its

purchase and use, Defendants engaged in and continue to engage in conduct likely

---

[4] https://www.clairol.com/m/master/pdf/Balsam_ingredients.pdf (*last visited Nov. 29, 2016*).

Case 1:16-cv-10622-WSF-BM Document 1 Filed 12/13/16 Page 11 of 53

to mislead and/or deceive consumers including the Plaintiff and putative Class Members; Defendants' conduct is fraudulent, unfair, and unlawful.

32.     Defendants knew or should have known that the chemicals in the Product, including, but not strictly limited to, "PPD", are associated with health risks including the Injuries set forth herein yet, Defendants did not (*and continue to fail to*) adequately warn consumers, including the Plaintiff and putative Class Members of the risk of Injuries.

33. In 2006, PPD was named allergen of the year by the AMERICAN CONTACT DERMATITIS SOCIETY. Defendants knew or should have known of these findings.

34.     The U.S. ENVIRONMENTAL PROTECTION AGENCY lists several links between PPD use/exposure and several acute and significant health problems including, but not strictly limited to:

    a.    Severe dermatitis;
    b.    Eye Irritation and Tearing;
    c.    Asthma;
    d.    Gastritis;
    e.    Renal failure;
    f.    Vertigo;
    g.    Tremors, convulsions and comas; and
    h.    Eczematoid contact dermatitis may occur in chronic (long-term) expose situations.

See p-Phenylenediamine "Hazard Study"
https://www.epa.gov/sites/production/files/2016-09/documents/p-phenylenedia

Page 11 of 53

mine.pdf.

35.    Defendants do not warn about *any* of the conditions listed in the preceding paragraph on their packaging or product inserts.

36.    16 CFR § 1500.13 states that the U.S. CONSUMER PRODUCT SAFETY COMMISSION has determined that PPD is one of five substances meeting the definition of a "strong sensitizer"; specifically, PPD and products that contain PPD are deemed to "have a significant potential for causing hypersensitivity". Defendants knew or should have known of these findings.

37.    Similarly, the NATIONAL INSTITUTE FOR OCCUPATIONAL SAFETY AND HEALTH (*under the oversight of the* U.S. CENTER FOR DISEASE CONTROL) *International Chemical Safety Card* notes that repeated occupational dermal exposure to PPD "may cause skin sensitization" and that PPD "may have effects on the kidneys, resulting in kidney impairment".

See http://www.cdc.gov/niosh/ipcsneng/neng0805.html [page last updated July 1, 2014] (*last visited Nov. 29, 2016*).

Defendants knew or should have known of these findings.

38.    A 2006 article published in the *Journal of Toxicology and Environmental Health* found a link, in at least one scientific study, between hair dyes and certain cancers including bladder cancer, non-Hodgkin's lymphoma, and blood cancers such as myeloma and leukemia. See Rollison, D.E.; Helzlsouer, K.J.; Pinney, S.M., (2006), PERSONAL HAIR DYE USE AND CANCER: A SYSTEMATIC

Page 12 of 53

86

Case 1:16-cv-10624-WSF-BM Document 1 Filed 12/03/16 Page 13 of 53

LITERATURE REVIEW AND EVALUATION OF EXPOSURE ASSESSMENT IN STUDIES PUBLISHED SINCE 1992. JOURNAL OF TOXICOLOGY AND ENVIRONMENTAL HEALTH. Part B, Critical reviews. 9 (5): 413–39. Defendants knew or should have known of these findings.

39. Defendants have placed no restrictions or warnings concerning cumulative or repeated use of the Product or PPD on the Products packaging, packet inserts or marketing materials despite the known, published findings of risks of repeated exposure to PPD.

40. Once a person has become sensitized to PPD (*i.e., has suffered a significant reaction*) that sensitization is likely to remain with them for life. Defendants knew or should have known about the increased risk for hypersensitization but Defendants failed to put instructions or warnings related to PPD sensitization and hypersensitization.

41. Defendants did not (*and still do not*) adequately warn consumers, including the Plaintiff and the putative Class Members, on their product labels, inserts, or marketing materials that the PPD in the Product can cause severe Injuries, including systemic anaphylaxis. See Goldberg, B.J., Herman, F.F., Hirita, I., SYSTEMIC ANAPHYLAXIS DUE TO AN OXIDATION PRODUCT OF P-PHENYLENEDIAMINE IN A HAIR DYE. *Ann. Allergy*, 1987; 58(3):205-8.

42.     There are safer and cheaper alternatives to PPD available to Defendants for use in the Product. However, despite the known risks of PPD, Defendants continue to use PPD in the Product.

43.     Safer known alternatives include but are not limited to:

      a.      Henna based hair dyes;

      b.      Para-toluenediamine sulfate hair dyes; and

      c.      Other semi-permanent dyes.

44.     Furthermore, Defendants fail to warn or disclose that African American consumers are at dramatically higher risk of an acute reaction to PPD than those of Caucasian decent.

45.     In 2001, a study performed by the CLEVELAND CLINIC concluded that the sensitization rate of PPD in African American users was 10.6% versus 4.5% in Caucasian users. The study further concluded that the sensitization rate of PPD in African American men in particular was 21.2% compared to 4.2% in Caucasians. See Dickel, H., Taylor, J.S., Evey, P., Merk, H.F., COMPARISON OF PATCH TEST RESULT WITH A STANDARD SERIES AMONG WHITE AND BLACK RACIAL GROUPS. *Am. J. Contact. Dermat.* 2001; 12(2):77-82. Thus, while the Product has an unacceptable and unreasonable rate of adverse reaction in the general population, the rate of adverse reaction is even more unacceptable and unreasonable rate of adverse reaction in African Americans.

46.     Defendants knew or should have known that consumers were at a greater risk of experiencing an adverse reaction while using PPD compared to other hair dye products, and Defendants knew or should have known that consumers African Americans were at an even greater risk of experiencing an adverse reaction to PPD.

47.     Although, consistent with 21 U.S.C. § 361(a), Defendants instruct users to conduct a preliminary test to help determine whether a user will have an adverse reaction to the Product, the preliminary test Defendants recommend and the directions and instructions for its administration are inadequate.

48.     The MAYO CLINIC reported the incidence of positive patch-test reactions to PPD in "patch test results" conducted between 1998 and 2000 at five-percent (5%) of the population of tested individuals. See Wetter D.A., Davis M.D.P., Yiannias J.A., *et al*., PATCH TEST RESULTS FROM THE MAYO CLINIC CONTACT DERMATITIS GROUP, 1998-2000. J. Am. Acad. Dermatol. 2005; 53:416-21. Defendants knew or should have known of these findings.

49.     Similarly, the NORTH AMERICAN CONTACT DERMATITIS GROUP reported the incidence of positive patch-test reactions in "patch test results" conducted between 2001 and 2002 at just under five-percent (5%) of the population of tested individuals. See Pratt M.D., Belsito D.V., DeLeo V.A., *et al*. NORTH AMERICAN CONTACT DERMATITIS GROUP PATCH TEST RESULTS, 2001-2002

Page 15 of 53

STUDY PERIOD. *Dermatitis* 2004; 15(4):176-83. Defendants knew or should have known of these findings.

50.    Later, the NORTH AMERICAN CONTACT DERMATITIS GROUP reported the incidence of positive patch-test reactions in "patch test results" conducted between 2005 and 2006 at five-percent (5%) of the population of tested individuals. See Pratt, M.D., Belsito, D.V., DeLeo, V.A., *et al*. NORTH AMERICAN CONTACT DERMATITIS GROUP PATCH TEST RESULTS, 2005-2006 STUDY PERIOD. *Dermatitis* 2009; 20(3):149-60. Defendants knew or should have known of these findings.

51.    Despite the abundance of scientific and other published material evidencing a certain percentage of the population would have an allergic reaction to the Product, Defendants failed to warn or disclose such rates of reaction to consumers and the public in general, including the Plaintiff and the putative Class Members, and, therefore, failed to adequately warn of the true nature of the risks of using the Product.

52.    Defendants recommend a self-applied, at-home "skin patch test" on a consumer's arm/elbow prior to use. Defendants recommend this test despite knowing that the skin on the scalp/head is more sensitive and may react differently than the arm/elbow or other parts of the body. Defendants provide no guidelines on how to test the Product on a consumer's head and/or scalp prior to use.

53. Defendants knew or should have known that their recommended at-home skin patch test is an inadequate method to determine if a user will have an adverse reaction to PPD.

54. The universal standard for identifying skin allergies, including acute contact dermatitis to PPD, is a patch test which is administered and monitored by a dermatologist or similar trained medical professional (*a "medical skin patch test"*) over a 7-10 day period.

55. During a "medical skin patch test" a trained medical professional places small quantities of known allergens, such as PPD, on the patient's back. The test areas are then covered with special hypoallergenic adhesive tape so the patches stay in place undisturbed for 48 hours.

56. Generally, a "medical skin patch test" requires two to three appointments so that the reactions can be carefully monitored by the trained medical professional.

57. Despite the knowledge that more accurate patch tests conducted by trained medical professionals are done over the course of several days or even weeks, Defendants wrongly and negligently fail to advise consumers, including the Plaintiff and putative Class Members, of the need and corresponding health benefit of having a "medical skin patch test" performed before using the Product.

Page 17 of 53

58. In December 2007, the EUROPEAN COMMISSION SCIENTIFIC COMMITTEE ON CONSUMER PRODUCTS released an Opinion titled "*Sensitivity to Hair Dyes – Consumer Self Testing*." The COMMITTEE concluded that at home skin tests, given for the purpose of providing an indication as to whether an individual consumer may or may not have a contact allergy to hair dye chemicals, were unreliable. The Committee specifically found that:

  a. Self-testing leads to misleading and false-negative results thus giving individuals who are allergic to hair dye substances the false impression that they are not allergic and not at risk of developing an allergic reaction by dyeing their hair;

  b. There is a potential risk that "self-tests" result in induction of skin sensitization to hair dye substances;

  c. The self-test recommendations were not standardized and uncontrolled allowing for large variations in dose, number of applications, and duration of exposure;

  d. False negative results from self-testing are considered to be the largest problem;

  e. 48 hours known to be too short as patch test reactions may develop up to seven days after application;

  f. Self-test locations on the arm or behind the ear are not reliable, while patch testing done on the back is good for reproducibility; and

  g. Self-tests are not performed or observed by trained observers.

See http://ec.europa.eu/health/ph_risk/committees/04_sccp/docs/sccp_o_114.pdf (*last visited Nov. 29, 2016*).

Page 18 of 53

59.     Defendants did not (*and currently do not*) warn or disclose that self-testing, such as the test recommended by Defendants, is inferior to a patch test administered and monitored by a dermatologist or similar trained medical professional (*a "medical skin patch test"*), is not an effective or reliable to determine whether an individual consumer may or may not have a contact allergy to PPD.

60.     Nowhere on their product packaging or inserts, webpage, or marketing materials do Defendants recommend that consumers undergo a "medical skin patch test" before using the Product.

61.     Defendants instruct a consumer to "not wash, cover, or disturb the test area for 48 hours." Compliance with Defendants' version of an "allergy test" is unreasonable and essentially unfeasible. The risk of accidental contamination is simply probable because the average consumer is not trained to conduct a test comparable to a "medical skin patch test". This renders the consumer performed test useless.

62.     For example, during Defendants' version of an allergy test, for two days, consumers are unrealistically expected to:

      a.     Not shower;

      b.     Not wear long sleeve shirts;

      c.     Not accidently rub against anything;

d.     Not sweat; and

e.     Not close their elbow.

63.    Defendants knew or should have known that a percentage of consumers would have an allergic reaction to their products but fail to advise consumers to undergo proper allergy testing (*i.e., a "medical skin patch test"*) before using the Product.

64.    Defendants knew or should have known that their recommended test was not adequate because:

     a.     The instructions and directions for use did not disclose that Defendants' at-home test was not a substitute for a "medical skin patch test" and that more accurate results could and would be obtained by conducting a "medical skin patch test";

     b.     The risk that the Defendants' at-home test would be performed in the wrong area;

     c.     the risk that the amount of the Product used in the Defendants' at-home test would be wrong;

     d.     the arm is not the appropriate location for a skin allergy test, especially since the Product is to be used on the head and scalp;

     e.     the risk of false negatives is high;

     f.     the area that is tested is not covered or protected during the test; and

     g.     The risk that the product would be disturbed by clothing or daily activities is high.

65.     Consumers, including the Plaintiff and putative Class Members, detrimentally relied on Defendants' instructions to perform an at-home patch test.

66.     Defendants knew or should have known that it is highly unlikely that a consumer would be able to (i) perform Defendants' at-home patch test properly, and (ii) obtain reliable results.

67.     In addition, Defendants know or should have known that sensitization to PPD during performance of an at-home skin patch test is likely to occur in a certain percentage of the population.

68.     When sensitization occurs during a patch test, the consumer will have a late reaction to the PPD more than 48 hours, or not at all, after exposure rendering the Defendants testing procedure unreliable and, therefore, useless.

69.     Due to the potential for PPD sensitization during a patch test, it is possible for consumers to have a negative skin patch test result and still have a severe reaction when they use the Product.

70.     Despite this fact, Defendants did not (*and still do not*) warn or disclose the risks of sensitization during a skin patch test.

71.     Defendants' further provide inadequate skin patch test instructions in that Defendants use ambiguous words such as "small" and "equal" parts without providing any direction as to what equates to "small" or what tools or methods to

Page 21 of 53

measure the actual amount of each chemical to ensure that "equal" amounts are being applied (*i.e., a teaspoon, a tablespoon?*).

72.    Defendants failure to provide any instructions on what is meant by a "small" amount of chemical(s) leaves the consumer to guess/speculate as to the proper testing amount. Consequently, the Defendants' instructions on the at-home skin patch testing procedure are fundamentally flawed.

73.    Without precise measuring amounts and/or tools, it is impossible to determine what a "small" amount is and if "equal" amounts of each chemical are being mixed for skin patch testing purposes.

74.    Even if the product's patch test was adequate and reliable, which it is not, the vague, ambiguous, and inadequate instructions for its use render the test wholly inadequate and utterly useless. Thus, Defendants fail to adequately warn or disclose the probability that a user will have an adverse reaction to Product by virtue of their at-home skin patch test instructions.

75.    Despite this knowledge, Defendants failed (*and continue to fail*) to adequately warn or disclose to their consumers that they were exposed to a significantly increased risk of suffering an adverse reaction as a direct and proximate result of using the Product.

76.    Instead, as self-proclaimed "hair color experts", Defendants represent the Product to be safe and effective, particularly when used as directed, including

Page 22 of 53

performing their at-home skin patch test, and actively market the Product to consumers, including the Plaintiff and putative Class Members, knowing it is likely to cause serious and severe Injuries.

77.     The Plaintiff and the putative Class Members are unaware of a single clinical trial or study performed by Defendants related to the injury rate and/or safety of the Product.

78.     Given the amount of literature dating back decades relating PPD to serious adverse health events, including the Injuries described herein, Defendants conduct is particularly egregious.

## PLAINTIFF'S FACTUAL ALLEGATIONS

79.     Plaintiff Shamika Jones purchased Clairol Balsam Color Black 618 on or about January 2015.  On or about January 10, 2015, she performed the patch test as directed without incident. She waited a week before placing the product on her scalp.

80.     On or about January 17, 2015, after reading the product instructions, Plaintiff Shamika Jones used the Clairol Balsam hair color Black 618 to dye her hair. Within a few hours, Plaintiff Shamika Jones, experienced itching and burning. By the following morning, the itching and burning had gotten worse and she experienced facial swelling requiring her to seek medical treatment.

Page 23 of 53

81.     In sum, as a direct and proximate result of (1) the false, misleading and/or deceptive nature of Defendants' representations regarding the Product, and (2) the defective and dangerous nature of the Product, and (3) the Defendants' woefully inadequate instructions for use including, but not specifically limited to the skin test, Plaintiff Shamika Jones experienced the following injuries including, but not limited to: itching, burning, swelling, hair loss including permanent hair loss, puss and fluid leaking out of sores and burns on her scalp.

## CLASS ACTION ALLEGATIONS

82.     Plaintiff brings this action on her own behalf, and on behalf of the following Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Class is defined as:

> All persons in the United States or its territories who, within the relevant and applicable statute of limitations period, purchased Clairol Balsam Color (*also labeled as "The Balsam Color Kit"*) that contained p-Phenylenediamine.

83.     Excluded from the Class are (a) any person who purchased the Product for resale and not for personal or household use, (b) any person who signed a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, and (e) the presiding Judge in the Lawsuit, as well as the Judge's staff and their

Page 24 of 53

immediate family members. Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

84.     Plaintiff also brings this action on behalf of the following subclass pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

> All residents of the State of Alabama who, within the relevant and applicable statute of limitations period, purchased Clairol Balsam Color (*also labeled as "The Balsam Color Kit"*) that contained p-Phenylenediamine.

85.     Excluded from the "Alabama Subclass" are (a) any person who purchased the Product for resale and not for personal or household use, (b) any person who signed a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, and (e) the presiding Judge in the Lawsuit, as well as the Judge's staff and their immediate family members.

86.     **Numerosity.** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not tens of thousands of putative Class Members. Class Members may be notified of the pendency of this action by mail and/or

Page 25 of 53

Case 1:16-cv-10164-RWS-BM Document 1-2 Filed 05/06/17 Page 27 of 54

electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

87.     **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all Members of the Class and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a.      Whether Defendants failed to comply with their warranties;

b.      Whether Defendants' conduct constitutes a breach of applicable warranties;

c.      Whether the Product causes Injuries upon using the Product as directed by Defendants;

d.      Whether the Product contains design defects;

e.      Whether the Product is defective in its manufacture;

f.      Whether and when Defendants knew or should have known that the Product causes Injuries upon using the Product as directed by Defendants;

g.      Whether Defendants were unjustly enriched by selling the Product in light of their conduct as described herein;

h.      Whether Defendants' acts, omissions or misrepresentations of material facts constitute fraud;

i.      Whether Defendants' acts, omissions or misrepresentations of material facts violated certain state deceptive practice acts, including those of the State of Alabama;

j. Whether Defendants' acts, omissions or misrepresentations of material facts make them liable to the Plaintiff and the putative Class for negligence and strict products liability;

k. Whether the Plaintiff and putative Class Members have suffered an ascertainable loss of monies or property or other value as a result of Defendants' acts, omissions or misrepresentations of material facts;

l. Whether the Plaintiff and putative Class Members are entitled to monetary damages and, if so, the nature of such relief; and

m. Whether the Plaintiff and putative Class Members are entitled to equitable, declaratory or injunctive relief and, if so, the nature of such relief.

88. Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the putative Class, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the putative Class as a whole. In particular, Defendants have designed, manufactured, marketed, sold and/or distributed a defective Product, which Defendants know or should have known causes Injuries to consumers upon using the Product, as directed by Defendants, and provided an inadequate disclosure and/or warning to consumers, including the Plaintiff and the putative Class Members, regarding these severe consequences.

89. **Typicality.** Plaintiff's claims are typical of the claims of the Members of the putative Class and respective Subclass, as each putative Class and Subclass Member was subject to the same common, inherent defect in the Product. Plaintiff

shares the aforementioned facts and legal claims or questions with putative Class and Subclass Members, and the Plaintiff and all putative Class and Subclass Members have been similarly affected by Defendants' common course of conduct alleged herein. The Plaintiff and all putative Class and Subclass Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' breach of warranties and other wrongful conduct as alleged herein.

90. **Adequacy.** The Plaintiff will fairly and adequately represent and protect the interests of the putative Class and respective Subclass. Plaintiff have retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action.

91. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

    a.    The damages suffered by each individual putative Class Member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct;

    b.    Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

Case 1:16-cv-01062-RWS-BM Document 22 Filed 05/06/17 Page 29 of 54

c.    The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

d.    Individual joinder of all putative Class Members is impracticable;

e.    Absent a Class, the Plaintiff and putative Class Members will continue to suffer harm as a result of Defendants' unlawful conduct; and

f.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which the Plaintiff and putative Class Members can seek redress for the harm caused by Defendants.

92.    Alternatively, the Class may be certified for the following reasons:

a.    The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants;

b.    Adjudications of individual Class Members' claims against Defendants would, as a practical matter, be dispositive of the interests of other putative Class Members who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

c.    Defendants have acted or refused to act on grounds generally applicable to the putative Class, thereby making appropriate final and injunctive relief with respect to the putative Class as a whole.

# CAUSES OF ACTION
## COUNT I
## UNJUST ENRICHMENT
### (On behalf of the Nationwide Class and State Subclass)

93.     Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

94.     Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class as well as the Alabama subclass.

95.     A party is unjustly enriched when it retains a benefit to the detriment of another party against the fundamental principles of justice, equity, and good conscience.

96.     Defendants have been unjustly enriched by engaging in the wrongful acts and omissions set forth herein; transactions with Plaintiff and putative Class Members which were intended to result in, and did result in, sale of Defendants' Product.

97.     Defendants have been unjustly enriched after making false, deceptive and/or misleading representations in advertisements and on the labels and/or package inserts/instructions of the Product because Defendants knew, or should have known, that the representations made were unsubstantiated, false, deceptive and/or misleading.

98.     Defendants have reaped millions of dollars in revenue as a direct and proximate result of its scheme to mislead and deceive the Plaintiff and Class

members regarding its unsubstantiated, false, deceptive and/or misleading representations as set forth herein. That Defendants have amassed such earnings by virtue of deceptive and misleading behavior violates fundamental principles of justice, equity, and good conscience.

99.    The Plaintiff and putative Class Members have been damaged as a direct and proximate result of Defendants' unjust enrichment because they would not have purchased the Product on the same terms or for the same price had they known of the true dangers and hazards associated with use of the Product.

100.    Defendants continue to be unjustly enriched by the deceptive and misleading labeling and advertising of the Product.

101.    When required, the Plaintiff and Class Members are in privity with Defendants because Defendants' sale of the Product was either direct or through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendants' agents for the purpose of the sale of the Product.

102.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, the Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

Page 31 of 53

# COUNT II
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq*.)
### (On behalf of the Nationwide Class)

103.    Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

104.    Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class.

105.    Defendants sold the Product as part of their regular course of business.

106.    The Plaintiff and putative Class Members purchased the Product either directly from Defendants or through authorized retailers such as Amazon, Wal-Mart, Walgreens and/or beauty supply and cosmetics stores, among others as set forth *supra*.

107.    The MAGNUSON–MOSS WARRANTY ACT, 15 U.S.C. §§ 2301, *et seq*., provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

108.    The Product is a "consumer product" as that term is defined by 15 U.S.C. § 2301(1), as it constitutes tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes.

109. The Plaintiff and putative Class Members are "consumers" and "buyers" as defined by 15 U.S.C. § 2301(3), since they are buyers of the Product for purposes other than resale.

110. Defendants are entities engaged in the business of making and selling cosmetics, either directly or indirectly, to consumers such as the Plaintiff and the putative Class Members. As such, Defendants are "suppliers" as defined in 15 U.S.C. § 2301(4).

111. Defendants made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between the Plaintiff, the putative Class Members, and the Defendants. Defendants expressly warranted that the Product was fit for its intended purpose by making the express warranties that:

      a.     Defendants are "hair color experts";

      b.     using the Product is "an easy coloring experience";

      c.     the Product has an "Easy-to-use tear-tip applicator and shampoo-in formula";

      d.     the Product is "the same great formula" across the entire line of products; specifically, other versions (*i.e., colors*) in the "Balsam Color" hair dyeing line of Products;

      e.     the Product contains a "luxurious formula";

      f.     the Product is "enriched with conditioning botanicals to coat each strand";

g.      the Product "softens hair";

h.      the Product "hydrates locks for soft, silky hair";

i.      the Product has "benefits" such as "easy-to-use application";

j,      the at-home skin patch test is reliable, in that a consumer will know for certain whether they are safe from suffering Injuries if they utilize the Product as directed; and

k.      the Product is "infused with conditioning botanicals".

112.   Defendants' aforementioned written affirmations of fact, promises and/or descriptions, as alleged, are each a "written warranty." The affirmations of fact, promises and/or descriptions constitute a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

113.   Defendants breached the applicable warranty because the Product suffers from latent and/or inherent defects that cause substantial Injuries, rendering it unfit for its intended use and purpose. The defects substantially impair the use, value and safety of the Product.

114.   The latent and/or inherent defects at issue herein existed when the Product left Defendants' possession or control and were sold to the Plaintiff and putative Class Members. The true nature of the defects were not discoverable by the Plaintiff or putative Class Members at the time of their purchase of the Product.

115.   All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of the Plaintiff

and putative Class Members in terms of paying for the goods at issue. Defendants were placed on reasonable notice of the defect in the Product and their breach of the warranty, and have failed to cure the defects for the Plaintiff and putative Class Members, despite having reasonable time to do so.

116. Defendants breached their express warranties since the Product did not contain the properties it was represented to possess.

117. Defendants' breaches of warranties have caused the Plaintiff and putative Class Members to suffer Injuries, pay for a defective Product, and enter into transactions they would not have entered into for the consideration paid. As a direct and proximate result of Defendants' breaches of warranties, the Plaintiff and putative Class Members have suffered damages and continue to suffer damages, including economic damages in terms of the cost of the Product and the cost of efforts to mitigate the damages caused by using the Product.

118. As a direct and proximate result of Defendants' breaches of these warranties, the Plaintiff and putative Class Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

119. The Plaintiff and the putative Class therefore seek and are entitled to recover damages and other legal and equitable relief, injunctive relief and costs and

expenses (*including attorneys' fees based upon actual time expended*), as provided by 15 U.S.C. § 2310(d).

## COUNT III
## BREACH OF EXPRESS WARRANTY
### (On behalf of the Nationwide Class)

120. Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

121. Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class.

122. Defendants manufactured, marketed, distributed and sold the Product as part of their regular course of business.

123. The Plaintiff and the putative Class Members purchased the Product either directly from the Defendants or through authorized retailers such as Amazon, Wal-Mart, Walgreens, and/or beauty supply and cosmetics stores, among others as set forth *supra*.

124. Defendants, as the designers, manufacturers, marketers, distributors, or sellers expressly warranted that the Product was fit for its intended purpose by making the express warranties that the Product was a safe hair dyeing product, as set forth with specificity herein.

125. Defendants made the foregoing express representations and warranties nationwide to all United States consumers, which became the basis of the bargain

between the Plaintiff, the putative Class Members and Defendants, thereby creating express warranties that the Product would conform to Defendants' affirmations of fact, representations, promises, and descriptions; specifically, that:

a.   Defendants are "hair color experts";

b.   using the Product is "an easy coloring experience";

c.   the Product has an "Easy-to-use tear-tip applicator and shampoo-in formula";

d.   the Product is "the same great formula" across the entire line of products; specifically, other versions (*i.e., colors*) in the "Balsam Color" hair dyeing line of Products;

e.   the Product contains a "luxurious formula";

f.   the Product is "enriched with conditioning botanicals to coat each strand";

g.   the Product "softens hair";

h.   the Product "hydrates locks for soft, silky hair";

i.   the Product has "benefits" such as "easy-to-use application";

j,   the at-home skin patch test is reliable, in that a consumer will know for certain whether they are safe from suffering Injuries if they utilize the Product as directed; and

k.   the Product is "infused with conditioning botanicals".

126.   Defendants breached the foregoing express warranties by placing the Product into the stream of commerce and selling it to consumers, when the Product does not contain the properties it was represented to possess. Rather, the Product

suffers from latent and/or inherent design and/or manufacturing defects that cause substantial Injuries, rendering the Product unfit for its intended use and purpose. These defects substantially impair the use, value and safety of the Product.

127. The latent and/or inherent design and/or manufacturing defects at issue herein existed when the Product left Defendants' possession or control and was/were sold to the Plaintiff and other putative Class Members nationwide. The true nature of the defects were not discoverable by the Plaintiff and putative Class Members at the time of their purchase of the Product.

128. As the manufacturers, suppliers, and/or sellers of the Product, Defendants had actual knowledge of the breach, and given the nature of the breach, (*i.e. false representations regarding the Product*), Defendants necessarily had knowledge that the representations made were false, deceptive and/or misleading.

129. The Plaintiff and the putative Class Members were injured as a direct and proximate result of Defendants' breaches of warranties because they would not have purchased the Product if the true facts had been known; specifically, economic damages in connection with the purchase of the Product, and Injuries from using the Product as directed by Defendants.

130. As a direct and proximate result of Defendants' breaches of these warranties, the Plaintiff and the putative Class Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such

other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT IV
## BREACH OF IMPLIEDWARRANTY
### (On behalf of the Nationwide Class)

131. Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

132. Plaintiff asserst this cause of action on behalf of herself and the Nationwide Class.

133. Section 2-314 of the UNIFORM COMMERCIAL CODE provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. To be "merchantable," goods must, inter alia, "pass without objection in the trade under the contract description", "run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved", be "adequately contained, packaged, and labeled as the agreement may require", and "conform to the promise or affirmations of fact made on the container or label."

134. Defendants formulated, manufactured, tested, marketed, promoted, distributed, and sold the Product as safe for use by the public at large, including the Plaintiff and putative Class Members who purchased the Product.

Case 1:16-cv-01060-RWS-BM Document 12 Filed 05/16/17 Page 40 of 53

135. Defendants knew the use for which the Product was intended and impliedly warranted the product to be of merchantable quality, safe and fit for use.

136. The Plaintiff and putative Class Members reasonably relied on the skill and judgment of the Defendants, especially as self-professed "hair color experts", and as such their implied warranty, in using the Product.

137. However, the Product was not and is not of merchantable quality or safe or fit for its intended use, because it is unreasonably dangerous and unfit for the ordinary purpose for which it was used. Specifically, the Product causes Injuries as set forth herein.

138. Defendants breached their implied warranties because the Product does not have the quality, quantity, characteristics, or benefits as promised, and because the Product does not conform to the promises made on its labels and/or on Defendants' website.

139. As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, the Plaintiff and putative Class Members suffered injuries and damages.

140. The Plaintiff and putative Class Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Product if they had known the true facts - the Product did not and does not have the characteristics, quality, or value as impliedly warranted.

141.   As a direct and proximate result of Defendants' breaches of these warranties, the Plaintiff and the putative Class Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT V
### Violation of the Alabama Deceptive Trade Practices Act
### (CODE OF ALABAMA §§ 8-19-1, *et seq.*)
### (On behalf of the Alabama Subclass)

142.   Plaintiff, individually and for the Alabama Subclass, incorporates by reference all preceding paragraphs as though fully set forth herein.

143.   Plaintiff asserts this cause of action on behalf of the Alabama Subclass.

144.   Defendants marketing, sale and/or distribution of the Products and the Plaintiff and the putative Alabama Subclass Members' purchase of the Products was a sale or distribution of goods to a consumer within the meaning of the ALABAMA DECEPTIVE TRADE PRACTICES ACT (CODE OF ALABAMA §§ 8-19-1, *et seq.*).

145.   The Plaintiff and putative Alabama Subclass Members' purchased the Product for personal, family, or household use.

146.   Defendants' acts and practices as described herein have misled and deceived and/or likely to mislead and deceive members of the Alabama Subclass

Page 41 of 53

and the general public of the State of Alabama. Defendants have advertised, marketed, and sold the Product as being a safe hair dyeing product, as set forth herein. Thus, Defendant has wrongfully:

    a.    represented that its goods (*i.e., the Products*) have sponsorship, approval, characteristics, ingredients, uses benefits or qualities that they do not have;

    b.    represented that its goods (*i.e., the Products"*) are of a particular standard, quality, or grade, or that its goods (*i.e., the Products"*) are of a particular style or model, if they are of another;

    c.    failed to provide adequate warnings or instruction that a manufacturer exercising reasonable care would and should have provided concerning the risk of suffering Injuries from use and/or repeated use of the Product, particularly in light of the likelihood that the Product would Injuries;

    d.    knowingly, intentionally, and/or recklessly omitted, suppressed, and/ or concealed the true, unreasonably dangerous nature of the Product;

    e.    knowingly, intentionally, and/or recklessly omitted, suppressed, and/or concealed that the use of the Product posed a significant risk of chemical burns, allergic reactions, and other Injuries, particularly among African Americans;

    f.    knowingly, intentionally, recklessly, or negligently omitted proper warnings from being placed on its packaging, or otherwise calling attention to this dangerous propensity—which caused serious personal injuries in many consumers including the Plaintiff and numerous putative Class Members; and,

    g.    engaged in unconscionable, false, misleading, and/or deceptive acts and/or practices in the conduct of trade or commerce – marketing, advertising, and selling the Product.

147. By its actions, Defendant is disseminating uniform false advertising by its labeling, concerning the Product, which by its nature is unfair, deceptive, untrue, and/or misleading within the meaning of the ALABAMA DECEPTIVE TRADE PRACTICES ACT. Such actions are likely to deceive, do deceive, and continue to deceive the Alabama general public for all the reasons detailed herein above.

148. Defendants intended for the Plaintiff and Alabama Subclass Members to rely on its representations and omissions and the Plaintiff and Alabama Subclass Members did rely on Defendant's misrepresentations and omissions of fact.

149. The misrepresentations and omissions of fact constitute deceptive, false and misleading advertising in violation of the ALABAMA DECEPTIVE TRADE PRACTICES ACT.

150. By performing the acts described herein Defendants caused monetary damage to the Plaintiff and Alabama Subclass Members of similarly situated individuals.

151. Accordingly, Plaintiff requests the following relief both individually and on behalf of the Alabama Subclass Members:

    a.    actual damages sustained by the Plaintiff and Alabama Subclass Members or the sum of $100.00, whichever is greater;

    b.    three times actual damages;

    c.    appropriate injunctive relief in the form of enjoining Defendant from continuing to violate Alabama statutory law;

d.      attorneys' fees and costs; and

e.      such other and further relief as the Court deems proper.

## COUNT VI
## FRAUD
### (On behalf of the Nationwide Class)

152.   Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

153.   Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class.

154.   As described herein, Defendants knowingly made material misrepresentations and omissions regarding the Product in their marketing and advertising materials, including the package in which the Product is sold and which contains the Product.

155.   Defendants made these material misrepresentations and omissions in order to induce the Plaintiff and putative Class Members to purchase the Product.

156.   Rather than inform consumers about the dangers and hazards associated with using the Product, Defendants represent it as an "easy color experience", amongst other false and/or misleading representations as set forth herein, such as:

a.      represented that its goods (*i.e., the Products*) have sponsorship, approval, characteristics, ingredients, uses benefits or qualities that they do not have;

Page 44 of 53

b.      represented that its goods (*i.e., the Products"*) are of a particular standard, quality, or grade, or that its goods (*i.e., the Products"*) are of a particular style or model, if they are of another;

c.      failed to provide adequate warnings or instruction that a manufacturer exercising reasonable care would and should have provided concerning the risk of suffering Injuries from use and/or repeated use of the Product, particularly in light of the likelihood that the Product would Injuries;

d.      knowingly, intentionally, and/or recklessly omitted, suppressed, and/ or concealed the true, unreasonably dangerous nature of the Product;

e.      knowingly, intentionally, and/or recklessly omitted, suppressed, and/or concealed that the use of the Product posed a significant risk of chemical burns, allergic reactions, and other Injuries, particularly among African Americans; and,

f.      knowingly, intentionally, recklessly, or negligently omitted proper warnings from being placed on its packaging, or otherwise calling attention to this dangerous propensity—which caused serious personal injuries in many consumers including the Plaintiff and numerous putative Class Members.

157.   The facts which Defendants omitted, suppressed, and/or concealed as alleged in the preceding paragraph were material in that they concerned facts that would have been important to a reasonable consumer, including the Plaintiff and putative Class Members, in making a decision whether to purchase the Product.

158.   In fact, the Product is not a safe hair dyeing product. Rather, it is composed of caustic ingredients including PPD which is not safe and can cause serious Injuries as set forth herein.

159. The misrepresentations and omissions made by Defendants, upon which the Plaintiff and putative Class Members reasonably and justifiably relied, were intended to induce and did actually induce the Plaintiff and putative Class Members to purchase the Product.

160. Defendants knew the Products ingredients, particularly PPD, were unsafe for use on the human head and/or scalp, but nevertheless made representations, as set forth herein, through its marketing, advertising and product labeling, in order to sell the product as a safe hair dyeing alternative. In reliance on these and other similar representations, the Plaintiff and putative Class Members were induced to, and did pay monies, to purchase the Product.

161. Had the Plaintiff and putative Class Members known the truth about the qualities of the Product, and the dangers and hazards associated with using the Product, they would not have purchased it.

162. As a direct and proximate result of Defendants' fraudulent acts and omissions, the Plaintiff and the putative Class Members were injured and damaged.

163. As a direct and proximate result of Defendants' fraudulent acts and omissions the Plaintiff and putative Class Members are entitled to legal and equitable relief including compensatory and punitive damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate by the Court.

## COUNT VI
## NEGLIGENT DESIGN AND FAILURE TO WARN
### (On behalf of the Nationwide Class)

164. Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

165. Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class.

166. At all times material to this action, Defendants were responsible for designing, formulating, testing, manufacturing, inspecting, packaging, marketing, distributing, supplying and/or selling the Product to the Plaintiff and putative Class Members.

167. At all times material to this action, the Plaintiff and putative Class Members' use of the Product was in a manner that was intended and/or reasonably foreseeable by Defendants. However, as set forth herein, use of the Product as directed by Defendants involved and continues to involve a substantial risk of producing Injuries.

168. At all times material to this action, the risk of sustaining Injuries was known to the Defendants or by exercising reasonable care should have been known to Defendants, in light of the generally recognized and prevailing knowledge available at the time of manufacture, design, distribution and/or sale.

Case 1:16-cv-10662-RWS-BM Document 1-2 Filed 03/03/17 Page 48 of 54

169. Defendants, as self-professed "hair color experts"[1] knew—or by the exercise of reasonable care should have known—that the Product had and continues to have design defects.

170. In fact, the Product is not at all a safe hair dyeing product. As set forth herein, there is more than ample evidence demonstrating that PPD is not safe for use on the skin. Defendants, as self-professed "hair color experts"[1], knew, or should have known, that PPD could cause Injuries. Defendants nonetheless failed to adequately disclose this vital information to consumers, including the Plaintiff and putative Class Members.

171. Defendants knew that the Plaintiff and putative Class Members - who purchased and used the Product for its intended use and as directed by Defendants - were and are members of a foreseeable class of persons who were and are at risk of suffering serious inconvenience, expense, and/or Injuries solely because of the Products design defects.

172. Defendants, as the designers, manufacturers, distributors, marketers and/or sellers of the Product, had a duty to exercise reasonable care for the safety of the Plaintiff and putative Class Members who used, were using and/or intend to use the Product as directed by Defendants. Since Defendants produced, manufactured, distributed, and/or sold the Product, (1) they owed a non-delegable duty to consumers, including the Plaintiff and putative Class Members, to exercise

ordinary and reasonable care to properly design the Product, and (2) they had a continuing duty to adequately warn about the true dangers, hazards, and/or risks of suffering Injuries associated with the intended use of the Product, as described herein.

173. Notwithstanding the aforementioned duty, Defendants were negligent by one or more of the following acts or omissions in that the Defendants:

    a.    Failed to give adequate warnings to purchasers and users of the Product, including the Plaintiff and putative Class Members, regarding the risks and potential dangers of using the defective Product as directed by Defendants;

    b.    Failed to recommend and/or provide proper warnings to ensure the safety of the Plaintiff and putative Class Members of using the defective Product as directed by Defendants;

    c.    Failed to adequately investigate the safety hazards associated with the intended use of the Product;

    d.    Negligently designing a Product with serious safety hazards and risks; and

    e.    Oversold the benefits while minimizing the true risks of suffering Injuries associated with use of the Product.

174. Defendants knew, or by the exercise of reasonable care should have known (1) of the true inherent design defects and resulting hazards and dangers associated with using the Product as directed by Defendants, and (2) that the Plaintiff and putative Class Members could not reasonably be aware of the true risks. Thus, Defendants failed to exercise reasonable care in providing Class

Case 1:16-cv-01068-RWS-BM Document 12 Filed 05/06/17 Page 50 of 54

Members with adequate warnings regarding the potential for sustaining Injuries when using the Product as directed by Defendants.

175. As a direct and proximate result of Defendants' negligent design and failure to adequately warn consumers that use of the Product could cause Injuries, the Plaintiff and putative Class Members have suffered damages as set forth herein.

176. As a direct and proximate result of Defendants' negligent design and failure to adequately warn consumers that use of the Product could cause Injuries, the Plaintiff and putative Class members are entitled to legal and equitable relief including compensatory and punitive damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate by the Court.

## PRESERVATION CLAIMS

177. Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

178. To the extent that Defendants may claim that the Plaintiff and/or the Class Members' claims are barred by the applicable statute of limitations, Plaintiff and the Class Members assert that the statute of limitations is and has been tolled by, *inter alia*, Plaintiff's and the Class Members' discovery that their injuries were directly and proximately caused by the Product and Defendants' failure to properly and adequately warn of the true risks and dangers associated with use of the

Product, as set forth *supra*, and/or after any actionable Injury(ies) was/were sustained by the Plaintiff and/or the putative Class Members.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

 a. For an order certifying the Class under FEDERAL RULE OF CIVIL PROCEDURE 23;

 b. For an order and naming the Plaintiff as representatives of the Class and Subclass;

 c. For an order naming Plaintiff's counsel as Class Counsel to represent the Class and Subclass;

 b. For an order declaring that Defendants' conduct violates the statutes and/or laws referenced herein;

 c. For an order finding in favor of the Plaintiff, the Class and the Subclass on all counts asserted herein;

 d. For compensatory, statutory, and punitive damages in amounts to be determined by a jury and/or the Court;

 e. For prejudgment interest on all amounts awarded;

 f. For an order of restitution and all other forms of equitable monetary relief, including disgorgement of all profits and ill-gotten monetary gains received by Defendants from sales of the Product;

 g. For an order enjoining Defendants from continuing the unlawful practices detailed herein; and

 h. For an order awarding the Plaintiff, the Class and the Subclass their reasonable attorneys' fees and expenses and costs of suit.

Page 51 of 53

## PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

/s/ W. Lewis Garrison, Jr.
W. Lewis Garrison, Jr.
wlgarrison@hgdlawfirm.com
Brandy Lee Robertson
brandy@hgdlawfirm.com
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, AL 35203

K. Stephen Jackson
steve@jacksonandtucker.com
Joseph L. "Josh" Tucker
josh@jacksonandtucker.com
JACKSON & TUCKER, P.C.
2229 1st Ave. North
Birmingham, AL 35203-4203
Telephone: 205.252.3535
Facsimile: 205.252.3536

127

**Please serve the Defendants by Certified Mail as follows:**

Coty, Inc.
Corporation Service Company
2711 Centerville Road
Suite 400
Wilmington, Delaware 19808

The Procter & Gamble Company, Inc.
CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

The Procter & Gamble Manufacturing Company, Inc.
CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

The Procter & Gamble Distributing, L.L.C.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

Procter & Gamble Hair Care, L.L.C.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

```
MIME-Version:1.0
From:efile_notice@almd.uscourts.gov
To:almd_mailout@almd.uscourts.gov
Bcc:
--Case Participants: Kenneth Stephen Jackson (sheree@jacksonandtucker.com,
steve@jacksonandtucker.com), William Lewis Garrison, Jr (lewis@hgdlawfirm.com), Joseph
Luther Tucker (josh@jacksonandtucker.com, sheree@jacksonandtucker.com), Brandy Lee
Robertson (brandy@hgdlawfirm.com), Honorable Judge Terry F. Moorer
(efile_moorer@almd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:2560722@almd.uscourts.gov
Subject:Activity in Case 2:17-cv-00118-TFM Bowens v. Coty, Inc. et al Jury Demand
```
Content–Type: text/html

## U.S. District Court

## Alabama Middle District

## Notice of Electronic Filing

The following transaction was entered on 3/6/2017 at 11:01 AM CST and filed on 3/1/2017

| | |
|---|---|
| **Case Name:** | Bowens v. Coty, Inc. et al |
| **Case Number:** | 2:17–cv–00118–TFM |
| **Filer:** | Carrie Bowens |
| **Document Number:** | No document attached |

**Docket Text:**
 **DEMAND for Trial by Jury by Carrie Bowens. (no pdf document attached to this entry – see docket entry [1] for pdf)(kh, )**

**2:17–cv–00118–TFM Notice has been electronically mailed to:**

Brandy Lee Robertson &nbsp &nbsp brandy@hgdlawfirm.com

Joseph Luther Tucker &nbsp &nbsp josh@jacksonandtucker.com, sheree@jacksonandtucker.com

Kenneth Stephen Jackson &nbsp &nbsp steve@jacksonandtucker.com, sheree@jacksonandtucker.com

William Lewis Garrison , Jr &nbsp &nbsp lewis@hgdlawfirm.com

**2:17–cv–00118–TFM Notice has been delivered by other means to:**

**UNITED STATES DISTRICT COURT**

MIDDLE DISTRICT OF ALABAMA

OFFICE OF THE CLERK

POST OFFICE BOX 711

MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK

TELEPHONE (334) 954-3600

March 6, 2017

NOTICE OF REASSIGNMENT

To:     All Counsel of Record

Re:     Bowens v. Coty, Inc. et al
Civil Action No. 2:17-cv-00118-TFM

The above-styled case has been reassigned to Judge W. Keith Watkins.

Please note that the case number is now **2:17-cv-00118-WKW**. This new case number should be used on all future correspondence and pleadings in this action.

MD AL  MODIFIED AO 440  (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Middle District of Alabama  ☑

| | |
|---|---|
| Carrie Bowens | ) |
| *Plaintiff* | ) |
| v. | ) |
| Coty, Inc.; The Procter & Gamble Company, Inc. | ) |
| *Defendant* | ) |

Civil Action No. 2:17-CV-118

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Coty, Inc.
Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ.P. 12 (a)(2) or (3) — or 90 days in a  Social Security action — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

W. Lewis Garrison & Brandy L. Robertson
Heninger Garrison Davis, LLC
2224 First Avenue North
Birmingham, Alabama 35203

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*DEBRA P. HACKETT, CLERK OF COURT*

Date: 3/6/2017

*Signature of Clerk or Deputy Clerk*

130

MD AL MODIFIED AO 440 (Rev. 02/09)  Summons in a Civil Action (Page 2)

Civil Action No. 2:17-cv-118

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(1))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00 .

I declare under penalty of perjury that this information is true.

Date: _____            _____
                                 *Server's signature*

**U.S. Postal Service** ™
**CERTIFIED MAIL** ™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*
For delivery information visit our website at www.usps.com®

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total | $ |

Postmark Here

Sent

Stree or P(

City,

PS F...

_____
*Printed name and title*

_____
*Server's address*

Coty, Inc.
Corporation Service Company
2711 Centerville Road
Suite 400
Wilmington, Delaware 19808

131

MD AL MODIFIED AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Alabama ☑

| | |
|---|---|
| Carrie Bowens | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 2:17-CV-118 |
| Coty, Inc.; The Procter & Gamble Company, Inc. | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  The Procter & Gamble Company, Inc.
CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ.P. 12 (a)(2) or (3) — or 90 days in a Social Security action — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

W. Lewis Garrison & Brandy L. Robertson
Heninger Garrison Davis, LLC
2224 First Avenue North
Birmingham, Alabama 35203

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*DEBRA P. HACKETT, CLERK OF COURT*

Date: 3/6/2017

_____
*Signature of Clerk or Deputy Clerk*

132

MD AL MODIFIED AO 440 (Rev. 02/09) Summons in a Civil Action (Page 2)

Civil Action No. 2:17-cv-118

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(1))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:

.

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Da _____

_____
*Server's signature*

**U.S. Postal Service** ™
**CERTIFIED MAIL** ™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

_____
*Printed name and title*

_____
*Server's address*

The Procter & Gamble Company, Inc.
CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

r Instructions

MD AL MODIFIED AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Alabama ☑

| | |
|---|---|
| Carrie Bowens | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 2:17-CV-118 |
| Coty, Inc.; The Procter & Gamble Company, Inc. | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* The Procter & Gamble Manufacturing Company, Inc.
CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ.P. 12 (a)(2) or (3) — or 90 days in a Social Security action — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

W. Lewis Garrison & Brandy L. Robertson
Heninger Garrison Davis, LLC
2224 First Avenue North
Birmingham, Alabama 35203

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*DEBRA P. HACKETT, CLERK OF COURT*

Date: 3|6|2017

*Signature of Clerk or Deputy Clerk*

134

MD AL MODIFIED AO 440 (Rev. 02/09) Summons in a Civil Action (Page 2)

Civil Action No. 2:17-cv-118

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*
For delivery information visit our website at www.usps.com®

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Tot | |

Postmark Here

Sent
Stre or P
City,

The Procter & Gamble Manufacturing Company, Inc.
CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

PS Form 3800, August 2000

Instructions

MD AL MODIFIED AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Alabama ▾

| | |
|---|---|
| Carrie Bowens | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 2:17-cv-118 |
| Coty, Inc.; The Procter & Gamble Company, Inc. | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  The Procter & Gamble Distributing, L.L.C.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ.P. 12 (a)(2) or (3) — or 90 days in a Social Security action — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

W. Lewis Garrison & Brandy L. Robertson
Heninger Garrison Davis, LLC
2224 First Avenue North
Birmingham, Alabama 35203

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*DEBRA P. HACKETT, CLERK OF COURT*

Date: 3|6|2017

_____
*Signature of Clerk or Deputy Clerk*

136

MD AL MODIFIED AO 440 (Rev. 02/09) Summons in a Civil Action (Page 2)

Civil Action No. 2:17-CV-118

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | | Postmark Here |
| Return Receipt Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |

The Procter & Gamble Distributing, L.L.C.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

PS Form 3800, August 2006     See Reverse for Instructions

MD AL MODIFIED AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Middle District of Alabama ☑

| | | |
|---|---|---|
| Carrie Bowens | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 2:17-CV-118 |
| Coty, Inc.; The Procter & Gamble Company, Inc. | ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*     Procter & Gamble Hair Care, L.L.C.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ.P. 12 (a)(2) or (3) — or 90 days in a Social Security action — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

W. Lewis Garrison & Brandy L. Robertson
Heninger Garrison Davis, LLC
2224 First Avenue North
Birmingham, Alabama 35203

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*DEBRA P. HACKETT, CLERK OF COURT*

Date: 3/6/2017

_____
*Signature of Clerk or Deputy Clerk*

138

MD AL MODIFIED AO 440 (Rev. 02/09)  Summons in a Civil Action (Page 2)

Civil Action No. 2:17-cv-118

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____     _____
                                      *Server's signature*

_____
*Printed name and title*

_____
*Server's address*

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |

Postmark
Here

Procter & Gamble Hair Care, L.L.C.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

PS Form 3800, August 2006          See Reverse for Instructions

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| CARRIE BOWENS, on behalf of | ) | |
| Herself and all others similarly situated, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 2:17-cv-00118-TFM** |
| | ) | |
| COTY, INC., a Delaware Corporation; | ) | |
| THE PROCTER & GAMBLE | ) | |
| COMPANY, INC., an Ohio Corporation; | ) | |
| THE PROCTER & GAMBLE | ) | |
| MANUFACTURING COMPANY, INC., | ) | |
| an Ohio Corporation; | ) | |
| THE PROCTER & GAMBLE | ) | |
| DISTRIBUTING, L.L.C., | ) | |
| a Delaware Limited Liability Company; | ) | |
| PROCTER & GAMBLE HAIR CARE, | ) | |
| L.L.C., a Delaware Limited Liability | ) | |
| Company; | ) | |
| **Defendants.** | ) | |

## WITHDRAWAL OF MOTION TO TRANSFER AND CONSOLIDATE

COMES NOW the Plaintiff in the above-styled action, by and through the undersigned counsel of record, and file this *Withdrawal of Motion to Transfer and Consolidate* and, in support thereof, would show unto the Court as follows:

### I.     INTRODUCTION

1.     This case was filed March 1, 2017. See [DE 1].

2.     On March 6, 2017, Plaintiff filed a *Motion to Transfer and Consolidate* this matter with *Shamika Jones v. Coty, Inc. et al.* [1:16-cv-00622-WS-B (S.D. Ala.)]. See [DE 2].

3.     Plaintiff hereby formally withdraws her *Motion to Transfer and Consolidate*.

WHEREFORE, premises considered, Plaintiff Bowens respectfully request the Court enter and *Order* or other document confirming Plaintiff's withdrawal of her previously filed *Motion to Transfer and Consolidate*.

Dated: 10th day of March, 2017.          /s/ W. Lewis Garrison, Jr.
                                         W. Lewis Garrison, Jr.
                                         Ala. Bar No.: ASB- 3591-N74W
                                         Brandy Lee Robertson
                                         Ala. Bar No.: ASB-2737-D65R
                                         *Counsel for Plaintiff and the*
                                         *Putative Class*
                                         HENINGER GARRISON DAVIS, LLC
                                         2224 First Avenue North
                                         Birmingham, AL 35203
                                         wlgarrison@hgdlawfirm.com
                                         brandy@hgdlawfirm.com
                                         Telephone: 205-326-3336
                                         Facsimile: 205-380-8072

                                         /s/ Joseph L. "Josh" Tucker
                                         Joseph L. Tucker
                                         Ala. Bar No.: ASB-1653-E26J
                                         *Counsel for Plaintiff and the*
                                         *Putative Class*
                                         JACKSON & TUCKER, P.C.
                                         2229 1st Ave. North
                                         Birmingham, AL 35203-4203
                                         Telephone: 205.252.3535
                                         Facsimile: 205.252.3536
                                         josh@jacksonandtucker.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this the 10th day of March, 2017, electronically mailed a copy of the foregoing directly to the Attorneys for the Defendants in the case styled *Shamika Jones v Coty, Inc., et al.* [1:16-cv-00622-WS-B (S.D. Ala.)], and have mailed a copy of the foregoing directly to the registered agents for the Defendants in this case using the U.S. Postal Service as follows:

Coty, Inc.
Corporation Service Company
2711 Centerville Road
Suite 400
Wilmington, Delaware 19808

The Procter & Gamble Company, Inc.
CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

The Procter & Gamble Manufacturing
Company, Inc.
CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

The Procter & Gamble Distributing,
L.L.C.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

Procter & Gamble Hair Care, L.L.C.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

*Attorneys for Defendants in*
Shamika Jones v Coty, Inc., et al. [1:16-cv-00622-WS-B]

Walter J. Price, III
HUIE, FERNAMBUCQ & STEWART, LLP
800 Regions Bank Bldg., Ste. 825
417 North 20th Street
Telephone: 205-251-1193
Facsimile: 205-251-1256
Birmingham, AL 35203-3279
**wprice@huielaw.com**

Jeffrey B. Cannon, Jr.
Hugh Cannon Lawley
HUIE, FERNAMBUCQ & STEWART, LLP
2801 Highway 280 S., Suite 200
Birmingham, AL 35223
Telephone: 205-251-1193
Facsimile: 205-251-1256
**cannon@huielaw.com**

HUIE, FERNAMBUCQ & STEWART, LLP
2801 Highway 280 S., Suite 200
Birmingham, AL 35223
Telephone: 205-251-1193
Facsimile: 205-251-1256
**bcannon@huielaw.com**

Page 3 of 5

/s/ Joseph L. "Josh" Tucker
Joseph L. Tucker
josh@jacksonandtucker.com
JACKSON & TUCKER, P.C.
2229 1st Ave. North
Birmingham, AL 35203-4203

Case 2:17-cv-00118-WKW-TFM   Document 5   Filed 03/10/17   Page 5 of 5

Page 5 of 5

```
MIME-Version:1.0
From:efile_notice@almd.uscourts.gov
To:almd_mailout@almd.uscourts.gov
Bcc:
--Case Participants: William Lewis Garrison, Jr (lewis@hgdlawfirm.com), Kenneth Stephen
Jackson (sheree@jacksonandtucker.com, steve@jacksonandtucker.com), Brandy Lee Robertson
(brandy@hgdlawfirm.com), Joseph Luther Tucker (josh@jacksonandtucker.com,
sheree@jacksonandtucker.com), Honorable Judge Terry F. Moorer
(efile_moorer@almd.uscourts.gov), Chief Judge William Keith Watkins
(efile_watkins@almd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:2566284@almd.uscourts.gov
Subject:Activity in Case 2:17-cv-00118-WKW-TFM Bowens v. Coty, Inc. et al Motion to
Withdraw
Content-Type: text/html
```

**U.S. District Court**

**Alabama Middle District**

**Notice of Electronic Filing**

The following transaction was entered on 3/13/2017 at 4:22 PM CDT and filed on 3/13/2017

| | |
|---|---|
| **Case Name:** | Bowens v. Coty, Inc. et al |
| **Case Number:** | 2:17–cv–00118–WKW–TFM |
| **Filer:** | Carrie Bowens |
| **Document Number:** | No document attached |

**Docket Text:**
**MOTION to Withdraw [2] MOTION to Consolidate pursuant to the court's [6] order. Attorney used the incorrect event code. by Carrie Bowens. (kh, )**

**2:17–cv–00118–WKW–TFM Notice has been electronically mailed to:**

Brandy Lee Robertson &nbsp &nbsp brandy@hgdlawfirm.com

Joseph Luther Tucker &nbsp &nbsp josh@jacksonandtucker.com, sheree@jacksonandtucker.com

Kenneth Stephen Jackson &nbsp &nbsp steve@jacksonandtucker.com, sheree@jacksonandtucker.com

William Lewis Garrison , Jr &nbsp &nbsp lewis@hgdlawfirm.com

**2:17–cv–00118–WKW–TFM Notice has been delivered by other means to:**

145

Case 1:17-cv-00192-MU    Doc#20    Filed 05/02/17    Page 146 of 305    PageID# 146

Case 2:17-cv-118    NEF for Docket Entry 6    Filed 03/13/2017    Page 1 of 1

```
MIME-Version:1.0
From:efile_notice@almd.uscourts.gov
To:almd_mailout@almd.uscourts.gov
Bcc:
--Case Participants: Kenneth Stephen Jackson (sheree@jacksonandtucker.com,
steve@jacksonandtucker.com), William Lewis Garrison, Jr (lewis@hgdlawfirm.com), Joseph
Luther Tucker (josh@jacksonandtucker.com, sheree@jacksonandtucker.com), Brandy Lee
Robertson (brandy@hgdlawfirm.com), Chief Judge William Keith Watkins
(efile_watkins@almd.uscourts.gov), Honorable Judge Terry F. Moorer
(efile_moorer@almd.uscourts.gov)
--Non Case Participants: Courtesy Copy All District Judges
(cc_albritton@almd.uscourts.gov, cc_watkins@almd.uscourts.gov), Press Copies
(efile_press@almd.uscourts.gov)
--No Notice Sent:

Message-Id:2566289@almd.uscourts.gov
Subject:Activity in Case 2:17-cv-00118-WKW-TFM Bowens v. Coty, Inc. et al Order on Motion
to Withdraw
```
Content–Type: text/html

## U.S. District Court

## Alabama Middle District

## Notice of Electronic Filing

The following transaction was entered on 3/13/2017 at 4:25 PM CDT and filed on 3/13/2017

**Case Name:**       Bowens v. Coty, Inc. et al

**Case Number:**       2:17–cv–00118–WKW–TFM

**Filer:**

**Document Number:**  6(No document attached)

**Docket Text:**
**TEXT ORDER construing Doc. [5] as Plaintiff's motion to withdraw her motion to consolidate (Doc. # [2].) and granting the motion (Doc. # [5]) to withdraw. Signed by Chief Judge William Keith Watkins on 3/13/2017. (no pdf dcoument attached to this entry)(kh, )**

**2:17–cv–00118–WKW–TFM Notice has been electronically mailed to:**

Brandy Lee Robertson &nbsp &nbsp brandy@hgdlawfirm.com

Joseph Luther Tucker &nbsp &nbsp josh@jacksonandtucker.com, sheree@jacksonandtucker.com

Kenneth Stephen Jackson &nbsp &nbsp steve@jacksonandtucker.com, sheree@jacksonandtucker.com

William Lewis Garrison , Jr &nbsp &nbsp lewis@hgdlawfirm.com

**2:17–cv–00118–WKW–TFM Notice has been delivered by other means to:**

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

The Procter & Gamble Company, Inc.
CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

**A. Signature**
X ☐ Agent ☐ Addressee

**B. Received by (Printed Name)** | **C. Date of Delivery**

**D.** Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

9590 9402 1531 5362 7561 90

2. Article Number *(Transfer from service label)*

013 0600 0002 4323 1022

**3. Service Type**
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

**SENDER:** *COMPLETE THIS SECTION*

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

The Procter & Gamble Manufacturing Company, Inc.
CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

9590 9402 1531 5362 7561 83

2. Article Number *(Transfer from service label)*

7013 0600 0002 4323 1039

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X James Wright ☐ Agent ☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- Mail Restricted Delivery (00)

- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☒ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053      Domestic Return Receipt

**UNITED STATES DISTRICT COURT**

MIDDLE DISTRICT OF ALABAMA

OFFICE OF THE CLERK

ONE CHURCH STREET

MONTGOMERY, ALABAMA 36104

DEBRA P. HACKETT, CLERK

TELEPHONE (334) 954-3600

# NOTICE OF DEFICIENCY
# REGARDING CORPORATE/
# CONFLICT STATEMENT

**To:**        **Carrie Bowens**

**From:**      **Clerk's Office**

**Case Style:**    **Bowens v. Coty, Inc. et al**

**Case Number:**   **2:17-cv-00118-WKW-TFM**

**Notice is hereby given that pursuant to the Federal Rules of Civil Procedure 7.1, and this Court's General Order Miscellaneous Case No. 00-3047 parties are required to file their Corporate/Conflict Disclosure Statement at their initial appearance.**

<span style="color:red">**No corporate/conflict disclosure statement has been filed by you in this action.**</span>

**This deficiency must be corrected within ten (10) days from this date.   Please refer to attachment.**

149

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

Civil Misc. No 00-3047

### ORDER

### CONFLICT DISCLOSURE STATEMENT

In compliance with Fed. R. App. P. 26.1, Fed. R. Bankr. P. 1007(a)(1) and 7007.1, Fed R. Civ. P. 7.1, and Fed. R. Crim. P. 12.4, and other considerations which require judges to avoid conflicts of interest with unnamed corporations, partnerships, limited liability entities, joint ventures, trust entities, and other entities which may be related to parties to actions in this court, it is

ORDERED that this court's order (Civ. Misc. No. 00-3047) (Doc. # 2) entered February 16, 2007, is hereby VACATED.  It is further ORDERED as follows:

1.  All parties (including individuals and governmental entities) shall file a statement identifying all parent companies, subsidiaries, partners, limited liability entity members and managers, trustees (but not trust beneficiaries), affiliates, or similar entities that could potentially pose a financial or professional conflict for a judge. The statement shall be filed with a party's first appearance.  If there are no reportable relationships, that fact shall be certified in the filing.

2.  In addition to this requirement which applies to all cases, all bankruptcy appeals shall be accompanied by a statement identifying the debtor, the members of creditors' committee, any entity which is an active participant in the proceedings, and other entities whose stock or equity value may be substantially affected by the outcome of the proceedings.

3.  It is the responsibility of each party to a case to file a supplemental disclosure statement if, during the pendency of the case, additional reportable entities develop that would have been reportable initially.

4. This rule shall become effective on the date of filing, and shall apply to all cases pending in this court after that date.

DONE this 12th day of June, 2007

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE

**\*\*SAMPLE NOTICE FORMAT\*\***

**Note:** When E-Filing this pleading, please enter a separate docket entry.  The event entry is located on CM/ECF by clicking: **CIVIL > OTHER DOCUMENTS > CORPORATE DISCLOSURE STATEMENT**
A **screen-fillable** Adobe Acrobat PDF form, which can be saved and E-Filed, is available on-line; it is available at http://www.almd.uscourts.gov/docs/CONFLICT_DISCLOSURE_STATEMENT_FILLABLE.pdf

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
_____ DIVISION

| | |
|---|---|
| _____, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CASE NO. _____ |
| | ) |
| _____, | ) |
| | ) |
| Defendants, | ) |

## CONFLICT DISCLOSURE STATEMENT

COMES NOW _____, a [Plaintiff/Defendant] in the above-captioned matter, and in accordance with the order of this Court, making the following disclosure concerning parent companies, subsidiaries, partners, limited liability entity members and managers, trustees (but not trust beneficiaries), affiliates, or similar entities reportable under the provisions of the Middle District of Alabama's General Order No. 3047:

☐  This party is an individual, or

☐  This party is a governmental entity, or

☐  There are no entities to be reported, or

☐  The following entities and their relationship to the party are hereby reported:

Reportable Entity                                      Relationship to Party

_____        _____

_____        _____

_____        _____

_____        _____


_____                          Signature _____
Date                                  Counsel

                                        _____
                                        Counsel for (print names of all parties)

                                        _____
                                        Address, City, State Zip Code

                                        _____
                                        Telephone Number

Also requires a certificate of Service

152

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

The Procter & Gamble Distributing, L.L.C.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

9590 9402 1531 5362 7561 76

2. Article Number (Transfer from service label)

7013 0600 0002 4323 1046

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
*Amy McLaren*
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

RECEIVED MAR 1 0 2017

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
Mail
Mail Restricted Delivery
(over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

Procter & Gamble Hair Care, L.L.C.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

9590 9402 1531 5362 7561 69

2. Article Number (Transfer from service label)

7013 0600 0002 4323 1053

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Amy McLaren*
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

RECEIVED MAR 1 0 2017

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
Mail
Mail Restricted Delivery
(over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| **CARRIE BOWENS, on behalf of Herself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**COTY, INC., a Delaware Corporation; THE PROCTER & GAMBLE COMPANY, INC., an Ohio Corporation; THE PROCTER & GAMBLE MANUFACTURING COMPANY, INC., an Ohio Corporation; THE PROCTER & GAMBLE DISTRIBUTING, L.L.C., a Delaware Limited Liability Company; PROCTER & GAMBLE HAIR CARE, L.L.C., a Delaware Limited Liability Company;**<br><br>           **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) **Civil Action No.:**<br>) **2:17-cv-00118-WKW-TFM**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S CONFLICT DISCLOSURE STATEMENT

COMES NOW, Carrie Bowens, a Plaintiff in the above-captioned matter, and in accordance with the order of this Court, making the following disclosure concerning parent companies, subsidiaries, partners, limited liability entity members and managers, trustees (but not trust beneficiaries), affiliates, or similar entities reportable under the provisions of the Middle District of Alabama's General Order No. 3047:

This party is an individual.

Respectfully submitted, this the 21st day of March, 2017.

> /s/Brandy L. Robertson
> W. Lewis Garrison, Jr.
> AL Bar No.: ASB-3591-N74W
> wlgarrison@hgdlawfirm.com
> Brandy Lee Robertson
> AL Bar No.: ASB-2737-D65R
> brandy@hgdlawfirm.com
> *Attorneys for Plaintiff and the Putative Class*
> HENINGER GARRISON DAVIS, LLC
> 2224 First Avenue North
> Birmingham, AL 35203
> Telephone: 205.326.3336
> Facsimile: 205-326-3332
>
> K. Stephen Jackson
> AL Bar No.: ASB-7587-O76K
> steve@jacksonandtucker.com
> Joseph L. "Josh" Tucker
> AL Bar No.: ASB-1653-E26J
> josh@jacksonandtucker.com
> *Attorneys for Plaintiff and the Putative Class*
> JACKSON & TUCKER, P.C.
> 2229 1st Ave. North
> Birmingham, AL 35203-4203
> Telephone: 205.252.3535
> Facsimile: 205.252.3536

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on the parties below via US Mail or via the CM/ECF system, on this the 21st, day of March, 2017

Coty, Inc.
Corporation Service Company
2711 Centerville Road
Suite 400
Wilmington, Delaware 19808

The Procter & Gamble Company, Inc.
CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

The Procter & Gamble Manufacturing Company, Inc.
CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

The Procter & Gamble Distributing, L.L.C.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

Procter & Gamble Hair Care, L.L.C.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

/s/Brandy L. Robertson
Brandy Lee Robertson
AL Bar No.: ASB-2737-D65R
brandy@hgdlawfirm.com
*Attorneys for Plaintiff and the
Putative Class*

Page 3 of 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| CARRIE BOWENS, on behalf of Herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: **2:17-cv-00118-WKW-TFM** |
| v. | ) ) | |
| COTY, INC., *et al.* | ) ) | |
| Defendants. | ) | |

## ANSWER

Comes now Defendant, Coty, Inc., and for Answer to the Complaint (doc. 1), states and shows as follows:

## INTRODUCTION

1. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

2. Admitted.

## PARTIES

3. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demand strict proof thereof.

4. Admitted.

{02365065.1}

1

5.      This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

6.      This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

7.      This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

8.      This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

## JURISDICTION AND VENUE

9.      Denied.

10.     Denied.

11.     Denied.

{02365065.1}                                2

## GENERAL FACTUAL ALLEGATIONS
## COMMON TO ALL CLASS MEMBERS

12.-82.      Defendant generally denies the averments in paragraphs 12 through 82 of Plaintiff's complaint and demands strict proof thereof. The general averments in these paragraphs include representations as to the content and findings of documents not attached to the complaint, legal conclusions, and adversarial interpretation and characterization of statutes and regulations. As a practical matter, researching the content, representations and allegations in order to independently respond to each and every averment contained in these paragraphs would be excessively burdensome and expensive, and tantamount to responding to discovery without application of the proportionality balancing analysis required by Fed.R.Civ.P. 26(b)(1). Other of these paragraphs generally and collectively allege the mental operations, actions, knowledge, reliance and damages of unnamed individual members of the purported class; which is defined as "All persons in the United States or its territories who…purchased Clairol Balsam Color…that contained p-Phenylenediamine" (Doc. 1 at ¶ 86). Defendant therefore avers that the admission of such individualized facts as to unnamed purported class-member is not only impossible at the pleading stage, but equates to premature merits discovery. See Fed.R.Civ.P. 23(d).  Defendant further avers that pursuant to the best evidence rule, documents, articles, reports, and other writings are not an appropriate subject matter

{02365065.1}                              3

upon which to seek an admission from a defendant at the pleading stage. See Fed.R.Evid. 1002.

## PLAINTIFF'S FACTUAL ALLEGATIONS

83.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

84.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

85.  Defendant denies that it made false, misleading or deceptive representations, that any product of this Defendant was defective or unreasonably dangerous, and that any warnings or instructions provided with any Product were inadequate. Defendant further denies that any act or omission of this Defendant was the proximate cause of any injuries averred by Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's alleged injuries. Therefore, Defendant denies all such allegations and demands strict proof thereof.

## CLASS ACTION ALLEGATIONS

86.  Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

{02365065.1}                                     4

87.     Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

88.     Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

89.     Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Denied.

**CAUSES OF ACTION**
**COUNT I**
**UNJUST ENRICHMENT**
**(On behalf of the Nationwide Class and State Subclass)**

97.     Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

98.     To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

99.     Denied.

{02365065.1}                                        5

100. Denied.

101. Denied.

102. Denied.

103. Denied.

104. Denied.

105. Denied.

106. Denied.

## COUNT II
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (On behalf of the Nationwide Class)

107. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

108. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

109. Denied.

110. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

111. Admitted.

112. Admitted.

{02365065.1}                                6

113.   Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

114.   Denied.

115.   Denied.

116.   Denied.

117.   Denied.

118.   Denied.

119.   Denied.

120.   Denied.

121.   Denied.

122.   Denied.

123.   Denied.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**
**(On behalf of the Nationwide Class)**

124.   Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

125.   To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

126.   Denied.

{02365065.1}

127.   Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

128.   Denied.

129.   Denied.

130.   Denied.

131.   Denied.

132.   Denied.

133.   Denied.

134.   Denied.

## COUNT IV
## BREACH OF IMPLIED WARRANTY
### (On behalf of the Nationwide Class)

135.   Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

136.   To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

137.   Admitted.

138.   Denied.

139.   Denied.

140.   Denied.

{02365065.1}                          8

141. Denied.

142. Denied.

143. Denied.

144. Denied.

145. Denied.

## COUNT V
### Violation of the Alabama Deceptive Trade Practices Act
### (CODE OF ALABAMA §§ 8-19-1, *et seq*.)
### (On behalf of the Nationwide Class)

146. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

147. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

148. Denied.

149. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

150. Denied.

151. Denied.

152. Denied.

153. Denied.

{02365065.1}                                  9

154. Denied.

155. Denied.

## COUNT VI
### Fraud
### (On behalf of the Nationwide Class)

156. Defendant adopts and incorporates their answers to the preceding paragraphs as if set forth fully herein.

157. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

158. Denied.

159. Denied.

160. Denied.

161. Denied.

162. Denied.

163. Denied.

164. Denied.

165. Denied.

166. Denied.

167. Denied.

## COUNT VI
## NEGLIGENT DESIGN AND FAILURE TO WARN
### (On behalf of the Nationwide Class)

168. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

169. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

170. Denied.

171. Denied.

172. Denied.

173. Denied.

174. Denied.

175. Denied.

176. Denied.

177. Denied.

178. Denied.

179. Denied.

180. Denied.

## PRESERVATION OF CLAIMS

181. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

{02365065.1}                                11

182. Denied.

183. Denied.

184. Denied.

185. Denied.

186. Denied.

187. Denied.

188. Denied.

<h2 style="text-align:center"><strong><u>PRAYER FOR RELIEF</u></strong></h2>

Regarding Plaintiff's prayer for relief, Defendant denies that Plaintiff is entitled to any relief as against it or from this Court.

# AFFIRMATIVE DEFENSES

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted against this Defendant.

## SECOND DEFENSE

Defendant pleads failure to provide notice.

## THIRD DEFENSE

Defendant denies that Plaintiff is entitled to an Order certifying the class under Federal Rule of Civil Procedure 23, or that the legal claims of Plaintiff are subject to class treatment.

## FOURTH DEFENSE

Defendant affirmatively avers that the State law claims are preempted by Federal law.

## FIFTH DEFENSE

Plaintiff lacks standing.

## SIXTH DEFENSE

Defendant pleads lack of subject matter jurisdiction.

## SEVENTH DEFENSE

Defendant pleads lack of personal jurisdiction.

## EIGHTH DEFENSE

Defendant affirmatively avers that Plaintiff is not a proper class representative under Federal Rule of Civil Procedure 23.

## NINTH DEFENSE

Defendant affirmatively avers that there are not common questions of law or fact between Plaintiff and the purported class as defined in the Complaint.

## TENTH DEFENSE

Defendant affirmatively avers that the claims of the Plaintiff are not typical of the claims of the purported class as defined in the Complaint.

## ELEVENTH DEFENSE

Defendant affirmatively avers that a class action is not superior to other available methods for fairly and efficiently adjudicating the controversy.

## TWELFTH DEFENSE

Defendant denies that Plaintiff is entitled to any relief against it or from this Court.

## THIRTEENTH DEFENSE

Defendant affirmatively avers that the individuals potentially within the scope of the putative class, as defined in Plaintiff's complaint, are not presently ascertainable or identifiable.

{02365065.1}                                   14

**FOURTEENTH DEFENSE**

Defendant affirmatively avers that the scope of the putative class, as defined in Plaintiff's complaint, includes individuals without Article III standing.

**FIFTEENTH DEFENSE**

Defendant affirmatively avers that the scope of the putative class, as defined in Plaintiff's complaint, includes individuals who have incurred no legally compensable injury in fact.

**SIXTEENTH DEFENSE**

Defendant affirmatively avers that individualized determinations of liability, causation and damages must be made as to each individual member of the putative class.

**SEVENTEENTH DEFENSE**

Defendant affirmatively avers that this action is not maintainable as a class under Fed.R.Civ.P. 23(b)(3).

**EIGHTEENTH DEFENSE**

Defendant affirmatively asserts its rights under the Seventh Amendment, the Confrontation Clauses of the United States and Alabama Constitutions, and its Due Process rights, and avers that the award of damages in favor of any member of the

{02365065.1}                                              15

putative class without Defendant being afforded the opportunity to cross-examination that individual during a trial by jury would be violative of these rights.

## NINETEENTH DEFENSE

Defendant affirmatively avers that claims alleged are statutorily preempted and or precluded by the laws of the various states and territories of the United States.

## TWENTIETH DEFENSE

Defendant affirmatively avers that a prior filed class action complaint making allegations and defining a class identical to that in this complaint is currently pending in the United States District Court for the Southern District of Alabama, <u>Jones v. Coty, Inc.</u>, *et al.*, 1:16-cv-00622-WS-B.

## TWENTY-FIRST DEFENSE

Defendant affirmatively avers that the United States District Court for the Southern District of Alabama has previously exercised subject matter jurisdiction over the class claims and allegations asserted in Plaintiff's complaint. <u>Jones v. Coty, Inc.</u>, *et al.*, 1:16-cv-00622-WS-B.

## TWENTY-SECOND DEFENSE

Defendant affirmatively avers lack of privity with Plaintiff or the potential members of the putative class.

{02365065.1} 16

## TWENTY-THIRD DEFENSE

Defendant affirmatively avers failure to read and heed provided warnings and instructions, and product misuse, by Plaintiff or potential members of the putative class who claim to have been injured by the subject product(s).

## TWENTY-FOURTH DEFENSE

Defendant affirmatively avers that neither Plaintiff nor any potential member of the putative class can establish the essential elements of any claim presented.

## TWENTY-FIFTH DEFENSE

Defendant affirmatively contests any and all damages claimed or alleged by Plaintiff or any potential member of the putative class, and demands strict proof thereof.

## TWENTY-SIXTH DEFENSE

Defendant affirmatively asserts all statutes of limitation and/or repose which may be applicable to the claims of Plaintiff or any potential member of the putative class.

## TWENTY-SEVENTH DEFENSE

Defendant affirmatively asserts that additional affirmative defenses and bars to liability may be applicable to the claims of specific members of the putative class

{02365065.1}

by operation of choice of law and the *Erie* doctrines, and reserves the right to aver those defenses and bars to liability when and if the state in which the claims of any potential member of the putative class are alleged to have arisen is pled or identified.

## TWENTY-EIGHTH DEFENSE

Defendant affirmatively contests the personal jurisdiction of this Court to entertain or resolve the claims of any potential member of the putative class whose alleged injuries and damages are not claimed to arise from this Defendant's intentional contacts within the State of Alabama.

## TWENTY-NINTH DEFENSE

Defendant denies that its conduct or action proximately caused any of the damages or injuries claimed by Plaintiff.

## THIRTIETH DEFENSE

Defendant denies that it breached any duties owed to Plaintiff.

## THIRTY-FIRST DEFENSE

Defendant pleads lack of causal relation.

## THIRTY-SECOND DEFENSE

Defendant pleads the applicable statute of limitations.

## THIRTY-THIRD DEFENSE

Defendant contests the damages claimed by Plaintiff.

{02365065.1}

18

## THIRTY-FOURTH DEFENSE

Defendant denies that Plaintiff is entitled to recover costs, fees, or expenses.

## THIRTY-FIFTH DEFENSE

Defendant pleads the common law defenses of contributory negligence, assumption of the risk, and such other and further defenses as shall become known throughout the course of discovery in this action.

## THIRTY-SIXTH DEFENSE

Defendant pleads the equitable defenses of equitable estoppel, judicial estoppel, and such other and further equitable defenses as shall become known throughout the course of discovery in this action.

## THIRTY-SEVENTH DEFENSE

As concerns all claims for punitive damages, this Defendant avers that such claims and such requisite burden of proof violate this Defendant's rights to equal protection and due process under the Constitution of the United States and the Constitution of the State of Alabama; said claims and requisite burden of proof amount to an undue taking without due process of law and violate the Excessive Fines Clause of the Constitution of the United States and the Constitution of the State of Alabama.  This Defendant affirmatively avers that the Plaintiff's claim for punitive damages is vague, arbitrary, and unclear and that the standard for determining liability for punitive damages under Alabama law does not define with

{02365065.1}                                     19

sufficient clarity the conduct or mental state of the Defendant which gives rise to a claim for punitive and exemplary damages.  Additionally, the Plaintiff's claim for punitive damages cannot be sustained in that there are no meaningful standards for determining the amount of any punitive damage award under Alabama law and that Alabama law fails to state with sufficient clarity the consequence to a Defendant of any conduct which may give rise to the claim for punitive damages.  Therefore, any award of punitive damages violates this Defendant's rights to due process of law under the Fifth and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

### THIRTY-EIGHTH DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages cannot be sustained in that any award of punitive damages under Alabama law without proof of every element beyond a reasonable doubt would violate this Defendant's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

### THIRTY-NINTH DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages cannot be sustained in that any award of punitive damages under Alabama law without a bifurcated trial as to all punitive damage issues would be violative of

{02365065.1}                                        20

this Defendant's rights to due process of law under the Fifth and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

## FORTIETH DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages cannot be sustained in that any award of punitive damages in this case cannot protect this Defendant against multiple and repeated punishment for the same alleged wrong in future cases. Accordingly, any award of punitive damages would violate this Defendant's rights to due process of law and would constitute "double jeopardy" under the Fifth and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

## FORTY-FIRST DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages would violate this Defendant's rights to due process under the Fourteenth Amendment to the Constitution of the United States of American and under the Constitution of the State of Alabama as well as to other rights and protections afforded to it by _State Farm Automobile Ins. Co. v. Campbell_, 123 S. Ct. 1513 (April 7, 2003).

{02365065.1}                              21

## FORTY-SECOND DEFENSE

Unless this Defendant's liability for punitive damages and the appropriate amount of punitive damages are required to be established by clear and convincing evidence, any award of punitive damages would violate this Defendant's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Article I, § 13 of the Alabama Constitution, and would be improper under the common law and public policies of the State of Alabama.

## FORTY-THIRD DEFENSE

Plaintiff's claim for punitive damages against this Defendant cannot be maintained, because an award of punitive damages under Alabama law would be void for vagueness, both facially and as applied. Among other deficiencies, there is an absence of adequate notice of what conduct is subject to punishment; an absence of adequate notice of what punishment may be imposed; an absence of predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount, on the amount of punitive damages that a jury may impose, a risk that punitive damages will be imposed retrospectively based on conduct that was not deemed punishable at the time the conduct occurred, and it would permit and encourage arbitrary and discriminatory enforcement, all in violation of the due process clause of the Fourteenth Amendment to the United States Constitution,

{02365065.1}                                      22

Article I, § 13 of the Alabama Constitution, and the common law and public policies of the State of Alabama.

## **FORTY-FOURTH DEFENSE**

Plaintiff's claim for punitive damages against this Defendant cannot be maintained, because any award of punitive damages under Alabama law would be by a jury that (1) is not provided standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damages award, (2) is not adequately instructed on the limits on punitive damages imposed by the applicable principles of deterrence and punishment, (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics, including the residence, wealth, and corporate status of this Defendant, (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible, and (5) is not subject to adequate trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of objective standards. Any such verdict would violate this Defendant's due process rights guaranteed by the Fourteenth Amendment to the United States

{02365065.1}                                23

Constitution and by Article I, § 13 of the Alabama Constitution, and would be improper under the common law and public policies of the State of Alabama.

## FORTY-FIFTH DEFENSE

Any award of punitive damages based on anything other than this Defendant's conduct in connection with the specific coverage that is the subject of this lawsuit would violate the due process clause of the Fourteenth Amendment to the United States Constitution and Article I, § 13 of the Alabama Constitution, and would be improper under the common law and public policies of the State of Alabama because any other judgment for punitive damages in this case cannot protect this Defendant against impermissible multiple punishment for the same wrong and against punishment for extra-territorial conduct, including especially conduct that is lawful in states other than the State of Alabama. In addition, any such award would violate principles of comity under the laws of the State of Alabama.

## FORTY-SIXTH DEFENSE

To the extent that the law of Alabama permits punishment to be measured by the net worth or financial status of this Defendant and imposes greater punishment on defendants with larger net worth, such an award would be unconstitutional because it permits arbitrary, capricious and fundamentally unfair punishments, allows bias and prejudice to infect verdicts imposing punishment, allows punishment to be imposed based on lawful profits and conduct of this Defendant in other States,

{02365065.1}                              24

and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution, the Commerce Clause of the United States Constitution, and Article I, § 13 of the Alabama Constitution.

## FORTY-SEVENTH DEFENSE

Defendant reserves the right to supplement this Answer as additional defenses become known throughout the course of discovery in this action.

Respectfully submitted,

/s/ Walter J. Price, III
Walter J. Price, III (asb-0127-c66w)
H. Cannon Lawley (asb-3908-l75h)
J. Bart Cannon (asb-8733-e52c)
Attorneys for Said Defendant

**OF COUNSEL**:
HUIE, FERNAMBUCQ & STEWART, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, AL 35223-2484
Phone: (205) 251-1193
Fax: (205)251-1256
wprice@huielaw.com
cannon@huielaw.com
bcannon@huielaw.com

{02365065.1}                                    25

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2017, I electronically filed the foregoing with the Clerk of the Court using E-File system which will send notification of such filing to the attorneys of record and mailing the document via U. S. Mail to the attorneys who are non-participants to the E-File system:

W. Lewis Garrison, Jr.
Brandy Lee Robertson
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, Alabama  35203
wlgarrison@hgdlawfirm.com
brandy@hgdlawfirm.com

K. Stephen Jackson
Joseph L. "Josh" Tucker
JACKSON & TUCKER, P.C.
2229 1st Avenue North
Birmingham, Alabama  35203
steve@jacksonandtucker.com
josh@jacksonandtucker.com

Luther Strange, Attorney General
State of Alabama
11 South Union Street
Montgomery, Alabama 36130


/s/ Walter J. Price, III
OF COUNSEL

{02365065.1}                              26

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| CARRIE BOWENS, on behalf of Herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 2:17-cv-00118-WKW-TFM |
| v. | ) ) | |
| COTY, INC., *et al.* | ) ) | |
| Defendants. | ) | |

## ANSWER

Comes now Defendant, The Proctor & Gamble Manufacturing Co., Inc., and for Answer to the Complaint (doc. 1), states and shows as follows:

## INTRODUCTION

1. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

2. Admitted.

## PARTIES

3. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demand strict proof thereof.

1

4.      This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

5.      This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

6.      Admitted.

7.      This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

8.      This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

### JURISDICTION AND VENUE

9.      Denied.

10.     Denied.

2

11.     Denied.

## GENERAL FACTUAL ALLEGATIONS
## COMMON TO ALL CLASS MEMBERS

12.-82.     Defendant generally denies the averments in paragraphs 12 through 82 of Plaintiff's complaint and demands strict proof thereof. The general averments in these paragraphs include representations as to the content and findings of documents not attached to the complaint, legal conclusions, and adversarial interpretation and characterization of statutes and regulations. As a practical matter, researching the content, representations and allegations in order to independently respond to each and every averment contained in these paragraphs would be excessively burdensome and expensive, and tantamount to responding to discovery without application of the proportionality balancing analysis required by Fed.R.Civ.P. 26(b)(1). Other of these paragraphs generally and collectively allege the mental operations, actions, knowledge, reliance and damages of unnamed individual members of the purported class; which is defined as "All persons in the United States or its territories who…purchased Clairol Balsam Color…that contained p-Phenylenediamine" (Doc. 1 at ¶ 86). Defendant therefore avers that the admission of such individualized facts as to unnamed purported class-member is not only impossible at the pleading stage, but equates to premature merits discovery. See Fed.R.Civ.P. 23(d).  Defendant further avers that pursuant to the best evidence rule, documents, articles, reports, and other writings are not an appropriate subject matter

3

upon which to seek an admission from a defendant at the pleading stage. <u>See</u> Fed.R.Evid. 1002.

**PLAINTIFF'S FACTUAL ALLEGATIONS**

83. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

84. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

85. Defendant denies that it made false, misleading or deceptive representations, that any product of this Defendant was defective or unreasonably dangerous, and that any warnings or instructions provided with any Product were inadequate. Defendant further denies that any act or omission of this Defendant was the proximate cause of any injuries averred by Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's alleged injuries. Therefore, Defendant denies all such allegations and demands strict proof thereof.

**CLASS ACTION ALLEGATIONS**

86. Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

4

87.     Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

88.     Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

89.     Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Denied.

## CAUSES OF ACTION
## COUNT I
## UNJUST ENRICHMENT
### (On behalf of the Nationwide Class and State Subclass)

97.     Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

98.     To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

99.     Denied.

5

100. Denied.

101. Denied.

102. Denied.

103. Denied.

104. Denied.

105. Denied.

106. Denied.

## COUNT II
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (On behalf of the Nationwide Class)

107. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

108. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

109. Denied.

110. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

111. Admitted.

112. Admitted.

6

113. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

114. Denied.

115. Denied.

116. Denied.

117. Denied.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. Denied.

123. Denied.

## COUNT III
## BREACH OF EXPRESS WARRANTY
### (On behalf of the Nationwide Class)

124. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

125. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

126. Denied.

7

127.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

128.  Denied.

129.  Denied.

130.  Denied.

131.  Denied.

132.  Denied.

133.  Denied.

134.  Denied.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY**
**(On behalf of the Nationwide Class)**

135.  Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

136.  To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

137.  Admitted.

138.  Denied.

139.  Denied.

140.  Denied.

8

141. Denied.

142. Denied.

143. Denied.

144. Denied.

145. Denied.

## COUNT V
### Violation of the Alabama Deceptive Trade Practices Act
### (CODE OF ALABAMA §§ 8-19-1, *et seq.*)
### (On behalf of the Nationwide Class)

146. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

147. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

148. Denied.

149. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

150. Denied.

151. Denied.

152. Denied.

153. Denied.

9

154. Denied.

155. Denied.

## COUNT VI
### Fraud
### (On behalf of the Nationwide Class)

156. Defendant adopts and incorporates their answers to the preceding paragraphs as if set forth fully herein.

157. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

158. Denied.

159. Denied.

160. Denied.

161. Denied.

162. Denied.

163. Denied.

164. Denied.

165. Denied.

166. Denied.

167. Denied.

193

## COUNT VI
## NEGLIGENT DESIGN AND FAILURE TO WARN
### (On behalf of the Nationwide Class)

168. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

169. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

170. Denied.

171. Denied.

172. Denied.

173. Denied.

174. Denied.

175. Denied.

176. Denied.

177. Denied.

178. Denied.

179. Denied.

180. Denied.

## <u>PRESERVATION OF CLAIMS</u>

181. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

194

182.   Denied.

183.   Denied.

184.   Denied.

185.   Denied.

186.   Denied.

187.   Denied.

188.   Denied.

## **<u>PRAYER FOR RELIEF</u>**

Regarding Plaintiff's prayer for relief, Defendant denies that Plaintiff is entitled to any relief as against it or from this Court.

194

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted against this Defendant.

### SECOND DEFENSE

Defendant pleads failure to provide notice.

### THIRD DEFENSE

Defendant denies that Plaintiff is entitled to an Order certifying the class under Federal Rule of Civil Procedure 23, or that the legal claims of Plaintiff are subject to class treatment.

### FOURTH DEFENSE

Defendant affirmatively avers that the State law claims are preempted by Federal law.

### FIFTH DEFENSE

Plaintiff lacks standing.

### SIXTH DEFENSE

Defendant pleads lack of subject matter jurisdiction.

### SEVENTH DEFENSE

Defendant pleads lack of personal jurisdiction.

13

## EIGHTH DEFENSE

Defendant affirmatively avers that Plaintiff is not a proper class representative under Federal Rule of Civil Procedure 23.

## NINTH DEFENSE

Defendant affirmatively avers that there are not common questions of law or fact between Plaintiff and the purported class as defined in the Complaint.

## TENTH DEFENSE

Defendant affirmatively avers that the claims of the Plaintiff are not typical of the claims of the purported class as defined in the Complaint.

## ELEVENTH DEFENSE

Defendant affirmatively avers that a class action is not superior to other available methods for fairly and efficiently adjudicating the controversy.

## TWELFTH DEFENSE

Defendant denies that Plaintiff is entitled to any relief against it or from this Court.

## THIRTEENTH DEFENSE

Defendant affirmatively avers that the individuals potentially within the scope of the putative class, as defined in Plaintiff's complaint, are not presently ascertainable or identifiable.

14

## FOURTEENTH DEFENSE

Defendant affirmatively avers that the scope of the putative class, as defined in Plaintiff's complaint, includes individuals without Article III standing.

## FIFTEENTH DEFENSE

Defendant affirmatively avers that the scope of the putative class, as defined in Plaintiff's complaint, includes individuals who have incurred no legally compensable injury in fact.

## SIXTEENTH DEFENSE

Defendant affirmatively avers that individualized determinations of liability, causation and damages must be made as to each individual member of the putative class.

## SEVENTEENTH DEFENSE

Defendant affirmatively avers that this action is not maintainable as a class under Fed.R.Civ.P. 23(b)(3).

## EIGHTEENTH DEFENSE

Defendant affirmatively asserts its rights under the Seventh Amendment, the Confrontation Clauses of the United States and Alabama Constitutions, and its Due Process rights, and avers that the award of damages in favor of any member of the

15

putative class without Defendant being afforded the opportunity to cross-examination that individual during a trial by jury would be violative of these rights.

## NINETEENTH DEFENSE

Defendant affirmatively avers that claims alleged are statutorily preempted and or precluded by the laws of the various states and territories of the United States.

## TWENTIETH DEFENSE

Defendant affirmatively avers that a prior filed class action complaint making allegations and defining a class identical to that in this complaint is currently pending in the United States District Court for the Southern District of Alabama, <u>Jones v. Coty, Inc.</u>, *et al.*, 1:16-cv-00622-WS-B.

## TWENTY-FIRST DEFENSE

Defendant affirmatively avers that the United States District Court for the Southern District of Alabama has previously exercised subject matter jurisdiction over the class claims and allegations asserted in Plaintiff's complaint. <u>Jones v. Coty, Inc.</u>, *et al.*, 1:16-cv-00622-WS-B.

## TWENTY-SECOND DEFENSE

Defendant affirmatively avers lack of privity with Plaintiff or the potential members of the putative class.

16

## TWENTY-THIRD DEFENSE

Defendant affirmatively avers failure to read and heed provided warnings and instructions, and product misuse, by Plaintiff or potential members of the putative class who claim to have been injured by the subject product(s).

## TWENTY-FOURTH DEFENSE

Defendant affirmatively avers that neither Plaintiff nor any potential member of the putative class can establish the essential elements of any claim presented.

## TWENTY-FIFTH DEFENSE

Defendant affirmatively contests any and all damages claimed or alleged by Plaintiff or any potential member of the putative class, and demands strict proof thereof.

## TWENTY-SIXTH DEFENSE

Defendant affirmatively asserts all statutes of limitation and/or repose which may be applicable to the claims of Plaintiff or any potential member of the putative class.

## TWENTY-SEVENTH DEFENSE

Defendant affirmatively asserts that additional affirmative defenses and bars to liability may be applicable to the claims of specific members of the putative class

17

by operation of choice of law and the *Erie* doctrines, and reserves the right to aver those defenses and bars to liability when and if the state in which the claims of any potential member of the putative class are alleged to have arisen is pled or identified.

## TWENTY-EIGHTH DEFENSE

Defendant affirmatively contests the personal jurisdiction of this Court to entertain or resolve the claims of any potential member of the putative class whose alleged injuries and damages are not claimed to arise from this Defendant's intentional contacts within the State of Alabama.

## TWENTY-NINTH DEFENSE

Defendant denies that its conduct or action proximately caused any of the damages or injuries claimed by Plaintiff.

## THIRTIETH DEFENSE

Defendant denies that it breached any duties owed to Plaintiff.

## THIRTY-FIRST DEFENSE

Defendant pleads lack of causal relation.

## THIRTY-SECOND DEFENSE

Defendant pleads the applicable statute of limitations.

## THIRTY-THIRD DEFENSE

Defendant contests the damages claimed by Plaintiff.

18

## THIRTY-FOURTH DEFENSE

Defendant denies that Plaintiff is entitled to recover costs, fees, or expenses.

## THIRTY-FIFTH DEFENSE

Defendant pleads the common law defenses of contributory negligence, assumption of the risk, and such other and further defenses as shall become known throughout the course of discovery in this action.

## THIRTY-SIXTH DEFENSE

Defendant pleads the equitable defenses of equitable estoppel, judicial estoppel, and such other and further equitable defenses as shall become known throughout the course of discovery in this action.

## THIRTY-SEVENTH DEFENSE

As concerns all claims for punitive damages, this Defendant avers that such claims and such requisite burden of proof violate this Defendant's rights to equal protection and due process under the Constitution of the United States and the Constitution of the State of Alabama; said claims and requisite burden of proof amount to an undue taking without due process of law and violate the Excessive Fines Clause of the Constitution of the United States and the Constitution of the State of Alabama.  This Defendant affirmatively avers that the Plaintiff's claim for punitive damages is vague, arbitrary, and unclear and that the standard for determining liability for punitive damages under Alabama law does not define with

19

sufficient clarity the conduct or mental state of the Defendant which gives rise to a claim for punitive and exemplary damages. Additionally, the Plaintiff's claim for punitive damages cannot be sustained in that there are no meaningful standards for determining the amount of any punitive damage award under Alabama law and that Alabama law fails to state with sufficient clarity the consequence to a Defendant of any conduct which may give rise to the claim for punitive damages. Therefore, any award of punitive damages violates this Defendant's rights to due process of law under the Fifth and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

## THIRTY-EIGHTH DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages cannot be sustained in that any award of punitive damages under Alabama law without proof of every element beyond a reasonable doubt would violate this Defendant's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

## THIRTY-NINTH DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages cannot be sustained in that any award of punitive damages under Alabama law without a bifurcated trial as to all punitive damage issues would be violative of

20

this Defendant's rights to due process of law under the Fifth and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

## FORTIETH DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages cannot be sustained in that any award of punitive damages in this case cannot protect this Defendant against multiple and repeated punishment for the same alleged wrong in future cases. Accordingly, any award of punitive damages would violate this Defendant's rights to due process of law and would constitute "double jeopardy" under the Fifth and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

## FORTY-FIRST DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages would violate this Defendant's rights to due process under the Fourteenth Amendment to the Constitution of the United States of American and under the Constitution of the State of Alabama as well as to other rights and protections afforded to it by _State Farm Automobile Ins. Co. v. Campbell_, 123 S. Ct. 1513 (April 7, 2003).

21

## FORTY-SECOND DEFENSE

Unless this Defendant's liability for punitive damages and the appropriate amount of punitive damages are required to be established by clear and convincing evidence, any award of punitive damages would violate this Defendant's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Article I, § 13 of the Alabama Constitution, and would be improper under the common law and public policies of the State of Alabama.

## FORTY-THIRD DEFENSE

Plaintiff's claim for punitive damages against this Defendant cannot be maintained, because an award of punitive damages under Alabama law would be void for vagueness, both facially and as applied.  Among other deficiencies, there is an absence of adequate notice of what conduct is subject to punishment; an absence of adequate notice of what punishment may be imposed; an absence of predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount, on the amount of punitive damages that a jury may impose, a risk that punitive damages will be imposed retrospectively based on conduct that was not deemed punishable at the time the conduct occurred, and it would permit and encourage arbitrary and discriminatory enforcement, all in violation of the due process clause of the Fourteenth Amendment to the United States Constitution,

Article I, § 13 of the Alabama Constitution, and the common law and public policies of the State of Alabama.

## FORTY-FOURTH DEFENSE

Plaintiff's claim for punitive damages against this Defendant cannot be maintained, because any award of punitive damages under Alabama law would be by a jury that (1) is not provided standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damages award, (2) is not adequately instructed on the limits on punitive damages imposed by the applicable principles of deterrence and punishment, (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics, including the residence, wealth, and corporate status of this Defendant, (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible, and (5) is not subject to adequate trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of objective standards. Any such verdict would violate this Defendant's due process rights guaranteed by the Fourteenth Amendment to the United States

23

Constitution and by Article I, § 13 of the Alabama Constitution, and would be improper under the common law and public policies of the State of Alabama.

## FORTY-FIFTH DEFENSE

Any award of punitive damages based on anything other than this Defendant's conduct in connection with the specific coverage that is the subject of this lawsuit would violate the due process clause of the Fourteenth Amendment to the United States Constitution and Article I, § 13 of the Alabama Constitution, and would be improper under the common law and public policies of the State of Alabama because any other judgment for punitive damages in this case cannot protect this Defendant against impermissible multiple punishment for the same wrong and against punishment for extra-territorial conduct, including especially conduct that is lawful in states other than the State of Alabama. In addition, any such award would violate principles of comity under the laws of the State of Alabama.

## FORTY-SIXTH DEFENSE

To the extent that the law of Alabama permits punishment to be measured by the net worth or financial status of this Defendant and imposes greater punishment on defendants with larger net worth, such an award would be unconstitutional because it permits arbitrary, capricious and fundamentally unfair punishments, allows bias and prejudice to infect verdicts imposing punishment, allows punishment to be imposed based on lawful profits and conduct of this Defendant in other States,

24

and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution, the Commerce Clause of the United States Constitution, and Article I, § 13 of the Alabama Constitution.

## FORTY-SEVENTH DEFENSE

Defendant reserves the right to supplement this Answer as additional defenses become known throughout the course of discovery in this action.

Respectfully submitted,

/s/ Walter J. Price, III
Walter J. Price, III (asb-0127-c66w)
H. Cannon Lawley (asb-3908-l75h)
J. Bart Cannon (asb-8733-e52c)
Attorneys for Said Defendant

**OF COUNSEL**:
HUIE, FERNAMBUCQ & STEWART, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, AL 35223-2484
Phone: (205) 251-1193
Fax: (205)251-1256
wprice@huielaw.com
cannon@huielaw.com
bcannon@huielaw.com

25

## CERTIFICATE OF SERVICE

      I hereby certify that on March 31, 2017, I electronically filed the foregoing with the Clerk of the Court using E-File system which will send notification of such filing to the attorneys of record and mailing the document via U. S. Mail to the attorneys who are non-participants to the E-File system:

W. Lewis Garrison, Jr.
Brandy Lee Robertson
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, Alabama 35203
wlgarrison@hgdlawfirm.com
brandy@hgdlawfirm.com

K. Stephen Jackson
Joseph L. "Josh" Tucker
JACKSON & TUCKER, P.C.
2229 1st Avenue North
Birmingham, Alabama 35203
steve@jacksonandtucker.com
josh@jacksonandtucker.com

Luther Strange, Attorney General
State of Alabama
11 South Union Street
Montgomery, Alabama 36130

                /s/ Walter J. Price, III
                OF COUNSEL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| CARRIE BOWENS, on behalf of Herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 2:17-cv-00118-WKW-TFM |
| v. | ) ) | |
| COTY, INC., *et al.* | ) ) | |
| Defendants. | ) | |

## ANSWER

Comes now Defendant, The Proctor and Gamble Company, Inc., and for Answer to the Complaint (doc. 1), states and shows as follows:

## INTRODUCTION

1. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

2. Admitted.

## PARTIES

3. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demand strict proof thereof.

1

4.      This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

5.      Admitted.

6.      This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

7.      This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

8.      This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

## JURISDICTION AND VENUE

9.      Denied.

10.      Denied.

2

11.    Denied.

## GENERAL FACTUAL ALLEGATIONS
## COMMON TO ALL CLASS MEMBERS

12.-82.    Defendant generally denies the averments in paragraphs 12 through 82 of Plaintiff's complaint and demands strict proof thereof. The general averments in these paragraphs include representations as to the content and findings of documents not attached to the complaint, legal conclusions, and adversarial interpretation and characterization of statutes and regulations. As a practical matter, researching the content, representations and allegations in order to independently respond to each and every averment contained in these paragraphs would be excessively burdensome and expensive, and tantamount to responding to discovery without application of the proportionality balancing analysis required by Fed.R.Civ.P. 26(b)(1). Other of these paragraphs generally and collectively allege the mental operations, actions, knowledge, reliance and damages of unnamed individual members of the purported class; which is defined as "All persons in the United States or its territories who…purchased Clairol Balsam Color…that contained p-Phenylenediamine" (Doc. 1 at ¶ 86). Defendant therefore avers that the admission of such individualized facts as to unnamed purported class-member is not only impossible at the pleading stage, but equates to premature merits discovery. See Fed.R.Civ.P. 23(d).  Defendant further avers that pursuant to the best evidence rule, documents, articles, reports, and other writings are not an appropriate subject matter

3

upon which to seek an admission from a defendant at the pleading stage. See Fed.R.Evid. 1002.

## PLAINTIFF'S FACTUAL ALLEGATIONS

83.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

84.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

85.    Defendant denies that it made false, misleading or deceptive representations, that any product of this Defendant was defective or unreasonably dangerous, and that any warnings or instructions provided with any Product were inadequate. Defendant further denies that any act or omission of this Defendant was the proximate cause of any injuries averred by Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's alleged injuries. Therefore, Defendant denies all such allegations and demands strict proof thereof.

## CLASS ACTION ALLEGATIONS

86.    Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

4

87.     Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

88.     Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

89.     Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Denied.

**CAUSES OF ACTION**
**COUNT I**
**UNJUST ENRICHMENT**
**(On behalf of the Nationwide Class and State Subclass)**

97.     Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

98.     To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

99.     Denied.

5

100.  Denied.

101.  Denied.

102.  Denied.

103.  Denied.

104.  Denied.

105.  Denied.

106.  Denied.

## COUNT II
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (On behalf of the Nationwide Class)

107.  Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

108.  To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

109.  Denied.

110.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

111.  Admitted.

112.  Admitted.

113. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

114. Denied.

115. Denied.

116. Denied.

117. Denied.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. Denied.

123. Denied.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**
**(On behalf of the Nationwide Class)**

124. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

125. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

126. Denied.

127.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

128.    Denied.

129.    Denied.

130.    Denied.

131.    Denied.

132.    Denied.

133.    Denied.

134.    Denied.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY**
**(On behalf of the Nationwide Class)**

135.    Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

136.    To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

137.    Admitted.

138.    Denied.

139.    Denied.

140.    Denied.

8

141. Denied.

142. Denied.

143. Denied.

144. Denied.

145. Denied.

## COUNT V
### Violation of the Alabama Deceptive Trade Practices Act
### (CODE OF ALABAMA §§ 8-19-1, *et seq*.)
### (On behalf of the Nationwide Class)

146. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

147. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

148. Denied.

149. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

150. Denied.

151. Denied.

152. Denied.

153. Denied.

9

154.  Denied.

155.  Denied.

## COUNT VI
### Fraud
### (On behalf of the Nationwide Class)

156.  Defendant adopts and incorporates their answers to the preceding paragraphs as if set forth fully herein.

157.  To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

158.  Denied.

159.  Denied.

160.  Denied.

161.  Denied.

162.  Denied.

163.  Denied.

164.  Denied.

165.  Denied.

166.  Denied.

167.  Denied.

## COUNT VI
## NEGLIGENT DESIGN AND FAILURE TO WARN
### (On behalf of the Nationwide Class)

168. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

169. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

170. Denied.

171. Denied.

172. Denied.

173. Denied.

174. Denied.

175. Denied.

176. Denied.

177. Denied.

178. Denied.

179. Denied.

180. Denied.

## PRESERVATION OF CLAIMS

181. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

11

182.    Denied.

183.    Denied.

184.    Denied.

185.    Denied.

186.    Denied.

187.    Denied.

188.    Denied.

## PRAYER FOR RELIEF

Regarding Plaintiff's prayer for relief, Defendant denies that Plaintiff is entitled to any relief as against it or from this Court.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted against this Defendant.

### SECOND DEFENSE

Defendant pleads failure to provide notice.

### THIRD DEFENSE

Defendant denies that Plaintiff is entitled to an Order certifying the class under Federal Rule of Civil Procedure 23, or that the legal claims of Plaintiff are subject to class treatment.

### FOURTH DEFENSE

Defendant affirmatively avers that the State law claims are preempted by Federal law.

### FIFTH DEFENSE

Plaintiff lacks standing.

### SIXTH DEFENSE

Defendant pleads lack of subject matter jurisdiction.

### SEVENTH DEFENSE

Defendant pleads lack of personal jurisdiction.

## EIGHTH DEFENSE

Defendant affirmatively avers that Plaintiff is not a proper class representative under Federal Rule of Civil Procedure 23.

## NINTH DEFENSE

Defendant affirmatively avers that there are not common questions of law or fact between Plaintiff and the purported class as defined in the Complaint.

## TENTH DEFENSE

Defendant affirmatively avers that the claims of the Plaintiff are not typical of the claims of the purported class as defined in the Complaint.

## ELEVENTH DEFENSE

Defendant affirmatively avers that a class action is not superior to other available methods for fairly and efficiently adjudicating the controversy.

## TWELFTH DEFENSE

Defendant denies that Plaintiff is entitled to any relief against it or from this Court.

## THIRTEENTH DEFENSE

Defendant affirmatively avers that the individuals potentially within the scope of the putative class, as defined in Plaintiff's complaint, are not presently ascertainable or identifiable.

14

## FOURTEENTH DEFENSE

Defendant affirmatively avers that the scope of the putative class, as defined in Plaintiff's complaint, includes individuals without Article III standing.

## FIFTEENTH DEFENSE

Defendant affirmatively avers that the scope of the putative class, as defined in Plaintiff's complaint, includes individuals who have incurred no legally compensable injury in fact.

## SIXTEENTH DEFENSE

Defendant affirmatively avers that individualized determinations of liability, causation and damages must be made as to each individual member of the putative class.

## SEVENTEENTH DEFENSE

Defendant affirmatively avers that this action is not maintainable as a class under Fed.R.Civ.P. 23(b)(3).

## EIGHTEENTH DEFENSE

Defendant affirmatively asserts its rights under the Seventh Amendment, the Confrontation Clauses of the United States and Alabama Constitutions, and its Due Process rights, and avers that the award of damages in favor of any member of the

15

putative class without Defendant being afforded the opportunity to cross-examination that individual during a trial by jury would be violative of these rights.

## NINETEENTH DEFENSE

Defendant affirmatively avers that claims alleged are statutorily preempted and or precluded by the laws of the various states and territories of the United States.

## TWENTIETH DEFENSE

Defendant affirmatively avers that a prior filed class action complaint making allegations and defining a class identical to that in this complaint is currently pending in the United States District Court for the Southern District of Alabama, Jones v. Coty, Inc., *et al.*, 1:16-cv-00622-WS-B.

## TWENTY-FIRST DEFENSE

Defendant affirmatively avers that the United States District Court for the Southern District of Alabama has previously exercised subject matter jurisdiction over the class claims and allegations asserted in Plaintiff's complaint. Jones v. Coty, Inc., *et al.*, 1:16-cv-00622-WS-B.

## TWENTY-SECOND DEFENSE

Defendant affirmatively avers lack of privity with Plaintiff or the potential members of the putative class.

16

## TWENTY-THIRD DEFENSE

Defendant affirmatively avers failure to read and heed provided warnings and instructions, and product misuse, by Plaintiff or potential members of the putative class who claim to have been injured by the subject product(s).

## TWENTY-FOURTH DEFENSE

Defendant affirmatively avers that neither Plaintiff nor any potential member of the putative class can establish the essential elements of any claim presented.

## TWENTY-FIFTH DEFENSE

Defendant affirmatively contests any and all damages claimed or alleged by Plaintiff or any potential member of the putative class, and demands strict proof thereof.

## TWENTY-SIXTH DEFENSE

Defendant affirmatively asserts all statutes of limitation and/or repose which may be applicable to the claims of Plaintiff or any potential member of the putative class.

## TWENTY-SEVENTH DEFENSE

Defendant affirmatively asserts that additional affirmative defenses and bars to liability may be applicable to the claims of specific members of the putative class

by operation of choice of law and the *Erie* doctrines, and reserves the right to aver those defenses and bars to liability when and if the state in which the claims of any potential member of the putative class are alleged to have arisen is pled or identified.

## TWENTY-EIGHTH DEFENSE

Defendant affirmatively contests the personal jurisdiction of this Court to entertain or resolve the claims of any potential member of the putative class whose alleged injuries and damages are not claimed to arise from this Defendant's intentional contacts within the State of Alabama.

## TWENTY-NINTH DEFENSE

Defendant denies that its conduct or action proximately caused any of the damages or injuries claimed by Plaintiff.

## THIRTIETH DEFENSE

Defendant denies that it breached any duties owed to Plaintiff.

## THIRTY-FIRST DEFENSE

Defendant pleads lack of causal relation.

## THIRTY-SECOND DEFENSE

Defendant pleads the applicable statute of limitations.

## THIRTY-THIRD DEFENSE

Defendant contests the damages claimed by Plaintiff.

18

## THIRTY-FOURTH DEFENSE

Defendant denies that Plaintiff is entitled to recover costs, fees, or expenses.

## THIRTY-FIFTH DEFENSE

Defendant pleads the common law defenses of contributory negligence, assumption of the risk, and such other and further defenses as shall become known throughout the course of discovery in this action.

## THIRTY-SIXTH DEFENSE

Defendant pleads the equitable defenses of equitable estoppel, judicial estoppel, and such other and further equitable defenses as shall become known throughout the course of discovery in this action.

## THIRTY-SEVENTH DEFENSE

As concerns all claims for punitive damages, this Defendant avers that such claims and such requisite burden of proof violate this Defendant's rights to equal protection and due process under the Constitution of the United States and the Constitution of the State of Alabama; said claims and requisite burden of proof amount to an undue taking without due process of law and violate the Excessive Fines Clause of the Constitution of the United States and the Constitution of the State of Alabama. This Defendant affirmatively avers that the Plaintiff's claim for punitive damages is vague, arbitrary, and unclear and that the standard for determining liability for punitive damages under Alabama law does not define with

19

sufficient clarity the conduct or mental state of the Defendant which gives rise to a claim for punitive and exemplary damages.  Additionally, the Plaintiff's claim for punitive damages cannot be sustained in that there are no meaningful standards for determining the amount of any punitive damage award under Alabama law and that Alabama law fails to state with sufficient clarity the consequence to a Defendant of any conduct which may give rise to the claim for punitive damages.  Therefore, any award of punitive damages violates this Defendant's rights to due process of law under the Fifth and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

### THIRTY-EIGHTH DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages cannot be sustained in that any award of punitive damages under Alabama law without proof of every element beyond a reasonable doubt would violate this Defendant's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

### THIRTY-NINTH DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages cannot be sustained in that any award of punitive damages under Alabama law without a bifurcated trial as to all punitive damage issues would be violative of

20

this Defendant's rights to due process of law under the Fifth and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

## FORTIETH DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages cannot be sustained in that any award of punitive damages in this case cannot protect this Defendant against multiple and repeated punishment for the same alleged wrong in future cases. Accordingly, any award of punitive damages would violate this Defendant's rights to due process of law and would constitute "double jeopardy" under the Fifth and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

## FORTY-FIRST DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages would violate this Defendant's rights to due process under the Fourteenth Amendment to the Constitution of the United States of American and under the Constitution of the State of Alabama as well as to other rights and protections afforded to it by _State Farm Automobile Ins. Co. v. Campbell_, 123 S. Ct. 1513 (April 7, 2003).

21

## **FORTY-SECOND DEFENSE**

Unless this Defendant's liability for punitive damages and the appropriate amount of punitive damages are required to be established by clear and convincing evidence, any award of punitive damages would violate this Defendant's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Article I, § 13 of the Alabama Constitution, and would be improper under the common law and public policies of the State of Alabama.

## **FORTY-THIRD DEFENSE**

Plaintiff's claim for punitive damages against this Defendant cannot be maintained, because an award of punitive damages under Alabama law would be void for vagueness, both facially and as applied. Among other deficiencies, there is an absence of adequate notice of what conduct is subject to punishment; an absence of adequate notice of what punishment may be imposed; an absence of predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount, on the amount of punitive damages that a jury may impose, a risk that punitive damages will be imposed retrospectively based on conduct that was not deemed punishable at the time the conduct occurred, and it would permit and encourage arbitrary and discriminatory enforcement, all in violation of the due process clause of the Fourteenth Amendment to the United States Constitution,

22

Article I, § 13 of the Alabama Constitution, and the common law and public policies of the State of Alabama.

**FORTY-FOURTH DEFENSE**

Plaintiff's claim for punitive damages against this Defendant cannot be maintained, because any award of punitive damages under Alabama law would be by a jury that (1) is not provided standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damages award, (2) is not adequately instructed on the limits on punitive damages imposed by the applicable principles of deterrence and punishment, (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics, including the residence, wealth, and corporate status of this Defendant, (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible, and (5) is not subject to adequate trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of objective standards. Any such verdict would violate this Defendant's due process rights guaranteed by the Fourteenth Amendment to the United States

23

Constitution and by Article I, § 13 of the Alabama Constitution, and would be improper under the common law and public policies of the State of Alabama.

## FORTY-FIFTH DEFENSE

Any award of punitive damages based on anything other than this Defendant's conduct in connection with the specific coverage that is the subject of this lawsuit would violate the due process clause of the Fourteenth Amendment to the United States Constitution and Article I, § 13 of the Alabama Constitution, and would be improper under the common law and public policies of the State of Alabama because any other judgment for punitive damages in this case cannot protect this Defendant against impermissible multiple punishment for the same wrong and against punishment for extra-territorial conduct, including especially conduct that is lawful in states other than the State of Alabama. In addition, any such award would violate principles of comity under the laws of the State of Alabama.

## FORTY-SIXTH DEFENSE

To the extent that the law of Alabama permits punishment to be measured by the net worth or financial status of this Defendant and imposes greater punishment on defendants with larger net worth, such an award would be unconstitutional because it permits arbitrary, capricious and fundamentally unfair punishments, allows bias and prejudice to infect verdicts imposing punishment, allows punishment to be imposed based on lawful profits and conduct of this Defendant in other States,

24

and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution, the Commerce Clause of the United States Constitution, and Article I, § 13 of the Alabama Constitution.

## FORTY-SEVENTH DEFENSE

Defendant reserves the right to supplement this Answer as additional defenses become known throughout the course of discovery in this action.

Respectfully submitted,

/s/ Walter J. Price, III
Walter J. Price, III (asb-0127-c66w)
H. Cannon Lawley (asb-3908-l75h)
J. Bart Cannon (asb-8733-e52c)
Attorneys for Said Defendant

**OF COUNSEL**:
HUIE, FERNAMBUCQ & STEWART, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, AL 35223-2484
Phone: (205) 251-1193
Fax: (205)251-1256
wprice@huielaw.com
cannon@huielaw.com
bcannon@huielaw.com

25

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2017, I electronically filed the foregoing with the Clerk of the Court using E-File system which will send notification of such filing to the attorneys of record and mailing the document via U. S. Mail to the attorneys who are non-participants to the E-File system:

W. Lewis Garrison, Jr.
Brandy Lee Robertson
HENINGER GARRISON DAVIS,
LLC
2224 First Avenue North
Birmingham, Alabama 35203
wlgarrison@hgdlawfirm.com
brandy@hgdlawfirm.com

K. Stephen Jackson
Joseph L. "Josh" Tucker
JACKSON & TUCKER, P.C.
2229 1st Avenue North
Birmingham, Alabama 35203
steve@jacksonandtucker.com
josh@jacksonandtucker.com

Luther Strange, Attorney General
State of Alabama
11 South Union Street
Montgomery, Alabama 36130

/s/ Walter J. Price, III
OF COUNSEL

26

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| CARRIE BOWENS, on behalf of Herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 2:17-cv-00118-WKW-TFM |
| v. | ) ) | |
| COTY, INC., *et al.* | ) ) | |
| Defendants. | ) | |

## ANSWER

Comes now Defendant, The Proctor & Gamble Distributing, L.L.C., and for Answer to the Complaint (doc. 1), states and shows as follows:

## INTRODUCTION

1.  To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

2.  Admitted.

## PARTIES

3.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demand strict proof thereof.

1

4.     This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

5.     This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

6.     This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

7.     Admitted.

8.     This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

## JURISDICTION AND VENUE

9.     Denied.

10.    Denied.

2

11. Denied.

## GENERAL FACTUAL ALLEGATIONS
## COMMON TO ALL CLASS MEMBERS

12.-82. Defendant generally denies the averments in paragraphs 12 through 82 of Plaintiff's complaint and demands strict proof thereof. The general averments in these paragraphs include representations as to the content and findings of documents not attached to the complaint, legal conclusions, and adversarial interpretation and characterization of statutes and regulations. As a practical matter, researching the content, representations and allegations in order to independently respond to each and every averment contained in these paragraphs would be excessively burdensome and expensive, and tantamount to responding to discovery without application of the proportionality balancing analysis required by Fed.R.Civ.P. 26(b)(1). Other of these paragraphs generally and collectively allege the mental operations, actions, knowledge, reliance and damages of unnamed individual members of the purported class; which is defined as "All persons in the United States or its territories who…purchased Clairol Balsam Color…that contained p-Phenylenediamine" (Doc. 1 at ¶ 86). Defendant therefore avers that the admission of such individualized facts as to unnamed purported class-member is not only impossible at the pleading stage, but equates to premature merits discovery. See Fed.R.Civ.P. 23(d). Defendant further avers that pursuant to the best evidence rule, documents, articles, reports, and other writings are not an appropriate subject matter

3

upon which to seek an admission from a defendant at the pleading stage. See Fed.R.Evid. 1002.

## PLAINTIFF'S FACTUAL ALLEGATIONS

83.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

84.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

85.    Defendant denies that it made false, misleading or deceptive representations, that any product of this Defendant was defective or unreasonably dangerous, and that any warnings or instructions provided with any Product were inadequate. Defendant further denies that any act or omission of this Defendant was the proximate cause of any injuries averred by Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's alleged injuries. Therefore, Defendant denies all such allegations and demands strict proof thereof.

## CLASS ACTION ALLEGATIONS

86.    Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

4

87. Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

88. Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

89. Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

90. Denied.

91. Denied.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

## CAUSES OF ACTION
## COUNT I
## UNJUST ENRICHMENT
### (On behalf of the Nationwide Class and State Subclass)

97. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

98. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

99. Denied.

5

239

100.  Denied.

101.  Denied.

102.  Denied.

103.  Denied.

104.  Denied.

105.  Denied.

106.  Denied.

## COUNT II
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (On behalf of the Nationwide Class)

107.  Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

108.  To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

109.  Upon information and belief, Defendant believes that it supplied or distributed the Product.

110.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

111.  Admitted.

112.  Admitted.

6

113. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

114. Upon information and belief, Defendant believes that it supplied or distributed the Product but states that it lacks sufficient information to admit or deny that it supplied the Product to Plaintiff or the alleged Putative class members and therefore those allegations are denied and Defendant demands strict proof thereof.

115. Denied.

116. Denied.

117. Denied.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. Denied.

123. Denied.

### COUNT III
### BREACH OF EXPRESS WARRANTY
**(On behalf of the Nationwide Class)**

124. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

7

125.   To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

126.   Denied.

127.   Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

128.   Denied.

129.   Denied.

130.   Denied.

131.   Denied.

132.   Denied.

133.   Denied.

134.   Denied.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY**
**(On behalf of the Nationwide Class)**

135.   Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

136.   To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

137.   Admitted.

8

138.  Denied.

139.  Denied.

140.  Denied.

141.  Denied.

142.  Denied.

143.  Denied.

144.  Denied.

145.  Denied.

**COUNT V**
**Violation of the Alabama Deceptive Trade Practices Act**
**(CODE OF ALABAMA §§ 8-19-1, *et seq*.)**
**(On behalf of the Nationwide Class)**

146.  Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

147.  To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

148.  Denied.

149.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

150.  Denied.

9

151. Denied.

152. Denied.

153. Denied.

154. Denied.

155. Denied.

## COUNT VI
### Fraud
### (On behalf of the Nationwide Class)

156. Defendant adopts and incorporates their answers to the preceding paragraphs as if set forth fully herein.

157. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

158. Denied.

159. Denied.

160. Denied.

161. Denied.

162. Denied.

163. Denied.

164. Denied.

165. Denied.

166. Denied.

167. Denied.

## COUNT VI
## NEGLIGENT DESIGN AND FAILURE TO WARN
### (On behalf of the Nationwide Class)

168. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

169. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

170. Denied.

171. Denied.

172. Denied.

173. Denied.

174. Denied.

175. Denied.

176. Denied.

177. Denied.

178. Denied.

179. Denied.

180. Denied.

## PRESERVATION OF CLAIMS

181.  Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

182.  Denied.

183.  Denied.

184.  Denied.

185.  Denied.

186.  Denied.

187.  Denied.

188.  Denied.

## PRAYER FOR RELIEF

Regarding Plaintiff's prayer for relief, Defendant denies that Plaintiff is entitled to any relief as against it or from this Court.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted against this Defendant.

### SECOND DEFENSE

Defendant pleads failure to provide notice.

### THIRD DEFENSE

Defendant denies that Plaintiff is entitled to an Order certifying the class under Federal Rule of Civil Procedure 23, or that the legal claims of Plaintiff are subject to class treatment.

### FOURTH DEFENSE

Defendant affirmatively avers that the State law claims are preempted by Federal law.

### FIFTH DEFENSE

Plaintiff lacks standing.

### SIXTH DEFENSE

Defendant pleads lack of subject matter jurisdiction.

### SEVENTH DEFENSE

Defendant pleads lack of personal jurisdiction.

13

## EIGHTH DEFENSE

Defendant affirmatively avers that Plaintiff is not a proper class representative under Federal Rule of Civil Procedure 23.

## NINTH DEFENSE

Defendant affirmatively avers that there are not common questions of law or fact between Plaintiff and the purported class as defined in the Complaint.

## TENTH DEFENSE

Defendant affirmatively avers that the claims of the Plaintiff are not typical of the claims of the purported class as defined in the Complaint.

## ELEVENTH DEFENSE

Defendant affirmatively avers that a class action is not superior to other available methods for fairly and efficiently adjudicating the controversy.

## TWELFTH DEFENSE

Defendant denies that Plaintiff is entitled to any relief against it or from this Court.

## THIRTEENTH DEFENSE

Defendant affirmatively avers that the individuals potentially within the scope of the putative class, as defined in Plaintiff's complaint, are not presently ascertainable or identifiable.

## FOURTEENTH DEFENSE

Defendant affirmatively avers that the scope of the putative class, as defined in Plaintiff's complaint, includes individuals without Article III standing.

## FIFTEENTH DEFENSE

Defendant affirmatively avers that the scope of the putative class, as defined in Plaintiff's complaint, includes individuals who have incurred no legally compensable injury in fact.

## SIXTEENTH DEFENSE

Defendant affirmatively avers that individualized determinations of liability, causation and damages must be made as to each individual member of the putative class.

## SEVENTEENTH DEFENSE

Defendant affirmatively avers that this action is not maintainable as a class under Fed.R.Civ.P. 23(b)(3).

## EIGHTEENTH DEFENSE

Defendant affirmatively asserts its rights under the Seventh Amendment, the Confrontation Clauses of the United States and Alabama Constitutions, and its Due Process rights, and avers that the award of damages in favor of any member of the

15

putative class without Defendant being afforded the opportunity to cross-examination that individual during a trial by jury would be violative of these rights.

## NINETEENTH DEFENSE

Defendant affirmatively avers that claims alleged are statutorily preempted and or precluded by the laws of the various states and territories of the United States.

## TWENTIETH DEFENSE

Defendant affirmatively avers that a prior filed class action complaint making allegations and defining a class identical to that in this complaint is currently pending in the United States District Court for the Southern District of Alabama, Jones v. Coty, Inc., *et al.*, 1:16-cv-00622-WS-B.

## TWENTY-FIRST DEFENSE

Defendant affirmatively avers that the United States District Court for the Southern District of Alabama has previously exercised subject matter jurisdiction over the class claims and allegations asserted in Plaintiff's complaint. Jones v. Coty, Inc., *et al.*, 1:16-cv-00622-WS-B.

## TWENTY-SECOND DEFENSE

Defendant affirmatively avers lack of privity with Plaintiff or the potential members of the putative class.

16

## TWENTY-THIRD DEFENSE

Defendant affirmatively avers failure to read and heed provided warnings and instructions, and product misuse, by Plaintiff or potential members of the putative class who claim to have been injured by the subject product(s).

## TWENTY-FOURTH DEFENSE

Defendant affirmatively avers that neither Plaintiff nor any potential member of the putative class can establish the essential elements of any claim presented.

## TWENTY-FIFTH DEFENSE

Defendant affirmatively contests any and all damages claimed or alleged by Plaintiff or any potential member of the putative class, and demands strict proof thereof.

## TWENTY-SIXTH DEFENSE

Defendant affirmatively asserts all statutes of limitation and/or repose which may be applicable to the claims of Plaintiff or any potential member of the putative class.

## TWENTY-SEVENTH DEFENSE

Defendant affirmatively asserts that additional affirmative defenses and bars to liability may be applicable to the claims of specific members of the putative class

by operation of choice of law and the *Erie* doctrines, and reserves the right to aver those defenses and bars to liability when and if the state in which the claims of any potential member of the putative class are alleged to have arisen is pled or identified.

## TWENTY-EIGHTH DEFENSE

Defendant affirmatively contests the personal jurisdiction of this Court to entertain or resolve the claims of any potential member of the putative class whose alleged injuries and damages are not claimed to arise from this Defendant's intentional contacts within the State of Alabama.

## TWENTY-NINTH DEFENSE

Defendant denies that its conduct or action proximately caused any of the damages or injuries claimed by Plaintiff.

## THIRTIETH DEFENSE

Defendant denies that it breached any duties owed to Plaintiff.

## THIRTY-FIRST DEFENSE

Defendant pleads lack of causal relation.

## THIRTY-SECOND DEFENSE

Defendant pleads the applicable statute of limitations.

## THIRTY-THIRD DEFENSE

Defendant contests the damages claimed by Plaintiff.

18

## THIRTY-FOURTH DEFENSE

Defendant denies that Plaintiff is entitled to recover costs, fees, or expenses.

## THIRTY-FIFTH DEFENSE

Defendant pleads the common law defenses of contributory negligence, assumption of the risk, and such other and further defenses as shall become known throughout the course of discovery in this action.

## THIRTY-SIXTH DEFENSE

Defendant pleads the equitable defenses of equitable estoppel, judicial estoppel, and such other and further equitable defenses as shall become known throughout the course of discovery in this action.

## THIRTY-SEVENTH DEFENSE

As concerns all claims for punitive damages, this Defendant avers that such claims and such requisite burden of proof violate this Defendant's rights to equal protection and due process under the Constitution of the United States and the Constitution of the State of Alabama; said claims and requisite burden of proof amount to an undue taking without due process of law and violate the Excessive Fines Clause of the Constitution of the United States and the Constitution of the State of Alabama. This Defendant affirmatively avers that the Plaintiff's claim for punitive damages is vague, arbitrary, and unclear and that the standard for determining liability for punitive damages under Alabama law does not define with

19

sufficient clarity the conduct or mental state of the Defendant which gives rise to a claim for punitive and exemplary damages. Additionally, the Plaintiff's claim for punitive damages cannot be sustained in that there are no meaningful standards for determining the amount of any punitive damage award under Alabama law and that Alabama law fails to state with sufficient clarity the consequence to a Defendant of any conduct which may give rise to the claim for punitive damages. Therefore, any award of punitive damages violates this Defendant's rights to due process of law under the Fifth and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

### THIRTY-EIGHTH DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages cannot be sustained in that any award of punitive damages under Alabama law without proof of every element beyond a reasonable doubt would violate this Defendant's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

### THIRTY-NINTH DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages cannot be sustained in that any award of punitive damages under Alabama law without a bifurcated trial as to all punitive damage issues would be violative of

20

this Defendant's rights to due process of law under the Fifth and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

### FORTIETH DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages cannot be sustained in that any award of punitive damages in this case cannot protect this Defendant against multiple and repeated punishment for the same alleged wrong in future cases. Accordingly, any award of punitive damages would violate this Defendant's rights to due process of law and would constitute "double jeopardy" under the Fifth and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

### FORTY-FIRST DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages would violate this Defendant's rights to due process under the Fourteenth Amendment to the Constitution of the United States of American and under the Constitution of the State of Alabama as well as to other rights and protections afforded to it by *State Farm Automobile Ins. Co. v. Campbell*, 123 S. Ct. 1513 (April 7, 2003).

## FORTY-SECOND DEFENSE

Unless this Defendant's liability for punitive damages and the appropriate amount of punitive damages are required to be established by clear and convincing evidence, any award of punitive damages would violate this Defendant's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Article I, § 13 of the Alabama Constitution, and would be improper under the common law and public policies of the State of Alabama.

## FORTY-THIRD DEFENSE

Plaintiff's claim for punitive damages against this Defendant cannot be maintained, because an award of punitive damages under Alabama law would be void for vagueness, both facially and as applied. Among other deficiencies, there is an absence of adequate notice of what conduct is subject to punishment; an absence of adequate notice of what punishment may be imposed; an absence of predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount, on the amount of punitive damages that a jury may impose, a risk that punitive damages will be imposed retrospectively based on conduct that was not deemed punishable at the time the conduct occurred, and it would permit and encourage arbitrary and discriminatory enforcement, all in violation of the due process clause of the Fourteenth Amendment to the United States Constitution,

22

Article I, § 13 of the Alabama Constitution, and the common law and public policies of the State of Alabama.

**FORTY-FOURTH DEFENSE**

Plaintiff's claim for punitive damages against this Defendant cannot be maintained, because any award of punitive damages under Alabama law would be by a jury that (1) is not provided standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damages award, (2) is not adequately instructed on the limits on punitive damages imposed by the applicable principles of deterrence and punishment, (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics, including the residence, wealth, and corporate status of this Defendant, (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible, and (5) is not subject to adequate trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of objective standards. Any such verdict would violate this Defendant's due process rights guaranteed by the Fourteenth Amendment to the United States

23

Constitution and by Article I, § 13 of the Alabama Constitution, and would be improper under the common law and public policies of the State of Alabama.

## FORTY-FIFTH DEFENSE

Any award of punitive damages based on anything other than this Defendant's conduct in connection with the specific coverage that is the subject of this lawsuit would violate the due process clause of the Fourteenth Amendment to the United States Constitution and Article I, § 13 of the Alabama Constitution, and would be improper under the common law and public policies of the State of Alabama because any other judgment for punitive damages in this case cannot protect this Defendant against impermissible multiple punishment for the same wrong and against punishment for extra-territorial conduct, including especially conduct that is lawful in states other than the State of Alabama. In addition, any such award would violate principles of comity under the laws of the State of Alabama.

## FORTY-SIXTH DEFENSE

To the extent that the law of Alabama permits punishment to be measured by the net worth or financial status of this Defendant and imposes greater punishment on defendants with larger net worth, such an award would be unconstitutional because it permits arbitrary, capricious and fundamentally unfair punishments, allows bias and prejudice to infect verdicts imposing punishment, allows punishment to be imposed based on lawful profits and conduct of this Defendant in other States,

24

and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution, the Commerce Clause of the United States Constitution, and Article I, § 13 of the Alabama Constitution.

### FORTY-SEVENTH DEFENSE

Defendant reserves the right to supplement this Answer as additional defenses become known throughout the course of discovery in this action.

Respectfully submitted,

/s/ Walter J. Price, III
Walter J. Price, III (asb-0127-c66w)
H. Cannon Lawley (asb-3908-l75h)
J. Bart Cannon (asb-8733-e52c)
Attorneys for Said Defendant

**OF COUNSEL**:
HUIE, FERNAMBUCQ & STEWART, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, AL 35223-2484
Phone: (205) 251-1193
Fax: (205)251-1256
wprice@huielaw.com
cannon@huielaw.com
bcannon@huielaw.com

25

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2017, I electronically filed the foregoing with the Clerk of the Court using E-File system which will send notification of such filing to the attorneys of record and mailing the document via U. S. Mail to the attorneys who are non-participants to the E-File system:

W. Lewis Garrison, Jr.
Brandy Lee Robertson
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, Alabama 35203
wlgarrison@hgdlawfirm.com
brandy@hgdlawfirm.com

K. Stephen Jackson
Joseph L. "Josh" Tucker
JACKSON & TUCKER, P.C.
2229 1st Avenue North
Birmingham, Alabama 35203
steve@jacksonandtucker.com
josh@jacksonandtucker.com

Luther Strange, Attorney General
State of Alabama
11 South Union Street
Montgomery, Alabama 36130


/s/ Walter J. Price, III
OF COUNSEL

26

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| CARRIE BOWENS, on behalf of Herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 2:17-cv-00118-WKW-TFM |
| v. | ) ) | |
| COTY, INC., *et al.* | ) ) | |
| Defendants. | ) | |

## ANSWER

Comes now Defendant, Procter & Gamble Hair Care, L.L.C., and for Answer to the Complaint (doc. 1), states and shows as follows:

## INTRODUCTION

1. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

2. Admitted.

## PARTIES

3. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demand strict proof thereof.

1

4.      This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

5.      This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

6.      This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

7.      This Paragraph is not directed to this Defendant and therefore does not require a response from this Defendant. To the extent that this Paragraph requires a response from Defendant, the same is denied and Defendant demands strict proof thereof.

8.      Admitted.

**JURISDICTION AND VENUE**

9.      Denied.

10.     Denied.

11.    Denied.

## GENERAL FACTUAL ALLEGATIONS
## COMMON TO ALL CLASS MEMBERS

12.-82.    Defendant generally denies the averments in paragraphs 12 through 82 of Plaintiff's complaint and demands strict proof thereof. The general averments in these paragraphs include representations as to the content and findings of documents not attached to the complaint, legal conclusions, and adversarial interpretation and characterization of statutes and regulations. As a practical matter, researching the content, representations and allegations in order to independently respond to each and every averment contained in these paragraphs would be excessively burdensome and expensive, and tantamount to responding to discovery without application of the proportionality balancing analysis required by Fed.R.Civ.P. 26(b)(1). Other of these paragraphs generally and collectively allege the mental operations, actions, knowledge, reliance and damages of unnamed individual members of the purported class; which is defined as "All persons in the United States or its territories who…purchased Clairol Balsam Color…that contained p-Phenylenediamine" (Doc. 1 at ¶ 86). Defendant therefore avers that the admission of such individualized facts as to unnamed purported class-member is not only impossible at the pleading stage, but equates to premature merits discovery. See Fed.R.Civ.P. 23(d). Defendant further avers that pursuant to the best evidence rule, documents, articles, reports, and other writings are not an appropriate subject matter

3

upon which to seek an admission from a defendant at the pleading stage. See Fed.R.Evid. 1002.

**PLAINTIFF'S FACTUAL ALLEGATIONS**

83. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

84. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

85. Defendant denies that it made false, misleading or deceptive representations, that any product of this Defendant was defective or unreasonably dangerous, and that any warnings or instructions provided with any Product were inadequate. Defendant further denies that any act or omission of this Defendant was the proximate cause of any injuries averred by Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's alleged injuries. Therefore, Defendant denies all such allegations and demands strict proof thereof.

**CLASS ACTION ALLEGATIONS**

86. Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

4

87. Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

88. Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

89. Defendant denies that the purported class as defined by Plaintiff in this Paragraph is a proper class under Federal Rule of Civil Procedure 23.

90. Denied.

91. Denied.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

## CAUSES OF ACTION
## COUNT I
## UNJUST ENRICHMENT
### (On behalf of the Nationwide Class and State Subclass)

97. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

98. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

99. Denied.

5

100. Denied.

101. Denied.

102. Denied.

103. Denied.

104. Denied.

105. Denied.

106. Denied.

## COUNT II
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (On behalf of the Nationwide Class)

107. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

108. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

109. Denied.

110. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

111. Admitted.

112. Admitted.

6

113.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

114.  Denied.

115.  Denied.

116.  Denied.

117.  Denied.

118.  Denied.

119.  Denied.

120.  Denied.

121.  Denied.

122.  Denied.

123.  Denied.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**
**(On behalf of the Nationwide Class)**

124.  Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

125.  To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

126.  Denied.

7

127. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

128. Denied.

129. Denied.

130. Denied.

131. Denied.

132. Denied.

133. Denied.

134. Denied.

## COUNT IV
## BREACH OF IMPLIED WARRANTY
### (On behalf of the Nationwide Class)

135. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

136. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

137. Admitted.

138. Denied.

139. Denied.

140. Denied.

141. Denied.

142. Denied.

143. Denied.

144. Denied.

145. Denied.

## COUNT V
### Violation of the Alabama Deceptive Trade Practices Act
### (CODE OF ALABAMA §§ 8-19-1, *et seq*.)
### (On behalf of the Nationwide Class)

146. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

147. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

148. Denied.

149. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Therefore, Defendant denies all such allegations and demands strict proof thereof.

150. Denied.

151. Denied.

152. Denied.

153. Denied.

9

154.  Denied.

155.  Denied.

## COUNT VI
### Fraud
### (On behalf of the Nationwide Class)

156.  Defendant adopts and incorporates their answers to the preceding paragraphs as if set forth fully herein.

157.  To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

158.  Denied.

159.  Denied.

160.  Denied.

161.  Denied.

162.  Denied.

163.  Denied.

164.  Denied.

165.  Denied.

166.  Denied.

167.  Denied.

**COUNT VI**
**NEGLIGENT DESIGN AND FAILURE TO WARN**
**(On behalf of the Nationwide Class)**

168. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

169. To the extent that the allegations of this Paragraph require a response from Defendant, the same are denied and Defendant demands strict proof thereof.

170. Denied.

171. Denied.

172. Denied.

173. Denied.

174. Denied.

175. Denied.

176. Denied.

177. Denied.

178. Denied.

179. Denied.

180. Denied.

**<u>PRESERVATION OF CLAIMS</u>**

181. Defendant adopts and incorporates its answers to the preceding paragraphs as if set forth fully herein.

11

182.   Denied.

183.   Denied.

184.   Denied.

185.   Denied.

186.   Denied.

187.   Denied.

188.   Denied.

## **PRAYER FOR RELIEF**

Regarding Plaintiff's prayer for relief, Defendant denies that Plaintiff is entitled to any relief as against it or from this Court.

12

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted against this Defendant.

### SECOND DEFENSE

Defendant pleads failure to provide notice.

### THIRD DEFENSE

Defendant denies that Plaintiff is entitled to an Order certifying the class under Federal Rule of Civil Procedure 23, or that the legal claims of Plaintiff are subject to class treatment.

### FOURTH DEFENSE

Defendant affirmatively avers that the State law claims are preempted by Federal law.

### FIFTH DEFENSE

Plaintiff lacks standing.

### SIXTH DEFENSE

Defendant pleads lack of subject matter jurisdiction.

### SEVENTH DEFENSE

Defendant pleads lack of personal jurisdiction.

13

## EIGHTH DEFENSE

Defendant affirmatively avers that Plaintiff is not a proper class representative under Federal Rule of Civil Procedure 23.

## NINTH DEFENSE

Defendant affirmatively avers that there are not common questions of law or fact between Plaintiff and the purported class as defined in the Complaint.

## TENTH DEFENSE

Defendant affirmatively avers that the claims of the Plaintiff are not typical of the claims of the purported class as defined in the Complaint.

## ELEVENTH DEFENSE

Defendant affirmatively avers that a class action is not superior to other available methods for fairly and efficiently adjudicating the controversy.

## TWELFTH DEFENSE

Defendant denies that Plaintiff is entitled to any relief against it or from this Court.

## THIRTEENTH DEFENSE

Defendant affirmatively avers that the individuals potentially within the scope of the putative class, as defined in Plaintiff's complaint, are not presently ascertainable or identifiable.

14

## FOURTEENTH DEFENSE

Defendant affirmatively avers that the scope of the putative class, as defined in Plaintiff's complaint, includes individuals without Article III standing.

## FIFTEENTH DEFENSE

Defendant affirmatively avers that the scope of the putative class, as defined in Plaintiff's complaint, includes individuals who have incurred no legally compensable injury in fact.

## SIXTEENTH DEFENSE

Defendant affirmatively avers that individualized determinations of liability, causation and damages must be made as to each individual member of the putative class.

## SEVENTEENTH DEFENSE

Defendant affirmatively avers that this action is not maintainable as a class under Fed.R.Civ.P. 23(b)(3).

## EIGHTEENTH DEFENSE

Defendant affirmatively asserts its rights under the Seventh Amendment, the Confrontation Clauses of the United States and Alabama Constitutions, and its Due Process rights, and avers that the award of damages in favor of any member of the

15

putative class without Defendant being afforded the opportunity to cross-examination that individual during a trial by jury would be violative of these rights.

### NINETEENTH DEFENSE

Defendant affirmatively avers that claims alleged are statutorily preempted and or precluded by the laws of the various states and territories of the United States.

### TWENTIETH DEFENSE

Defendant affirmatively avers that a prior filed class action complaint making allegations and defining a class identical to that in this complaint is currently pending in the United States District Court for the Southern District of Alabama, Jones v. Coty, Inc., *et al.*, 1:16-cv-00622-WS-B.

### TWENTY-FIRST DEFENSE

Defendant affirmatively avers that the United States District Court for the Southern District of Alabama has previously exercised subject matter jurisdiction over the class claims and allegations asserted in Plaintiff's complaint. Jones v. Coty, Inc., *et al.*, 1:16-cv-00622-WS-B.

### TWENTY-SECOND DEFENSE

Defendant affirmatively avers lack of privity with Plaintiff or the potential members of the putative class.

16

## TWENTY-THIRD DEFENSE

Defendant affirmatively avers failure to read and heed provided warnings and instructions, and product misuse, by Plaintiff or potential members of the putative class who claim to have been injured by the subject product(s).

## TWENTY-FOURTH DEFENSE

Defendant affirmatively avers that neither Plaintiff nor any potential member of the putative class can establish the essential elements of any claim presented.

## TWENTY-FIFTH DEFENSE

Defendant affirmatively contests any and all damages claimed or alleged by Plaintiff or any potential member of the putative class, and demands strict proof thereof.

## TWENTY-SIXTH DEFENSE

Defendant affirmatively asserts all statutes of limitation and/or repose which may be applicable to the claims of Plaintiff or any potential member of the putative class.

## TWENTY-SEVENTH DEFENSE

Defendant affirmatively asserts that additional affirmative defenses and bars to liability may be applicable to the claims of specific members of the putative class

17

by operation of choice of law and the *Erie* doctrines, and reserves the right to aver those defenses and bars to liability when and if the state in which the claims of any potential member of the putative class are alleged to have arisen is pled or identified.

## TWENTY-EIGHTH DEFENSE

Defendant affirmatively contests the personal jurisdiction of this Court to entertain or resolve the claims of any potential member of the putative class whose alleged injuries and damages are not claimed to arise from this Defendant's intentional contacts within the State of Alabama.

## TWENTY-NINTH DEFENSE

Defendant denies that its conduct or action proximately caused any of the damages or injuries claimed by Plaintiff.

## THIRTIETH DEFENSE

Defendant denies that it breached any duties owed to Plaintiff.

## THIRTY-FIRST DEFENSE

Defendant pleads lack of causal relation.

## THIRTY-SECOND DEFENSE

Defendant pleads the applicable statute of limitations.

## THIRTY-THIRD DEFENSE

Defendant contests the damages claimed by Plaintiff.

18

## THIRTY-FOURTH DEFENSE

Defendant denies that Plaintiff is entitled to recover costs, fees, or expenses.

## THIRTY-FIFTH DEFENSE

Defendant pleads the common law defenses of contributory negligence, assumption of the risk, and such other and further defenses as shall become known throughout the course of discovery in this action.

## THIRTY-SIXTH DEFENSE

Defendant pleads the equitable defenses of equitable estoppel, judicial estoppel, and such other and further equitable defenses as shall become known throughout the course of discovery in this action.

## THIRTY-SEVENTH DEFENSE

As concerns all claims for punitive damages, this Defendant avers that such claims and such requisite burden of proof violate this Defendant's rights to equal protection and due process under the Constitution of the United States and the Constitution of the State of Alabama; said claims and requisite burden of proof amount to an undue taking without due process of law and violate the Excessive Fines Clause of the Constitution of the United States and the Constitution of the State of Alabama. This Defendant affirmatively avers that the Plaintiff's claim for punitive damages is vague, arbitrary, and unclear and that the standard for determining liability for punitive damages under Alabama law does not define with

sufficient clarity the conduct or mental state of the Defendant which gives rise to a claim for punitive and exemplary damages. Additionally, the Plaintiff's claim for punitive damages cannot be sustained in that there are no meaningful standards for determining the amount of any punitive damage award under Alabama law and that Alabama law fails to state with sufficient clarity the consequence to a Defendant of any conduct which may give rise to the claim for punitive damages. Therefore, any award of punitive damages violates this Defendant's rights to due process of law under the Fifth and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

## THIRTY-EIGHTH DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages cannot be sustained in that any award of punitive damages under Alabama law without proof of every element beyond a reasonable doubt would violate this Defendant's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

## THIRTY-NINTH DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages cannot be sustained in that any award of punitive damages under Alabama law without a bifurcated trial as to all punitive damage issues would be violative of

20

this Defendant's rights to due process of law under the Fifth and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

## FORTIETH DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages cannot be sustained in that any award of punitive damages in this case cannot protect this Defendant against multiple and repeated punishment for the same alleged wrong in future cases. Accordingly, any award of punitive damages would violate this Defendant's rights to due process of law and would constitute "double jeopardy" under the Fifth and Fourteenth Amendments to the Constitution of the United States of America and under the Constitution of the State of Alabama.

## FORTY-FIRST DEFENSE

This Defendant affirmatively avers that the Plaintiff's claim for punitive damages would violate this Defendant's rights to due process under the Fourteenth Amendment to the Constitution of the United States of American and under the Constitution of the State of Alabama as well as to other rights and protections afforded to it by _State Farm Automobile Ins. Co. v. Campbell_, 123 S. Ct. 1513 (April 7, 2003).

21

## FORTY-SECOND DEFENSE

Unless this Defendant's liability for punitive damages and the appropriate amount of punitive damages are required to be established by clear and convincing evidence, any award of punitive damages would violate this Defendant's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Article I, § 13 of the Alabama Constitution, and would be improper under the common law and public policies of the State of Alabama.

## FORTY-THIRD DEFENSE

Plaintiff's claim for punitive damages against this Defendant cannot be maintained, because an award of punitive damages under Alabama law would be void for vagueness, both facially and as applied. Among other deficiencies, there is an absence of adequate notice of what conduct is subject to punishment; an absence of adequate notice of what punishment may be imposed; an absence of predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount, on the amount of punitive damages that a jury may impose, a risk that punitive damages will be imposed retrospectively based on conduct that was not deemed punishable at the time the conduct occurred, and it would permit and encourage arbitrary and discriminatory enforcement, all in violation of the due process clause of the Fourteenth Amendment to the United States Constitution,

22

Article I, § 13 of the Alabama Constitution, and the common law and public policies of the State of Alabama.

## FORTY-FOURTH DEFENSE

Plaintiff's claim for punitive damages against this Defendant cannot be maintained, because any award of punitive damages under Alabama law would be by a jury that (1) is not provided standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damages award, (2) is not adequately instructed on the limits on punitive damages imposed by the applicable principles of deterrence and punishment, (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics, including the residence, wealth, and corporate status of this Defendant, (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible, and (5) is not subject to adequate trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of objective standards. Any such verdict would violate this Defendant's due process rights guaranteed by the Fourteenth Amendment to the United States

23

Constitution and by Article I, § 13 of the Alabama Constitution, and would be improper under the common law and public policies of the State of Alabama.

### FORTY-FIFTH DEFENSE

Any award of punitive damages based on anything other than this Defendant's conduct in connection with the specific coverage that is the subject of this lawsuit would violate the due process clause of the Fourteenth Amendment to the United States Constitution and Article I, § 13 of the Alabama Constitution, and would be improper under the common law and public policies of the State of Alabama because any other judgment for punitive damages in this case cannot protect this Defendant against impermissible multiple punishment for the same wrong and against punishment for extra-territorial conduct, including especially conduct that is lawful in states other than the State of Alabama. In addition, any such award would violate principles of comity under the laws of the State of Alabama.

### FORTY-SIXTH DEFENSE

To the extent that the law of Alabama permits punishment to be measured by the net worth or financial status of this Defendant and imposes greater punishment on defendants with larger net worth, such an award would be unconstitutional because it permits arbitrary, capricious and fundamentally unfair punishments, allows bias and prejudice to infect verdicts imposing punishment, allows punishment to be imposed based on lawful profits and conduct of this Defendant in other States,

24

and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution, the Commerce Clause of the United States Constitution, and Article I, § 13 of the Alabama Constitution.

## FORTY-SEVENTH DEFENSE

Defendant reserves the right to supplement this Answer as additional defenses become known throughout the course of discovery in this action.

Respectfully submitted,

/s/ Walter J. Price, III
Walter J. Price, III (asb-0127-c66w)
H. Cannon Lawley (asb-3908-l75h)
J. Bart Cannon (asb-8733-e52c)
Attorneys for Said Defendant

**OF COUNSEL**:
HUIE, FERNAMBUCQ & STEWART, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, AL 35223-2484
Phone: (205) 251-1193
Fax: (205)251-1256
wprice@huielaw.com
cannon@huielaw.com
bcannon@huielaw.com

25

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2017, I electronically filed the foregoing with the Clerk of the Court using E-File system which will send notification of such filing to the attorneys of record and mailing the document via U. S. Mail to the attorneys who are non-participants to the E-File system:

W. Lewis Garrison, Jr.
Brandy Lee Robertson
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, Alabama  35203
wlgarrison@hgdlawfirm.com
brandy@hgdlawfirm.com

K. Stephen Jackson
Joseph L. "Josh" Tucker
JACKSON & TUCKER, P.C.
2229 1st Avenue North
Birmingham, Alabama  35203
steve@jacksonandtucker.com
josh@jacksonandtucker.com

Luther Strange, Attorney General
State of Alabama
11 South Union Street
Montgomery, Alabama 36130


/s/ Walter J. Price, III
OF COUNSEL

26

```
MIME-Version:1.0
From:efile_notice@almd.uscourts.gov
To:almd_mailout@almd.uscourts.gov
Bcc:
--Case Participants: Kenneth Stephen Jackson (sheree@jacksonandtucker.com,
steve@jacksonandtucker.com), Walter Jasper Price, III (sgraham@huielaw.com,
vpruett@huielaw.com, wprice@huielaw.com), William Lewis Garrison, Jr
(lewis@hgdlawfirm.com), Hugh Cannon Lawley (cannon@huielaw.com, sgraham@huielaw.com),
Jeffrey Bartow Cannon, Jr (bcannon@huielaw.com, vpruett@huielaw.com), Brandy Lee Robertson
(brandy@hgdlawfirm.com), Joseph Luther Tucker (josh@jacksonandtucker.com,
sheree@jacksonandtucker.com), Chief Judge William Keith Watkins
(efile_watkins@almd.uscourts.gov), Honorable Judge Terry F. Moorer
(efile_moorer@almd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:2576018@almd.uscourts.gov
Subject:Activity in Case 2:17-cv-00118-WKW-TFM Bowens v. Coty, Inc. et al Add and
Terminate Attorneys
Content-Type: text/html
```

## U.S. District Court

### Alabama Middle District

## Notice of Electronic Filing

The following transaction was entered on 4/4/2017 at 9:15 AM CDT and filed on 4/4/2017

| | |
|---|---|
| **Case Name:** | Bowens v. Coty, Inc. et al |
| **Case Number:** | 2:17-cv-00118-WKW-TFM |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**\*\*\*Attorney Hugh Cannon Lawley,Jeffrey Bartow Cannon, Jr for Coty, Inc. added pursuant to the [11] answer. (kh, )**

**2:17-cv-00118-WKW-TFM Notice has been electronically mailed to:**

Brandy Lee Robertson &nbsp &nbsp brandy@hgdlawfirm.com

Hugh Cannon Lawley &nbsp &nbsp cannon@huielaw.com, sgraham@huielaw.com

Jeffrey Bartow Cannon , Jr &nbsp &nbsp bcannon@huielaw.com, vpruett@huielaw.com

Joseph Luther Tucker &nbsp &nbsp josh@jacksonandtucker.com, sheree@jacksonandtucker.com

Kenneth Stephen Jackson &nbsp &nbsp steve@jacksonandtucker.com, sheree@jacksonandtucker.com

Walter Jasper Price , III &nbsp &nbsp wprice@huielaw.com, sgraham@huielaw.com, vpruett@huielaw.com

William Lewis Garrison , Jr &nbsp &nbsp lewis@hgdlawfirm.com

Case 2:17-cv-118    NEF for Docket Entry    Filed 04/04/2017    Page 2 of 2

**2:17–cv–00118–WKW–TFM Notice has been delivered by other means to:**

```
MIME-Version:1.0
From:efile_notice@almd.uscourts.gov
To:almd_mailout@almd.uscourts.gov
Bcc:
--Case Participants: Kenneth Stephen Jackson (sheree@jacksonandtucker.com,
steve@jacksonandtucker.com), Walter Jasper Price, III (sgraham@huielaw.com,
vpruett@huielaw.com, wprice@huielaw.com), William Lewis Garrison, Jr
(lewis@hgdlawfirm.com), Hugh Cannon Lawley (cannon@huielaw.com, sgraham@huielaw.com),
Jeffrey Bartow Cannon, Jr (bcannon@huielaw.com, vpruett@huielaw.com), Brandy Lee Robertson
(brandy@hgdlawfirm.com), Joseph Luther Tucker (josh@jacksonandtucker.com,
sheree@jacksonandtucker.com), Chief Judge William Keith Watkins
(efile_watkins@almd.uscourts.gov), Honorable Judge Terry F. Moorer
(efile_moorer@almd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:2576025@almd.uscourts.gov
Subject:Activity in Case 2:17-cv-00118-WKW-TFM Bowens v. Coty, Inc. et al Add and
Terminate Attorneys
Content-Type: text/html
```

## U.S. District Court

## Alabama Middle District

## Notice of Electronic Filing

The following transaction was entered on 4/4/2017 at 9:18 AM CDT and filed on 4/4/2017

| | |
|---|---|
| **Case Name:** | Bowens v. Coty, Inc. et al |
| **Case Number:** | 2:17−cv−00118−WKW−TFM |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**\*\*\*Attorney Hugh Cannon Lawley,Jeffrey Bartow Cannon, Jr for The Procter & Gamble Manufacturing Company, Inc. added added pursuant to the [12] answer. (kh, )**

**2:17−cv−00118−WKW−TFM Notice has been electronically mailed to:**

Brandy Lee Robertson &nbsp &nbsp brandy@hgdlawfirm.com

Hugh Cannon Lawley &nbsp &nbsp cannon@huielaw.com, sgraham@huielaw.com

Jeffrey Bartow Cannon , Jr &nbsp &nbsp bcannon@huielaw.com, vpruett@huielaw.com

Joseph Luther Tucker &nbsp &nbsp josh@jacksonandtucker.com, sheree@jacksonandtucker.com

Kenneth Stephen Jackson &nbsp &nbsp steve@jacksonandtucker.com, sheree@jacksonandtucker.com

Walter Jasper Price , III &nbsp &nbsp wprice@huielaw.com, sgraham@huielaw.com, vpruett@huielaw.com

William Lewis Garrison , Jr &nbsp &nbsp lewis@hgdlawfirm.com

**2:17–cv–00118–WKW–TFM Notice has been delivered by other means to:**

```
MIME-Version:1.0
From:efile_notice@almd.uscourts.gov
To:almd_mailout@almd.uscourts.gov
Bcc:
--Case Participants: Kenneth Stephen Jackson (sheree@jacksonandtucker.com,
steve@jacksonandtucker.com), Walter Jasper Price, III (sgraham@huielaw.com,
vpruett@huielaw.com, wprice@huielaw.com), William Lewis Garrison, Jr
(lewis@hgdlawfirm.com), Hugh Cannon Lawley (cannon@huielaw.com, sgraham@huielaw.com),
Jeffrey Bartow Cannon, Jr (bcannon@huielaw.com, vpruett@huielaw.com), Brandy Lee Robertson
(brandy@hgdlawfirm.com), Joseph Luther Tucker (josh@jacksonandtucker.com,
sheree@jacksonandtucker.com), Chief Judge William Keith Watkins
(efile_watkins@almd.uscourts.gov), Honorable Judge Terry F. Moorer
(efile_moorer@almd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:2576032@almd.uscourts.gov
Subject:Activity in Case 2:17-cv-00118-WKW-TFM Bowens v. Coty, Inc. et al Add and
Terminate Attorneys
Content–Type: text/html
```

# U.S. District Court

## Alabama Middle District

## Notice of Electronic Filing

The following transaction was entered on 4/4/2017 at 9:25 AM CDT and filed on 4/4/2017

| | |
|---|---|
| **Case Name:** | Bowens v. Coty, Inc. et al |
| **Case Number:** | 2:17–cv–00118–WKW–TFM |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 \*\*\***Attorney Hugh Cannon Lawley,Jeffrey Bartow Cannon, Jr for Procter & Gamble Hair Care, L.L.C., The Procter & Gamble Company, Inc. and The Procter & Gamble Distributing, L.L.C. added pursuant to the [13], [14], and [15] answer. (kh, )**

**2:17–cv–00118–WKW–TFM Notice has been electronically mailed to:**

Brandy Lee Robertson &nbsp &nbsp brandy@hgdlawfirm.com

Hugh Cannon Lawley &nbsp &nbsp cannon@huielaw.com, sgraham@huielaw.com

Jeffrey Bartow Cannon , Jr &nbsp &nbsp bcannon@huielaw.com, vpruett@huielaw.com

Joseph Luther Tucker &nbsp &nbsp josh@jacksonandtucker.com, sheree@jacksonandtucker.com

Kenneth Stephen Jackson &nbsp &nbsp steve@jacksonandtucker.com, sheree@jacksonandtucker.com

Walter Jasper Price , III &nbsp &nbsp wprice@huielaw.com, sgraham@huielaw.com, vpruett@huielaw.com

William Lewis Garrison , Jr &nbsp &nbsp lewis@hgdlawfirm.com

Case 2:17-cv-118    NEF for Docket Entry    Filed 04/04/2017    Page 2 of 2

**2:17–cv–00118–WKW–TFM Notice has been delivered by other means to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CARRIE BOWENS, | ) | |
| *on behalf of herself and all others* | ) | |
| *similarly situated*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:17-CV-118-WKW |
| | ) | |
| COTY INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Pending in the United States District Court for the Southern District of Alabama is *Jones v. Coty, Inc.*, Case No. 16-cv-622, a class action that appears to involve claims, issues of fact, and issues of law substantially identical to claims, issues of fact, and issues of law in this case.

Accordingly, it is ORDERED that, on or before **April 17, 2017**, all parties shall SHOW CAUSE why this case should not be transferred to the United States District Court for the Southern District of Alabama for further proceedings on grounds that the case in the Southern District of Alabama was filed first. *See Collegiate Licensing Co. v. Am. Cas. Co. of Reading*, 713 F.3d 71, 78 (11th Cir. 2013) ("The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy

should hear the case."), *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) ("Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule. . . . Moreover, we require that the party objecting to jurisdiction in the first-filed forum carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule."); *see also Aadyn Tech., LLC v. Prof'l LED Lighting, Ltd.*, No. 14-CIV-61376, 2014 WL 12489975, at *3 (S.D. Fla. Dec. 10, 2014) (collecting cases in support of the conclusion that, "[b]ecause the first-filed doctrine involves a court's exercise of jurisdiction, a court may (and indeed, should) raise the issue *sua sponte*").

DONE this 4th day of April, 2017.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE

2

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| **CARRIE BOWENS, on behalf of**<br>**Herself and all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action No.: 2:17-cv-00118-TFM** |
| **COTY, INC.,** *et al.,* | ) ) | |
| **Defendants.** | ) | |

### <u>NOTICE OF CONSENT TO TRANSFER</u>

COMES NOW the Plaintiff in the above-styled action, by and through the undersigned

counsel of record, and respectfully advises the Court that she agrees with, consents, and has no

objection to the transfer of this case to the Southern District of Alabama pursuant to the Show

Cause Order entered April 4, 2017, for consolidation with *Shamika Jones v. Coty, Inc.. et al.*

[1:16-cv-00622-WS-B (S.D. Ala.)].

Dated: 6th day of March, 2017.

/s/ W. Lewis Garrison, Jr.
W. Lewis Garrison, Jr.
Ala. Bar No.: ASB- 3591-N74W
Brandy Lee Robertson
Ala. Bar No.: ASB-2737-D65R
*Counsel for Plaintiff and the*
*Putative Class*
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, AL 35203
wlgarrison@hgdlawfirm.com
brandy@hgdlawfirm.com
Telephone: 205-326-3336
Facsimile: 205-380-8072

/s/ Joseph L. "Josh" Tucker

Joseph L. Tucker
Ala. Bar No.: ASB-1653-E26J
*Counsel for Plaintiff and the*
*Putative Class*
JACKSON & TUCKER, P.C.
2229 1st Ave. North
Birmingham, AL 35203-4203
Telephone: 205.252.3535
Facsimile: 205.252.3536
josh@jacksonandtucker.com

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that I have this the 6th day of March, 2017, served a copy of the foregoing upon all parties to this matter by electronically filing the same with the Court's CM/ECF electronic filing system, which will cause a copy to be electronically served on all counsel of record.

       /s/ Joseph L. Tucker
       Joseph L. "Josh" Tucker
       JACKSON & TUCKER, P.C.
       2229 1st Ave. North
       Birmingham, AL 35203-4203
       Telephone: 205.252.3535
       Facsimile: 205.252.3536
       josh@jacksonandtucker.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| CARRIE BOWENS, on behalf of Herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | **Civil Action No.:** **2:17-cv-00118-WKW-TFM** |
| v. | ) ) | |
| COTY, INC., *et al.* | ) ) | |
| Defendants. | ) | |

## NOTICE OF CONSENT TO TRANSFER

Come now Defendants, The Proctor and Gamble Company, Inc., Coty, Inc., The Proctor & Gamble Manufacturing Co., Inc., The Proctor & Gamble Distributing, L.L.C., and Procter & Gamble Hair Care, L.L.C., in the above-styled action, by and through the undersigned counsel of record, and respectfully advises the Court that Defendants agree with, consent, and have no objection to the transfer to this case to the Southern District of Alabama pursuant to the Show Cause Order entered April 4, 2017, for consolidation with *Shamika Jones v. Coty, Inc., et al.* [1:16-cv-00622-WS-B (S.D. Ala.)].

1

Respectfully submitted,

/s/ H. Cannon Lawley
Walter J. Price, III (asb-0127-c66w)
H. Cannon Lawley (asb-3908-l75h)
J. Bart Cannon (asb-8733-e52c)
Attorneys for Defendants


**OF COUNSEL**:
HUIE, FERNAMBUCQ & STEWART, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, AL 35223-2484
Phone: (205) 251-1193
Fax: (205)251-1256
wprice@huielaw.com
cannon@huielaw.com
bcannon@huielaw.com

2

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2017, I electronically filed the foregoing with the Clerk of the Court using E-File system which will send notification of such filing to the attorneys of record and mailing the document via U. S. Mail to the attorneys who are non-participants to the E-File system:

W. Lewis Garrison, Jr.
Brandy Lee Robertson
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, Alabama 35203
wlgarrison@hgdlawfirm.com
brandy@hgdlawfirm.com

K. Stephen Jackson
Joseph L. "Josh" Tucker
JACKSON & TUCKER, P.C.
2229 1st Avenue North
Birmingham, Alabama 35203
steve@jacksonandtucker.com
josh@jacksonandtucker.com

/s/ H. Cannon Lawley
OF COUNSEL

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CARRIE BOWENS,<br>*on behalf of herself and all others*<br>*similarly situated*, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17-CV-118-WKW |
| | ) | (WO) |
| COTY INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Pending in the United States District Court for the Southern District of Alabama is *Jones v. Coty, Inc.*, Case No. 16-cv-622, a class action that involves claims, issues of fact, and questions of law substantially identical to claims, issues of fact, and issues of law in this case. By Order entered April 4, 2017, the parties were required to show cause why this case should not be transferred to the United States District Court for the Southern District of Alabama for further proceedings on grounds that the case in the Southern District of Alabama was filed first. Plaintiff and Defendants responded to the April 4, 2017 Order stating that they have no objection to the transfer of this case to the Southern District of Alabama for further proceedings. (Doc. # 17; Doc. # 18.)

"Where two actions involving overlapping issues and parties are pending in

two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). "The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013). In the class-action context, the parties overlap for purposes of the first-filed rule where the putative class in the second-filed action is "either identical to, or encompassed by" the putative class in the first-filed action. *Ingram-Fleming v. Lowe's Home Ctr., LLC*, No. 14-CV-2569, 2015 WL 456509, at *3 (M.D. Fla. Feb. 3, 2015).

In both cases, the plaintiffs allege that they were injured because they used Clairol hair dye products that contained various caustic ingredients, including p-Phenylenediamine. The factual allegations and claims in the complaints in both cases are identical, and the complaints are almost entirely identically-worded.[1] All Defendants in this case are also defendants in *Jones v. Coty, Inc.* The putative classes and subclasses in both cases are precisely identical. Specifically, both complaints name a putative class of "[a]ll persons in the United States or its

---

[1] In fact, the complaints in the two cases even share the same minor typographical errors. For example, both complaints label separate counts of fraud and negligent design and failure to warn as "Count VI." Further, the court notes that the lawyers for Plaintiff and Defendants in this case also serve as counsel in *Jones v. Coty, Inc.*

2

territories who, within the relevant and applicable statute of limitations period, purchased Clairol Balsam Color (*also labeled as "The Balsam Color Kit"*) that contained p-Phenylenediamine" and a putative subclass of "[a]ll residents of the state of Alabama who, within the relevant and applicable statute of limitations period, purchased Clairol Balsam Color (*also labeled as "The Balsam Color Kit"*) that contained p-Phenylenediamine." (Doc. # 1 at ¶¶ 86, 88; Doc. # 1 in *Jones v. Coty, Inc.*, Case No. 16-cv-622, ¶¶82, 84.) The relief sought in both cases is identical. For these reasons, the two actions involve overlapping parties and issues, and the first-filed rule applies.

Generally, "[u]nder the first-to-file rule, a district court may choose to stay, transfer, or dismiss a duplicative later-filed action." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012) (citing *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952)). In light of the parties' notices that they are agreeable to transfer, and in light of the fact that *Jones v. Coty, Inc.* is in its early stages, transfer is the most appropriate course of action.

Accordingly it is ORDERED that this case is TRANSFERRED to the United States District Court for the Southern District of Alabama, Southern Division.

The Clerk of the Court is DIRECTED to effectuate the transfer.

DONE this 2nd day of May, 2017.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE

```
MIME-Version:1.0
From:efile_notice@almd.uscourts.gov
To:almd_mailout@almd.uscourts.gov
Bcc:
--Case Participants: Kenneth Stephen Jackson (sheree@jacksonandtucker.com,
steve@jacksonandtucker.com), Walter Jasper Price, III (sgraham@huielaw.com,
vpruett@huielaw.com, wprice@huielaw.com), William Lewis Garrison, Jr
(lewis@hgdlawfirm.com), Hugh Cannon Lawley (cannon@huielaw.com, sgraham@huielaw.com),
Jeffrey Bartow Cannon, Jr (bcannon@huielaw.com, vpruett@huielaw.com), Brandy Lee Robertson
(brandy@hgdlawfirm.com), Joseph Luther Tucker (josh@jacksonandtucker.com,
sheree@jacksonandtucker.com), Chief Judge William Keith Watkins
(efile_watkins@almd.uscourts.gov), Honorable Judge Terry F. Moorer
(efile_moorer@almd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:2589404@almd.uscourts.gov
Subject:Activity in Case 2:17-cv-00118-WKW-TFM Bowens v. Coty, Inc. et al Case Transferred
Out to Another District
Content-Type: text/html
```

## U.S. District Court

## Alabama Middle District

## Notice of Electronic Filing

The following transaction was entered on 5/2/2017 at 12:05 PM CDT and filed on 5/2/2017

**Case Name:**       Bowens v. Coty, Inc. et al

**Case Number:**     2:17–cv–00118–WKW–TFM

**Filer:**

**WARNING: CASE CLOSED on 05/02/2017**

**Document Number:**  No document attached

**Docket Text:**
 **Case transferred to Southern District of Alabama; Entire file with certified copies of docket sheet and transfer order sent ELECTRONICALLY via EMAIL to Clerk. (No pdf attached to this entry) (wcl, )**

**2:17–cv–00118–WKW–TFM Notice has been electronically mailed to:**

Brandy Lee Robertson &nbsp &nbsp brandy@hgdlawfirm.com

Hugh Cannon Lawley &nbsp &nbsp cannon@huielaw.com, sgraham@huielaw.com

Jeffrey Bartow Cannon , Jr &nbsp &nbsp bcannon@huielaw.com, vpruett@huielaw.com

Joseph Luther Tucker &nbsp &nbsp josh@jacksonandtucker.com, sheree@jacksonandtucker.com

Kenneth Stephen Jackson &nbsp &nbsp steve@jacksonandtucker.com, sheree@jacksonandtucker.com

Walter Jasper Price , III &nbsp &nbsp wprice@huielaw.com, sgraham@huielaw.com, vpruett@huielaw.com

William Lewis Garrison , Jr &nbsp &nbsp lewis@hgdlawfirm.com

**2:17−cv−00118−WKW−TFM Notice has been delivered by other means to:**